UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SAMUEL INDIG, MEIR KAHANA, and ROBERT
KLEIN

                        Plaintiffs,

         -against-

THE VILLAGE OF POMONA, BRETT YAGEL,
LOUIS ZUMMO, LEON HARRIS, and DORIS
ULMAN

                        Defendants.
------------------------------------------------------X

**DECLARATION IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**
Case No.: 18-cv-10204

Pursuant to U.S.C. 1746, I, Louis Zummo, declare under penalty of perjury as follows:

1. I am a defendant herein and the Building Inspector for the Village of Pomona. I make this declaration in support of defendants' motion to disqulify Schlam, Stone & Dolan, LLP, attorneys for plaintiffs.

2. On August 1, 2018 I gave a deposition in Tal Properties of Pomona, LLC against Village of Pomona, et al which was pending in Rockland Supreme Court. Plaintiff was represented therein by the firm of Savad Churgin. I was a named defendant therein and was represented by Doris Ulman in her capacity as Village Attorney. Avrohom Manes (hereinafter "Manes"), the principal of Tal Properties was also present.

3. On the day of the deposition Mr. Manes had a conversation with me outside of the presence of Ms. Ulman recommending that I have a meeting with him. Thereafter, I received daily email messages from Manes telling me that he thought I was a good guy and that he thought I was taking the heat for the members of the Board of Trustees and the Village Attorney, and asking me to meet with him.

4 I ignored these emails initially, but I finally agreed to meet with Manes at his home on

East Court in the Village of Pomona sometime during the second week of August, 2018. Ms. Ulman was not present nor did she have knowledge of the meeting.

5. Manes said he believed that the Mayor had ordered me to issue violations targeting Orthodox Jewish property owners in the Village. He further claimed that he had 1500 hours of tapes proving that Orthodox Jewish property owners were targeted and that there were 60 residents ready to bring discrimination lawsuits against both the Village and me personally. He also advised me that he was paying all the legal fees for Robert Klein. Robert Klein is one of the plaintiffs in this litigation.

6. Mr. Manes stated that he thought the targeting was not my fault and that he was willing to pay a lawyer to represent me in all the discrimination lawsuits in which I am a named defendant and see I was held harmless provided I agree to give testimony against the Mayor and Village Attorney. He also continuously asked me for an email that he claimed I had in which he claimed the Mayor had called Noreen Shea, a Deputy Village Clerk at that time, a "Jew Lover". I do not have nor have I ever seen the email described by Manes, and have no knowledge if it even exists.

7. I was concerned about being sued personally. I cannot afford costly legal fess or to pay a large judgment. Manes said he would find me a "whistle blower" lawyer to represent me personally and protect me personally from all litigation. Manes agreed to pay all legal fees and costs associated with this representation.

8. Manes subsequently contacted me and advised me as to the date and location for a meeting he had arranged with Glenn Jones, the lawyer Manes had selected. On August 17, 2018 I met with Glenn Jones, Esq. At his office at 48 Wall Street in Manhattan. Mr. Jones discussed the violations Manes claimed were improper.

9. On September 4, 2018 I received both an engagement letter (a copy of which is attached hereto as Exhibit A) and a Settlement and Cooperation Agreement (a copy of which is attached hereto as Exhibit B). Of note is the fact that the engagement letter specifically calls for payment of the lawyer's bills to be by Mr. Manes. See Exhibit A at p. 2. Of further note is that there is a large blank space in the copy forwarded to me. See Exhibit A at p. 3. The Settlement and Cooperation Agreement forwarded me covered among other things litigation in which I was represented by Ms. Ulman. The agreement provided that I was to turn over all text messages, emails and documents in any way relating to the pending litigation as well as any future litigation. In exchange, I was to receive as to claims against me personally as well as indemnification for any legal fees and that he was entitled to select my lawyers. See Exhibit B.

10. I objected that I was apparently being required to turn over my work phone which is Village property. Thereafter, on September 19, 2018 I received an amended agreement dated September 16, 2018 and signed by Manes purporting to remove the requirement that I turn over my work phone. See Exhibit C attached hereto at page 1.

11. In the last week of September, 2018 I met with Manes' attorneys, Bradley Nash, Esq. and his partner Solomon Klein, Esq. Both of the firm Schlam Stone & Dolan, LLP, at an office located at 400 Rella Blvd in Suffern, NY. Mr. Jones was also present. Mr. Manes was on speaker phone for a part of the time. Ms. Ulman was not aware that the meeting was transpiring. At this meeting Nash and Solomon Klein attempted to frighten and intimidate me. Mr. Nash advised me that I was required to turn over to him my work phone owned by the Village. They asked me for Village documents and emails and questioned me for over 3 hours. They told me to sign the Cooperation Agreement at that meeting, but I told them I would not since I had to think about it. Nash further told me that he had had a number of conversations with Noreen Shea, the former

Deputy Village Clerk, and that he received documents from her. He further asked me repeatedly about the email he claimed Noreen Shea had referred to from the mayor purportedly calling her a "Jew Lover". To the best of my knowledge, there is no transcript or recording of this meeting.

I declare the foregoing is true and correct. Executed this 21 day of February, 2019

LOUIS ZUMMO