**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SAMUEL INDIG, MEIR KAHANA, and
ROBERT KLEIN,

*Plaintiffs*,

-*against*-

THE VILLAGE OF POMONA, BRETT
YAGEL, LOUIS ZUMMO, LEON HARRIS,
and DORIS ULMAN,

*Defendants.*

**18-CV-10204 (VB)**

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISQUALIFY**

---

# SCHLAM STONE & DOLAN LLP

Bradley J. Nash
Samuel L. Butt
26 Broadway, 19th Floor
New York, NY 10004
Phone: 212-344-5400
Fax: 212-344-7677
E-mail:  bnash@schlamstone.com
Email:  sbutt@schlamstone.com

*Attorneys for Plaintiffs*

i

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................................... ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    A.    The Underlying Lawsuits ................................................................................. 2

        1.    The Roads Lawsuit ............................................................................... 2

        2.    The Civil Rights Lawsuit ..................................................................... 3

    B.    Noreen Shea's Whistleblower Complaint ..................................................... 3

    C.    Mr. Zummo's Potential Cooperation ............................................................ 4

ARGUMENT ..................................................................................................................... 8

    I.    THERE WAS NO VIOLATION OF RULE 4.2 AS COUNSEL DID NOT ADVISE MR. MANES TO APPROACH MR. ZUMMO AND NEVER SPOKE TO MR. ZUMMO OUTSIDE THE PRESENCE OF HIS COUNSEL, AND BECAUSE MR. ZUMMO WAS A POTENTIAL WHISTLEBLOWER ............................................... 8

    II.    DISQUALIFCATION IS NOT AN APPROPRIATE REMEDY FOR ANY VIOLATION OF RULE 4.2 .................................................................................. 14

    III.    DISQUALIFICATION IS NOT REQUIRED UNDER THE ADVOCATE-WITNESS RULE ................................................................................................................. 18

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Acker v. Wilger*,
  2013 WL 1285435 (S.D.N.Y. Mar. 29, 2013) ........................................................ 9

*Arifi v. de Transport du Cocher, Inc.*,
  290 F. Supp.2d 344 (E.D.N.Y. 2003) ................................................................ 17

*Arista Records LLC v. Lime Grp. LLC*,
  2011 WL 672254 (S.D.N.Y. Feb.22, 2011) ......................................................... 14

*Armstrong v. McAlpin*,
  625 F.2d 433 (2d Cir.) ................................................................................ 15

*Board of Education of the City of New York v. Nyquist*,
  590 F.2d 1241 (2d Cir. 1979) ......................................................................... 15

*Caelter Industries, Inc.*,
  586 F. Supp. 808 (N.D.N.Y.1984) .................................................................... 15

*Ceramco, Inc. v. Lee Pharmaceuticals*,
  510 F.2d 268 (2d Cir. 1975) ........................................................................... 16

*Davidson Supply Co. v. P.P.E., Inc.*,
  986 F. Supp. 956 (D. Md. 1997) ...................................................................... 16

*Decker v. Nagel Rice LLC*,
  716 F. Supp.2d 228 (S.D.N.Y. 2010) ................................................................ 14

*Eisinger v. Garrick-Aug Assocs. Store Leasing, Inc.*,
  1994 WL 86403 (S.D.N.Y. Mar. 14, 1994) ................................................... 15, 19

*Gleason v. Zocco*,
  941 F. Supp. 32 (S.D.N.Y. 1996) ..................................................................... 18

*Hakimian Management Corp. v. Richard C. Fiore, In*c.,
  16 Misc. 3d 1108(A), 2007 WL 2003759 (N.Y. Sup. Ct. N.Y. Co. July 9, 2007) .................. 18

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005) ........................................................................... 17

*Mathis v. Leggett & Platt*,
  No. 1:04-CV-3703-HTW-CCH, 2006 WL 8431959 (N.D. Ga. Apr. 5, 2006) .......................... 9

*Metcalf v. Yale Univ.*,
  2018 WL 6258607 (D. Conn. Nov. 30, 2018) ....................................................... 16

*Milano v. AC&R Advertising, Inc.*,
  148 F.R.D. 68 (S.D.N.Y. 1998) ....................................................................... 10

*Murray v. Metro. Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009)...................................................................................... 18

*Ortiz v. Green Bull, Inc.*,
    2011 WL 5553843 (E.D.N.Y. Nov. 14, 2011)........................................................ 16

*Paramount Commc'ns, Inc. v. Donaghy*,
    858 F. Supp. 391 (S.D.N.Y. 1994) ......................................................................... 19

*S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*,
    69 N.Y.2d 437, 515 N.Y.S.2d 735 (1988) ....................................................... 14, 15

*Samad Bros., Inc. v. Bokara Rug Co., Inc.*,
    2012 WL 1604849 (S.D.N.Y. May 8, 2012) ......................................................... 18

*United States v. Jamail*,
    707 F.2d 638 (2d Cir. 1983)...................................................................................... 8

*United States v. Talao*,
    222 F.3d 1133 (9th Cir. 2000) ........................................................................... 12, 13

*W. T. Grant Co. v. Haines*,
    531 F.2d 671 (2d Cir. 1976)................................................................................... 15

## RULES

New York Rule of Professional Conduct 3.7............................................................... 1, 2

New York Rule of Professional Conduct 4.2........................................................... passim

## REGULATIONS

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 ............................................................ 8

NYC Eth. Op. 1991-4 (Aug. 16, 1991)........................................................................ 12

Plaintiffs submit this Memorandum of Law, together with the Declarations of Mr. Nash ("Nash Decl."), Mr. Klein ("Klein Decl."), Avrohom Manes ("Manes Decl."), the Expert Declaration of Professor W. Bradley Wendel ("Wendel Decl."), and the exhibits attached to each of the Declarations, in opposition to Defendants' motion seeking to 1) disqualify plaintiffs' counsel, Mr. Nash, Mr. Klein and Schlam Stone & Dolan LLP ("Schlam Stone"); and 2) for such other and further relief as the Court may deem just, proper, and equitable.  For the reasons set forth herein, Defendants' motion should be denied in its entirety.

