UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SAMUEL INDIG, LEAH INDIG, MEIR KAHANA,
ROBERT KLEIN, and NAFTALI KLEIN

                       Plaintiffs,

   -against-

THE VILLAGE OF POMONA, BRETT YAGEL, LOUIS
ZUMMO, LEON HARRIS, and DORIS ULMAN,

                       Defendants.
------------------------------------------------------------------X

Case No: 18-cv-10204

**REPLY DECLARATION OF
LOUIS ZUMMO**

LOUIS ZUMMO, hereby declares under penalty of perjury and pursuant to 28 U.S.C. §1746, as follows:

1. I am a defendant herein and the Building Inspector for the Village of Pomona. I make this declaration in reply to plaintiffs' opposition to defendants' motion to disqualify Schlam, Stone & Dolan, LLP, attorneys for plaintiffs.

2. The facts are quite different from what is portrayed by Mr. Nash and Mr. Manes in their opposition papers. First, the initial discussion with Mr. Manes was not in the bathroom. It was in the hallway. I did not approach him. Rather, he approached me. I never told Manes or Nash that Doris Ulman had told me or any other employee of the Village to delete emails or otherwise tamper with evidence.

3. I did not have any kind of pre-existing friendship with Manes. My interaction with him was limited to when he filed for permits. When I was at his house it was solely for the purposes of conducting inspections on the house, not for social purposes. In fact, at the time of the deposition

1

Manes had already sued the Village and claimed that Doris Ulman had tried to extort money from him. I also never apologized to Manes.

4. In the lawsuit brought by TAL Properties in Supreme Court, Rockland County, against the Village for a declaratory judgment (index number 031216/2017), I was, and still am, represented by Doris Ulman, the Village Attorney. From the start of the lawsuit in 2017 up to the present, I regularly consulted with Ms. Ulman about the case.

5. In the criminal prosecutions against plaintiffs Naftali Klein and Leah Indig which are referenced in plaintiffs' amended complaint, I regularly consulted with Chris Riley, who was the special prosecutor in those cases. I was also called by the prosecution to testify in those cases regarding the code violations which I had issued to Naftali Klein and Leah Indig.

6. In a CPLR article 78 proceeding brought by Naftali Klein and his wife Frida Klein against the Village in state court, I regularly consulted with Ms. Ulman, the Village Attorney, regarding the case.

7. In 2017, TAL Properties initiated another lawsuit in state court, which was later removed to federal court, alleging discrimination by the Village in the allegedly delayed issuance of a certificate of occupancy to TAL and in the enforcement of slope grading requirements against TAL. I was initially named as a defendant in that lawsuit, but after the case was removed to the U.S. District Court for the Southern District of New York, TAL Properties amended its complaint to drop me as a defendant in the case. The case was later dismissed. Nonetheless, both while I was a defendant and afterward, I consulted with Ms. Ulman, the Village Attorney, about the case when it was pending.

8. When I met Manes at his home in the second week of August 2018, Manes threatened me with litigation arising from his allegations that Orthodox Jewish property owners

were targeted for enforcement of the Village Code. Manes offered to pay for my defense in litigation if I agreed to testify against the then Mayor and the Village Attorney.

9. Based on Manes's threats of litigation and my inability to pay costly legal fees, I agreed to meet with Glen Jones, who was an attorney selected by Manes. Manes never advised me that I could pick an attorney of my own choosing. Manes told me he was retaining Glen Jones. When I arrived at the meeting with Jones he was already versed in the matter despite the fact I had given him no information.

10. I never told Jones he was my lawyer, nor did I ever tell Manes, Solomon Klein or Nash that Jones was my lawyer. I never signed the retainer agreement. The retainer letter itself specifically provides "My representation of the Client will commence once the letter is signed and returned to me". See Exhibit 3 to defendants' opposition papers (Retainer Agreement, p. 2 ). I never signed or returned the retainer agreement. Jones sent me the retainer agreement with the first cooperation agreement that had been prepared by plaintiffs' counsel. Jones subsequently sent me a second cooperation agreement along with another retainer agreement, neither of which I signed.

11. Despite that Manes had threatened me with further litigation, Nash, Solomon Klein and Jones never told me that the Village may be obligated to indemnify me and pay for my defense in such threatened litigation. I did not understand my rights nor did Nash, Solomon Klein or Jones explain them to me.

12. Manes had signed the second cooperation agreement before the Rella Boulevard meeting. I felt pressured to attend the meeting. Jones repeatedly called me after the meeting was already agreed to by him and Nash's office. Jones arranged the meeting with them despite the fact that I had not signed the retainer agreement or otherwise agreed that Jones was my attorney. Jones

said to me the meeting was necessary because the plaintiffs' lawyer wanted to verify information and see if it was worth proceeding.

13. I did not arrive with Jones. I went to the building but waited in the lobby because no one had given me a floor or room number. When Jones arrived he called Nash and found out the location of the meeting and we walked there together. We did not leave together; Jones walked me to the lobby then said he had to go back inside to talk to them.

14. At the meeting, Solomon Klein did most of the talking while Nash paced around the room. Jones said virtually nothing while Klein grilled me. Manes was not personally present; he only listened in telephonically on speaker phone.

15. The meeting lasted about two hours. During the meeting, Klein told me that they had gotten information from Noreen Shea and he said they had "meetings" with her.

16. I never said that there had been selective targeting of Jewish residents and/or houses of worship. In fact, I explained to them that there was not any targeting of Jewish residents and/or houses of worship. I never said anything about "jaywalking" tickets. I never said that Brett Yagel was an anti-semite or that he had said "we don't want this element" referring to Jewish residents and/or houses of worship.

17. Klein specifically grilled me about plaintiff Kahana's pool, Noreen Shea's claims, and their allegation that there was an email where Noreen Shea was purportedly referred to by Brett Yagel as a "Jew Lover." I repeatedly told them that I did not have any such e-mail and I had no idea what they were talking about.

I declare the foregoing is true and correct.

Executed this 8 day of May, 2019

_____
LOUIS ZUMMO