## <u>INTRODUCTION</u>

Defendants' motion to disqualify should be denied.  Mr. Nash and Mr. Klein spoke to Mr. Zummo only once (before this action was filed), and that single meeting was in the presence of Mr. Zummo's counsel, Glenn Jones.  Thus, there was no violation of the so-called "no contact" rule – New York Rule of Professional Conduct 4.2.  Additionally, as Mr. Zummo was a potential whistleblower, who had already admitted to Mr. Manes that Defendant Doris Ulman, counsel for the Village of Pomona ("Pomona" or the "Village"), had directed Mr. Zummo to delete relevant e-mails, he was adverse to the Village and Ms. Ulman, and thus the Village's consent was not required.  Even if there were a violation, which there was not, disqualification is not a proper remedy.

Mr. Nash and Mr. Klein further did not violate New York Rule of Professional Conduct 3.7, also known as the advocate-witness rule.  Defendants have failed to demonstrate that either Mr. Nash or Mr. Klein had any involvement in the facts underlying this matter for the simple reason that they did not.  Testimony about the September 2018 meeting between Mr. Zummo, Mr. Jones, Mr. Nash, Mr. Klein, and Mr. Manes is not required.  Even if such testimony were required, Defendants have further failed to establish that Mr. Nash's or Mr. Klein's testimony would be strictly necessary given the presence of Mr. Jones and Mr. Manes who could testify.

1

Defendants also suggest that Mr. Nash's meeting with Noreen Shea, a former village clerk, implicates Rule 3.7 (or perhaps Rule 4.2). However, at the time of that meeting, Ms. Shea had been terminated by Defendant Village of Pomona and had further already complained to the New York State Division of Human Rights. Thus, the communication with Ms. Shea did not violate either Rule.

Since neither Mr. Nash nor Mr. Klein violated either Rule, there is no basis to disqualify them or their firm, Schlam Stone.

## BACKGROUND

A.   **The Underlying Lawsuits**

As set forth in the Manes Decl., Mr. Manes, along with other Orthodox Jewish residents of the Village, were the subject of discriminatory practices by the Village. (Manes Decl. ¶¶ 10-13). As a result, he, and other residents, have commenced several lawsuits against the Village, including the instant suit.

### 1.   **The Roads Lawsuit**

In March 2017, Mr. Manes' company TAL Properties of Pomona, LLC ("TAL Properties"), represented by an attorney named Michael Sussman, filed a lawsuit against the Village in Rockland County Supreme Court, *TAL Properties v. Village of Pomona, et al.*, Index No. 031216/2017 (the "Roads Lawsuit"). That action seeks a declaration that the roads adjacent to property Mr. Manes owns in Pomona are Village roads (and therefore the Village is responsible for the cost of maintaining them). Mr. Zummo is named as a defendant in the Roads Lawsuit, as is Ms. Ulman. (Manes Decl. ¶ 14; Nash Decl. ¶ 5).

Mr. Manes is currently represented in the Roads Litigation by an attorney named Esther Engelson. Schlam Stone has never represented Mr. Manes in connection with that case. (Manes Decl. ¶ 15; Nash Decl. ¶ 6).

2

In September 2018, following the conclusion of discovery, TAL Properties filed a motion for summary judgment, which is now fully briefed and awaiting decision.  (Manes Decl. ¶ 16).

### 2.  The Civil Rights Lawsuit

Also in March 2017, Mr. Manes, represented at the time by attorneys other than Schlam Stone, commenced a civil rights action in the same court against the Village, Mayor Brett Yagel and Ms. Ulman, alleging violations of the equal protection and free exercise clauses of the United States Constitution, which was removed to this Court, *TAL Properties v. Village of Pomona*, Case No. 7:17-cv-02928-CS (the "Civil Rights Lawsuit").  Mr. Zummo was not named as a defendant in this action.  (Manes Decl. ¶ 17; Nash Decl. ¶ 5).

On January 10, 2018, Judge Seibel granted defendants' motion to dismiss the Civil Rights Lawsuit for failure to state a claim.  The court concluded that "plaintiffs have done a fine job of showing that the defendants indeed gave plaintiffs a hard time . . . and treated them unfairly . . . but they have not alleged facts suggesting that they were treated unfairly because Manes was Jewish."  (Manes Decl. ¶ 18; Nash Decl. ¶ 7).

### B.  Noreen Shea's Whistleblower Complaint

In June 2018 – five months after the dismissal of Mr. Manes' Civil Rights Lawsuit – the New York State Division of Human Rights issued an investigation report, based on interviews of Village officials and employees, and a review of voluminous internal documents, which provided previously unavailable evidence that Mr. Manes and other Orthodox Jewish residents of Pomona were, in fact, victims of an intentional campaign of religious discrimination by Defendants and others in the Village government.  (Manes Decl. ¶ 19; Nash Decl. ¶ 8).

The Human Rights Division's investigation was sparked by a whistleblower complaint filed by Noreen Shea, a non-Jewish former deputy clerk in the office of the Village Clerk, who objected to the discriminatory treatment of Orthodox Jewish residents – and alleged that she was

fired for that reason. Ms. Shea's shocking allegations are spelled out in the Complaint in this action. (Manes Decl. ¶ 20; Nash Decl. ¶ 9).

At this time, Mr. Manes retained Schlam Stone to explore whether his Civil Rights Lawsuit could be revived based on newly-discovered evidence revealed by the Human Rights Division investigation. (Manes Decl. ¶ 21; Nash Decl. ¶ 10).

Simultaneously with the filing of this action, on November 2, 2018, Schlam Stone filed on Mr. Manes' behalf a motion to vacate the judgment of dismissal in his Civil Rights Lawsuit based on newly-discovered evidence. (Manes Decl. ¶ 22; Nash Decl. ¶ 11).

Mr. Nash and Mr. Klein had a single meeting with Ms. Shea, in June 2018, after the issuance of the Human Rights Division's report, and long after her termination by the Village. (Nash Decl. ¶ 10, n.1; Klein Decl. ¶¶ 3-4).

C.     **Mr. Zummo's Potential Cooperation**

On August 1, 2018, Mr. Zummo was deposed in the Roads Lawsuit by Mr. Manes' attorney in that matter, Esther Engelson. (Manes Decl. ¶ 23; Nash Decl. ¶ 12). No attorneys from Schlam Stone were present at this deposition. (Nash Decl. ¶ 13; Klein Decl. ¶¶ 3-4).

During a break in the August 1 deposition, Mr. Zummo, who has known Mr. Manes for more than three years, and has a working relationship with Mr. Manes despite Mr. Zummo's involvement in implementing the Village's policy of discrimination against Jewish residents, approached Mr. Manes in the restroom and apologized for having given "misleading" testimony. (Manes Decl. ¶ 24). Mr. Manes and Mr. Zummo agreed to have a separate one-on-one meeting after the deposition. (*Id.*).

No attorney from Schlam Stone directed or otherwise caused Mr. Manes to engage in this or any discussion with Mr. Zummo. (Nash Decl. ¶ 14; Klein Decl. ¶¶ 3-4; Manes Decl. ¶ 26).

4

Based on Mr. Zummo's comments to Mr. Manes during the deposition, Mr. Manes had the impression that Mr. Zummo wanted to come forward with the truth about the Village government's mistreatment of Mr. Manes and other Orthodox Jewish residents and might be a potential whistleblower like Ms. Shea.  (Manes Decl. ¶ 25).

On August 6, 2018, Mr. Manes met with Mr. Zummo alone in Mr. Manes' house. (Manes Decl. ¶ 26).  Mr. Zummo and Mr. Manes arranged the meeting on their own without the involvement of Mr. Manes' attorneys.  (Manes Decl. ¶ 26; Nash Decl. ¶ 15; Klein Decl. ¶¶ 3-4). In a lengthy conversation, Mr. Zummo confirmed that Mayor Brett Yagel "hates change" (referring to the influx of Jewish residents); that Yagel would say in reference to Orthodox Jews, "we don't want this element" in the Village; and that Yagel and the Deputy Mayor tried to pressure him to issue jaywalking tickets to Jews walking to and from synagogue on the Sabbath, and otherwise to harass Jewish residents.  (Manes Decl. ¶ 26).

Mr. Zummo also revealed that he did not trust Ms. Ulman – in his words, "I don't trust her as far as I can throw her."  Ms. Ulman was conflicted in that she was individually named as a defendant in the Roads Lawsuit and also appeared as counsel for the other defendants in the same case.  Apart from that inherent conflict, Mr. Zummo was concerned that Ulman had advised him to delete emails from his phone.  Zummo explained:

> Knowing that we were going to have our phones scanned for one of these days, Doris told me to get rid of a lot of our older emails . . . So I lost all the emails . . . and that's Doris' advice.

(*Id.* ¶ 27).

Mr. Manes and Mr. Zummo discussed Mr. Zummo cooperating with Mr. Manes, by providing documents and truthful testimony regarding instances of discrimination against Orthodox Jewish residents.  Mr. Manes offered to pay for Mr. Zummo's legal fees in connection with his cooperation.  (*Id.* ¶ 28).

5

Following the meeting, Mr. Manes reported the substance of his meeting to his attorneys, including that Ms. Ulman had directed Mr. Zummo to delete e-mails, and that Mr. Zummo wanted to blow the whistle on discriminatory actions and other misconduct by the Village government, including the Village attorney, Ms. Ulman.  (Manes Decl. ¶ 29; Nash Decl. ¶ 15).

Mr. Manes wanted to enter into a cooperation agreement with Mr. Zummo.  (Nash Decl. ¶ 16; *see also* Manes Decl. ¶ 30).  However, the attorneys at Schlam Stone would not speak with Mr. Zummo unless he was represented by counsel.  (Manes Decl. ¶ 29; Nash Decl. ¶ 17).  Mr. Nash recommended to Mr. Manes a potential lawyer named Glenn Jones, who is a former lawyer from the New York Attorney General's Office, with experience representing whistleblower witnesses.  (Nash Decl. ¶ 17).  Mr. Manes gave Mr. Jones' contact information to Mr. Zummo and Mr. Zummo contacted Mr. Jones and met with him at his office.  (Manes Decl. ¶ 29; Nash Decl. ¶ 17).  No attorney from Schlam Stone ever spoke to Mr. Zummo until he was represented by Mr. Jones.  (Nash Decl. ¶ 17; Klein Decl. ¶¶ 3-4).

After the meeting between Mr. Zummo and Mr. Jones at Mr. Jones' office, Mr. Jones told Mr. Nash that Mr. Zummo was interested in entering into a cooperation agreement with Mr. Manes.  (Nash Decl. ¶ 18).

Thus, Mr. Nash prepared a draft cooperation agreement and sent it to Mr. Jones on August 27, 2018.  (*Id.* ¶ 19).  On August 29, 2018, Mr. Nash spoke with Mr. Jones by telephone to discuss Mr. Jones' comments to the proposed agreement.  (*Id.* ¶ 21).

Mr. Jones had two principal comments.  First, he wanted the indemnification provision expanded to include any related government investigations (as originally drafted it only covered costs arising out of the cooperation).  (*Id.* ¶ 22).

Second, Mr. Jones told Mr. Nash that the provision requiring Mr. Zummo to provide documents would have to be modified, as he would not allow Mr. Zummo to provide any documents from Village computers or files, although he would permit Mr. Zummo to provide documents from his personal phone.  (*Id.* ¶ 23).

Mr. Jones and Mr. Nash continued to discuss modifications to the draft agreement to accomplish these goals.  All communications were between Mr. Nash and Mr. Jones.  No attorney from Schlam Stone spoke directly to Mr. Zummo.  (*Id.* ¶ 24).

A few weeks later, Mr. Nash and Mr. Jones arranged an in-person meeting among Messrs. Zummo and Jones, and Mr. Manes' attorneys to discuss the anticipated cooperation (in particular what documents Mr. Zummo could provide), and finalizing the agreement.  Mr. Manes participated by conference call.  (Manes Decl. ¶ 30; Nash Decl. ¶ 24).

The meeting, held on September 13, 2018, was cordial.  Mr. Zummo and Mr. Jones arrived together and were late and left together.  There were no discussions with Mr. Zummo outside Mr. Jones' presence.  The meeting lasted approximately two hours.  Most of the time was spent discussing what documents Mr. Zummo could provide.  Mr. Jones stated that, without a formal subpoena, he would only allow Mr. Zummo to provide documents stored on his personal phone.  Mr. Zummo showed that he had voicemails on his personal phone going back to 2016. He also said that he believed his text messages sent and received on that phone could be retrieved from a cloud, and that he would discuss this with his service provider.  Mr. Zummo also answered some general questions about the Village's recordkeeping, and the selective targeting of Jewish residents and houses of worship for alleged code violations.  (Manes Decl. ¶ 31; Nash Decl. ¶ 26; Klein Decl. ¶¶ 3-4).

Neither Mr. Klein, Mr. Nash nor Mr. Manes did anything to "frighten and intimidate" Mr. Zummo, as he claims in his declaration.  That vague allegation is as false as it is outrageous. It is telling that Mr. Zummo does not provide any details as to how he was frightened or intimidated, especially given that he was represented by his own counsel.  Nor did anyone demand that he sign the cooperation agreement at the meeting.  To the contrary, there were changes to the agreement that still needed to be made concerning the documents he would provide and Mr. Jones sent Mr. Nash a revision of the agreement the following day, September 14, 2018.  (Manes Decl. ¶ 32; Nash Decl. ¶¶ 27-29; Klein Decl. ¶¶ 3-4).

Following the meeting, Mr. Zummo evidently decided not to sign the agreement, and he and Mr. Manes had no further discussions after that time.  (Manes Decl. ¶ 33; Nash Decl. ¶ 30).

## **ARGUMENT**

**I.**      **THERE WAS NO VIOLATION OF RULE 4.2 AS COUNSEL DID NOT ADVISE MR. MANES TO APPROACH MR. ZUMMO AND NEVER SPOKE TO MR. ZUMMO OUTSIDE THE PRESENCE OF HIS COUNSEL, AND BECAUSE MR. ZUMMO WAS A POTENTIAL WHISTLEBLOWER**

Rule 4.2 was not violated.[1]  Defendants contend Mr. Nash and Mr. Klein violated New York Rule of Professional Conduct 4.2(a), which provides "(a) In representing a client, a lawyer

---

[1] As Defendants concede, the instant proceeding was not commenced at the time of the September 2018 meeting between Mr. Nash, Mr. Klein, Mr. Zummo, Mr. Jones, and Mr. Manes. While Defendants point to other pending actions and claim that they are related, the question under Rule 4.2 is whether a party is represented "in the matter."  The definitions section to the Rules of Professional Responsibility defines "Matter" as including "any litigation, judicial or administrative proceeding, case, claim, application, request for a ruling or other determination, contract, controversy, investigation, charge, accusation, arrest, negotiation, arbitration, mediation or any other representation involving a specific party or parties."  Rule 1.0(l).  Both of the authorities cited by Defendants to argue that Rule 4.2 applied here even in the absence of this action being filed concern either a civil case concurrent with a criminal investigation (NYSBA Ethics Op. 904 (2012),) or the question of whether Custom agents were acting as agents of the United States Attorney.  *United States v. Jamail*, 707 F.2d 638, 646 (2d Cir. 1983).  In any event, the Court need not reach this question because even if the other pending matters were sufficient to invoke the precepts of Rule 4.2, there was no violation of the Rule.

shall not communicate or cause another to communicate about the subject of the representation

with a party the lawyer knows to be represented by another lawyer in the matter, unless the

lawyer has the prior consent of the other lawyer or is authorized to do so by law."  N.Y. Comp.

Codes R. & Regs. tit. 22, § 1200.0, Rule 4.2.[2]  They also assert there was a violation of Rule

4.2(b), which provides that "a lawyer may cause a client to communicate with a represented

person unless the represented person is not legally competent, and may counsel the client with

respect to those communications, provided the lawyer gives reasonable advance notice to the

represented person's counsel that such communications will be taking place."  *Id.*  Neither rule

was violated and, even if they were, disqualification is not a proper remedy.

As an initial matter, neither Mr. Nash nor Mr. Klein, nor any other attorney, counseled

Mr. Manes to approach Mr. Zummo or discuss any aspects of the case with him.  (Nash Decl.

¶  14; Klein Decl. ¶¶ 3-4; *see also* Manes Decl. ¶ 26).  As set forth in the Manes Decl., Mr.

Zummo approached Mr. Manes in the restroom during his deposition in another litigation.

(Manes Decl. ¶ 24).  Similarly, Mr. Manes and Mr. Zummo subsequently agreed to meet at Mr.

Manes home in August.  At no time prior to either the discussion in the restroom or the meeting

at Mr. Manes' home did Mr. Nash or Mr. Klein counsel Mr. Manes concerning any

conversations Mr. Manes was to have with Mr. Zummo.  (Nash Decl. ¶¶ 14-15; Klein Decl. ¶¶ 3-

4; Manes Decl. ¶ 26).  There is no ethical rule prohibiting a party from contacting an opposing

party on his own initiative.  *Mathis v. Leggett & Platt*, No. 1:04-CV-3703-HTW-CCH, 2006 WL

8431959, at *2 (N.D. Ga. Apr. 5, 2006) ("There is no evidence indicating that Plaintiff's counsel

prompted, directed, or caused Plaintiff to speak with Ms. McGahey about [the exhibit at issue],

---

[2] The disciplinary rules of New York State provide "general guidance" to courts deciding
disqualification motions, but are not "binding authority."  *Acker v. Wilger*, 2013 WL 1285435
(S.D.N.Y. Mar. 29, 2013).

and the Rules of Professional Conduct for attorneys do not apply to non-attorneys); Rule 4.2, cmt. 11 ("Persons represented in a matter may communicate directly with each other"); Wendel Decl. ¶ 6; *see also Milano v. AC&R Advertising, Inc*., 148 F.R.D. 68, 82-83, 89, 90 (S.D.N.Y. 1998) (noting that, under American Bar Association and New York Bar formal opinions and New York ethics rules, when client independently and legally secures information which is relevant and useful to his case and provides it to counsel, attorney's use of that information is not unethical).

After the August 2018 meeting at Mr. Manes home between Mr. Manes and Mr. Zummo, arranged entirely between Mr. Manes and Mr. Zummo with no involvement by Mr. Nash or Mr. Klein, Mr. Manes requested that Mr. Nash and Mr. Klein speak to Mr. Zummo.  (Nash Decl. ¶ 16; Klein Decl. ¶¶ 3-4; Manes Decl. ¶ 29).  Mr. Nash responded unequivocally that they could not do so unless Mr. Zummo were represented by a lawyer.  (Nash Decl. ¶ 17; Klein Decl. ¶¶ 3-4; Manes Decl. ¶ 29).  Mr. Nash suggested that Mr. Jones might be a potential lawyer, and Mr. Manes passed Mr. Jones' contact information along.  (Nash Decl. ¶ 17; Klein Decl. ¶¶ 3-4; Manes Decl. ¶ 29).

It is of no moment that Mr. Manes gave Mr. Zummo the contact information for Mr. Jones, because, as will be discussed further below, Mr. Zummo was at that time acting in his individual capacity and he was unrepresented in that capacity.  (Wendel Decl. ¶¶ 7, 15-18).  Put another way, there was no lawyer to whom Mr. Nash or Mr. Klein could have given notice of this communication since Mr. Zummo was as yet unrepresented individually.  (*Id.*; *see also id.* ¶ 6).  The reason they could not and did not need to seek the consent of counsel for the Village is that the Village's lawyer, Doris Ulman, was implicated in the wrongdoing that Mr. Zummo

10

wished to disclose. In particular, she advised him to destroy evidence relevant to the plaintiffs'

claims of discrimination.  (*Id.* ¶ 8; Manes Decl. ¶ 27).

When Mr. Zummo spoke with Mr. Nash and Mr. Klein in September 2018, he had his

own counsel, Glenn Jones, who was present at the meeting.  (Nash Decl. ¶¶ 17, 25; *see also*

Zummo Decl. ¶¶ 8, 11).  As Mr. Zummo admits in his affidavit, he met with Glenn Jones, Esq.

on August 17, 2018, at Mr. Jones' offices, without Mr. Manes.  (Zummo Decl. ¶ 8).  As Mr.

Zummo also admits, a proposed Settlement and Cooperation Agreement was prepared that was

revised to include changes that Mr. Jones' required on Mr. Zummo's behalf.  (*Id.* ¶¶ 9-10).  As

set forth in the Nash Decl., the changes requested by Mr. Jones included a limitation on the

sources of documents that Mr. Zummo could produce and broad indemnification provision in

favor of Mr. Zummo.  (Nash Decl. ¶¶ 22-23).  Mr. Jones vigorously advocated for his client and

represented him both in the negotiations of the potential cooperation agreement and during the

interview by Messrs. Nash and Klein, as Mr. Zummo also admits.  (*See* Zummo Decl. ¶ 11).  At

no time did Mr. Nash and Mr. Klein attempt to frighten or intimidate Mr. Zummo.  (Nash Decl. ¶

27; Klein Decl. ¶¶ 3-4).

Mr. Nash and Mr. Klein never communicated with Mr. Zummo outside the presence of

Mr. Jones.  (Nash Decl. ¶¶ 17, 24; Klein Decl. ¶¶ 3-4).  Indeed, Mr. Nash and Mr. Klein set up

the September 2018 meeting through Mr. Jones.  (Nash Decl. ¶ 24; Klein Decl. ¶¶ 3-4).  As

Comment 7 to Rule 4.2 makes clear, "[i]f an individual constituent of the organization is

represented in the matter by the person's own counsel the consent by that counsel to a

communication will be sufficient for the purposes of this Rule."

What is more, as Ms. Ulman is herself a defendant in a state court action concerning Mr.

Manes, (Nash Decl. ¶ 5), notifying her would have placed Mr. Zummo in the untenable position

of being represented by someone who had an actual conflict of interest with him.  *See United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000) (No ethical violation occurred when an assistant United States attorney spoke to an employee bookkeeper of the target after the bookkeeper expressed an intention not to be represented by counsel for the target because ". . . she wished to tell the truth and . . . she did not believe she could do so if she had to testify in his presence").  In *Talao*, the Ninth Circuit held:

> Once the employee makes known her desire to give truthful information about potential criminal activity she has witnessed, a clear conflict of interest exists between the employee and the corporation. Under these circumstances, corporate counsel cannot continue to represent both the employee and the corporation.
>
> …
>
> Under these circumstances, because the corporation and the employee cannot share an attorney, *ex parte* contacts with the employee cannot be deemed to, in any way, affect the attorney-client relationship between the corporation and its counsel. In this setting, the corporation's interest, therefore, clearly does not provide the basis for application of the rule.

*Id.* at 1140-41.  The Ninth Circuit also noted that the AUSA did the right thing in advising the bookkeeper that she had a right to be represented by counsel, just as counsel did here.  *Id.* at 1141; *see also* NYC Eth. Op. 1991-4 (Aug. 16, 1991) ("no contact" rule does not necessarily prohibit a lawyer for a private litigant from receiving information relevant to a litigated matter from a so-called "whistleblower".).  As the NYC Bar Opinion explained, in footnote 2:

> "[t]his opinion does not necessarily prohibit a lawyer for a private litigant from receiving information relevant to a litigated matter from a so-called 'whistleblower.' If a lawyer has not initiated the communication, one of the principal concerns underlying [the no-contact rule] — that a lawyer may exploit the disparity in legal skills between the lawyer and an unsuspecting lay person who is speaking outside the presence of counsel, is diminished. In addition, First Amendment solicitude for communications initiated by 'whistleblowers', expressing their disagreement with existing governmental policies or reporting instances of misconduct by governmental officials, is greater than for communications initiated by counsel in an effort to persuade officials to provide information."

NYC Eth. Opinion 1991-4; *see also* Wendel Decl. ¶ 16.

The adversity between Mr. Zummo and the Village is all the more stark since Mr. Zummo told Mr. Manes that Ms. Ulman told Mr. Zummo to delete old e-mails before his phone was reviewed for relevant e-mails. (Manes Decl. ¶ 27). Indeed, as a whistleblower is adverse to the entity or agency, it is an anathema to think that the whistleblower should be represented by counsel adverse to his interests as a whistleblower or required to have counsel for the entity in the room, particularly where, as here, that counsel told the whistleblower to delete various e-mails. (Wendel Decl. ¶ 17) (citing Rule 1.13(d); Rule 1.7). Mr. Zummo could not have been represented by the lawyer for the Village because they had differing interests, creating a conflict that precluded the attorney for the Village from representing both the Village and Mr. Zummo under Rule 1.7(a)(1), as the *Talao* case held.[3]

Put another way, when Mr. Zummo approached Mr. Manes, he was doing so in his individual capacity rather than on behalf of the village of Pomona. As a whistleblower, he could not be representing the Village or represented by a lawyer for the Village. In that sense, he was unrepresented and Rule 4.2 was completely inapplicable. Mr. Nash and Mr. Klein could have spoken to Mr. Zummo without any lawyer present. (Wendel Decl. ¶ 7). However, out of an abundance of caution, Mr. Nash and Mr. Klein determined they should speak to Mr. Zummo only if he were represented by counsel. Only a lawyer representing Mr. Zummo personally, in his capacity as a whistleblower or an individual with interests potentially adverse to those of the

---

[3] Mr. Zummo's adverse relationship to Ms. Ulman is confirmed by an affidavit he submitted in support of a parallel motion filed in the Roads Lawsuit (where Schlam Stone is not counsel). In that affidavit (attached to the Nash Decl. as Exhibit 5), Mr. Zummo states that he spoke with Ms. Ulman "a short time after" the September 13 meeting to clarify the extent of the Village's obligation to indemnify him. Tellingly (and unsurprisingly) Mr. Zummo does not state that he informed Ms. Ulman about the September 13 meeting or his potential cooperation agreement with Mr. Manes.

Village, would have been the appropriate lawyer to give consent to the communication.  Mr.

Jones, Mr. Zummo's personal lawyer, gave that consent.

Thus, there was no violation for any number of reasons.  First, Mr. Manes communicated

with Mr. Zummo, who approached Mr. Manes, of his own volition.  Second, Mr. Nash and Mr.

Klein were always adamant that they could not speak to Mr. Zummo unless he had his own

lawyer, even though, as explained above, they could actually have spoken to him without a

lawyer present.  Third, Mr. Zummo hired Mr. Jones; prior to the meeting, Mr. Nash and Mr.

Klein communicated with Mr. Jones only and at the September meeting, Mr. Jones was present.

Fourth, as Mr. Zummo was presenting himself as a whistleblower, it would have been improper

to require Ms. Ulman be present.

## II.     DISQUALIFCATION IS NOT AN APPROPRIATE REMEDY FOR ANY VIOLATION OF RULE 4.2

Even if there had been a technical violation of Rule 4.2 (and there was not here),

disqualification would not be an appropriate remedy.  As an initial matter, motions to disqualify

are "viewed with disfavor" in this Circuit and, even where a rule violation is established, "the

party seeking disqualification bears a heavy burden of demonstrating that disqualification is

necessary."  *Decker v. Nagel Rice LLC*, 716 F. Supp.2d 228, 231-32 (S.D.N.Y. 2010); *see also*

*Arista Records LLC v. Lime Grp. LLC*, 2011 WL 672254, at *4 (S.D.N.Y. Feb.22, 2011)

("District courts have broad discretion to disqualify attorneys, but it is a drastic measure that is

viewed with disfavor in this Circuit") (internal quotation marks omitted).  This is because such

motions "are often tactically motivated, cause undue delay, add expense, and have an immediate

adverse effect on the client by separating him from counsel of his choice."  *Arista Records*, 2011

WL 672254, at *4; *see also S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d

437, 445, 515 N.Y.S.2d 735 (1988) (disqualification "impinges upon the rights of a litigant by

depriving him of the attorney of his choice and by potentially stalling or derailing proceedings, thereby 'redounding to the strategic advantage of one party over another.'") (internal citations omitted).

Thus, the Rules of Professional Conduct are "not to be mechanically applied when disqualification is raised in litigation," but rather should be construed flexibly in order to provide "guidance for the courts in determining whether a case would be tainted by the participation of an attorney or firm." *S & S Hotel Ventures Ltd. Partnership*, 69 N.Y.2d at 444, 445, 515 N.Y.S.2d 735 (*quoting Armstrong v. McAlpin*, 625 F.2d 433, 446, n. 26 (2d Cir.), vacated on other grounds, 449 U.S. 1106, 101 S. Ct. 911, 66 L.Ed.2d 835 (1984).)  Accordingly, "[t]he courts of this Circuit . . . are quite hesitant to disqualify an attorney and will do so only upon a showing that the attorney's conduct will 'tend to taint the underlying trial.'" *Caelter Industries, Inc.*, 586 F. Supp. 808, 814 (N.D.N.Y. 1984) (*quoting Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)); *see also Eisinger v. Garrick-Aug Assocs. Store Leasing, Inc.*, 1994 WL 86403, at *2 (S.D.N.Y. Mar. 14, 1994) (same and declining to disqualify counsel); *W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) ("this court has squarely held that a violation of professional ethics does not in any event automatically result in disqualification of counsel").

Defendants do not explain how any communication with Mr. Zummo, with his lawyer Mr. Jones present, would somehow taint the underlying trial.  There is no allegation of any privileged communications or strategy being revealed.[4]  At most, the meeting between Mr.

---

[4] When Mr. Zummo told Mr. Manes that Ms. Ulman had told him to delete documents and that he had not testified truthfully, Mr. Manes was acting of his own volition without any involvement from Mr. Nash or Mr. Klein (Manes Decl. ¶ 26; Nash Decl. ¶¶ 14-15), which, as discussed above, is not a violation of any ethical rules.

Zummo, Mr. Nash, Mr. Klein, Mr. Jones, and Mr. Manes concerned factual matters, which would further render disqualification inappropriate.  (Nash Decl. ¶ 26; Manes Decl. ¶¶ 31-32). *See Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975) (holding that counsel's telephone conversations with the opposing party's employees, during which counsel obtained "non-privileged, relevant, and accurate information," was only misconduct of a technical nature and did not warrant the nullification of prior proceedings or disqualification of counsel); *see also Ortiz v. Green Bull, Inc.*, 2011 WL 5553843, at *1 (E.D.N.Y. Nov. 14, 2011) (Plaintiff's counsel's telephone calls to Defendant's employees, in which he obtained information used to support successor liability claim, did not warrant disqualification); *Metcalf v. Yale Univ.*, 2018 WL 6258607, at *5 (D. Conn. Nov. 30, 2018) (where Plaintiff's counsel had a telephone interview with the head of Yale's Classics Department, without opposing counsel present, with respect to his client's age discrimination claim, and where Plaintiff conceded that there had been a violation of Rule 4.2, Court concluded that disqualification was not required); *Davidson Supply Co. v. P.P.E., Inc.*, 986 F. Supp. 956, 958 (D. Md. 1997) (Counsel did not violate Rule 4.2 when it interviewed defendant on day before it dismissed case against her and obtained information as to the alleged illegal conduct engaged in by the remaining defendant and disqualification was not called for).

While Defendants contend that Mr. Manes sought to badger and intimidate Mr. Zummo (which is factually inaccurate as set forth in the Manes Decl.), they do not allege Mr. Manes was being coached or instructed to do so by counsel (Defs' MOL at 4), and, indeed, Mr. Manes was acting on his own.  (Manes Decl. ¶¶ 24-26; *see also* Nash Decl. ¶ 14).  Thus, such actions cannot be a violation of Rule 4.2.

Next, Defendants contend that "[s]omone prepared the cooperation agreement for ummo [sic]; someone advised him what lawyer Zummo should retain; someone spoke with that lawyer before Zummo even met with him to advise him Zummo's legal fees would be paid by a third-party." (Def's MOL at 4). While Mr. Nash prepared the cooperation agreement, he never communicated with Mr. Zummo about it – all the negotiations were with Mr. Jones. (Nash Decl. ¶¶ 19-24, 29). Further, while Mr. Manes provided Mr. Jones' name to Mr. Zummo, neither Mr. Manes nor anyone told Mr. Zummo he was required to retain Mr. Jones. (Nash Decl. ¶ 17; Manes Decl. ¶ 29). Mr. Zummo met Mr. Jones on his own before retaining him. (Zummo Decl. ¶ 8).

Defendants further argue that Mr. Nash and Mr. Manes offered a government employee a thing of value to affect the performance his duties and thus disqualification is required to preserve the integrity of the adversary process. (Def's MOL at 5). The argument is ludicrous. Mr. Manes believed, based on Mr. Zummo's approach, that Mr. Zummo had relevant, factual information and wished to act as a whistleblower. (Manes Decl. ¶ 25). Seeking to obtain relevant, factual information is in no way an attempt to affect Mr. Zummo's performance of his duties. Further, Mr. Jones required revisions to the proposed Cooperation Agreement so that Mr. Zummo would only be required to provide personal documents not documents from his work phone. (Nash Decl. ¶¶ 19-24, 29). *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127 (2d Cir. 2005), cited by Defendants in support of this argument, is inapposite because in that case the Second Circuit affirmed the denial of Hempstead Video's motion to disqualify Valley Stream's counsel. While Defendants cited *Arifi v. de Transport du Cocher, Inc.*, 290 F. Supp.2d 344 (E.D.N.Y. 2003) for the general proposition that doubts must be resolved in favor of disqualification, that case concerned a conflict based on prior

representation and, as discussed above, the actions in this matter in no way necessitate disqualification.

## III.    DISQUALIFICATION IS NOT REQUIRED UNDER THE ADVOCATE-WITNESS RULE

Nor is disqualification required based on the advocate-witness rule, Rule 3.7.  "Rule 3.7 lends itself to opportunistic abuse," and the Second Circuit has cautioned that "courts must guard against the tactical use of motions to disqualify counsel, ... particularly motions under the witness-advocate rule," by subjecting them "to fairly strict scrutiny."  *Murray v. Metro. Life Ins. Co*., 583 F.3d 173, 178 (2d Cir. 2009) (internal quotation marks omitted).  The purposes of Rule 3.7(a) are to protect the integrity of the judicial process and avoid potential jury confusion by ensuring that an attorney is not put in the position of vouching for his or her own credibility or having his or her credibility impeached by opposing counsel.  *Samad Bros., Inc. v. Bokara Rug Co., Inc*., 2012 WL 1604849, at *4 (S.D.N.Y. May 8, 2012) (*citing Murray*, 583 F.3d at 178).

The rule is meant to apply when an attorney had personal involvement in the facts underlying a dispute, not when an attorney learned certain facts in the course of his investigation. *See Gleason v. Zocco*, 941 F. Supp. 32, 35-36 (S.D.N.Y. 1996) (fact that attorney was necessary witness and had "extensive personal involvement in every aspect of the underlying controversies that led to this lawsuit" required disqualification); *Hakimian Management Corp. v. Richard C. Fiore, In*c., 16 Misc. 3d 1108(A), 2007 WL 2003759, at *9 (Sup. Ct. N.Y. Co. July 9, 2007) (plaintiffs' counsel "ought" to be called as witness where "he is the most knowledgeable individual concerning the [underlying transaction]").  There is no question that Mr. Klein and Mr. Nash were not involved in the events underlying this lawsuit.  Further, there is no need for trial testimony concerning the meeting between Mr. Zummo, Mr. Jones, Mr. Nash, Mr. Klein,

and Mr. Manes and, in arguing to the contrary, Defendants appear to be conflating the concerns of Rule 4.2, which does not apply as discussed above, and those of Rule 3.7.

Moreover, the rule does not apply because there is no showing that testimony of either Mr. Nash or Mr. Klein would be "'strictly necessary' to a truthful resolution of this action." *Eisinger*, 1994 WL 86403 at *2. If testimony concerning the September meeting were required, Mr. Manes or Mr. Jones, both of whom were present in addition to Mr. Zummo, could testify. *Id.* at *2 (disqualification based on advocate-witness rule not required since, *inter alia*, "[c]ourt already has significant evidence before it on the circumstances leading up to the release"); *see also Paramount Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) (declining to disqualify based on advocate-witness rule and holding "[a] finding of necessity takes into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence. Testimony may be relevant and even highly useful but still not strictly necessary.").

The implication that there was something untoward about Mr. Nash's meeting with Ms. Shea and receipt of documents from her can be quickly dispensed with. (Def's MOL at 5-6). Ms. Shea had already been fired and indeed had initiated her New York State Human Rights Division complaint when Mr. Nash spoke to her. Thus, there is no violation of Rule 4.2. *See* Rule 4.2, cmt. 7 (permission of organization's lawyer is not required for communication with former unrepresented constituent). At the time Mr. Nash spoke to Ms. Shea, she was unrepresented. (Nash Decl. ¶ 10, n.1). Nor is there any suggestion that testimony concerning the meeting between Mr. Nash and Ms. Shea, as opposed to Ms. Shea's factual testimony, will have any relevance to this matter.

Since neither Mr. Nash nor Mr. Klein violated of the advocate-witness rule, or Rule 4.2, there is no basis to disqualify their firm, Schlam Stone & Dolan LLP.

## **CONCLUSION**

For the reasons stated Defendants' motion should be denied in its entirety.

Dated: New York, New York
       March 26, 2019

              Respectfully submitted,

              **SCHLAM STONE & DOLAN LLP**

            By: _____/s/_____
              Bradley J. Nash
              Samuel L. Butt
              26 Broadway, 19th Floor
              New York, NY 10004
              Phone: 212-344-5400
              Fax: 212-344-7677
              E-mail: bnash@schlamstone.com
              E-mail: sbutt@schlamstone.com

              *Attorneys for Plaintiffs Samuel Indig, Meir Kahana,*
              *and Robert Klein*