UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
SAMUEL INDIG, LEAH INDIG, MEIR KAHANA,     Case No: 18-cv-10204
ROBERT KLEIN, and NAFTALI KLEIN

                         Plaintiffs,

   -against-

THE VILLAGE OF POMONA, BRETT YAGEL, LOUIS
ZUMMO, LEON HARRIS, and DORIS ULMAN,

                         Defendants.
------------------------------------------------------------------ X


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL


**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
*Attorneys for Defendants Village of Pomona, Brett Yagel, Louis Zummo, and Doris Ulman*
**1133 Westchester Avenue
White Plains, New York 10604**


By:
Janine A. Mastellone, Esq.
John B. Martin, Esq.

# TABLE OF CONTENTS

                                **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

Introduction ................................................................................................................................... 1

  POINT I  Plaintiffs' Counsel's and Manes's Contact With Zummo, Which Occurred Without Notice to Zummo's Counsel, Violated the No-Contact Rule ............................................................................................................. 1

    A.  The Village and Zummo were represented by Ulman When Plaintiffs' Counsel Interrogated Zummo Regarding Acts that Could Be Imputed to the Village ................................................................................................. 1

    B.  Jones Was Not Counsel for Zummo and Could Not Authorize Contact Without Ulman's Consent .................................................................................. 6

  POINT II  Plaintiffs' Counsel's Interrogation of Zummo Made Plaintiffs' Counsel Fact Witnesses, and Counsel Must be Disqualified Under the Advocate-Witness Rule ................................................................................................ 9

Conclusion .................................................................................................................................. 11

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Brown v. State of New York*, 89 N.Y.2d
172 (1996) ........................................................................................................................... 2

*Ellis v. County of Broome*,
103 A.D.2d 861 (3d Dept. 1984) ........................................................................................ 10

*Fields-D'Arpino v. Restaurant Assocs., Inc.*,
39 F. Supp. 2d 412 (S.D.N.Y. 1999) .................................................................................. 10

*Gould v. Decolator*,
131 A.D.3d 448, 448-50 (2d Dept. 2015) ........................................................................... 10

*Hammond v. Junction City*,
167 F. Supp. 2d 1271 (D. Kan. 2001) .............................................................................. 4, 5

*In re GM LLC Ignition Switch Litig.*,
2016 U.S. Dist. LEXIS 49272 (S.D.N.Y. Apr. 12, 2016) .................................................... 8

*In re Simels*,
1993 U.S. Dist. LEXIS 17454 (S.D.N.Y. Dec. 10, 1993) .................................................... 8

*McCallum v. CSX Transp. Inc.*,
149 F.R.D. 104, (M.D.N.C. 1993) ....................................................................................... 6

*Neisig v. Team I*,
76 N.Y.2d 363 (1983) .......................................................................................................... 2

*Papanicolaou v. Chase Manhattan Bank, N.A.*,
720 F. Supp. 1080, (S.D.N.Y. 1989) ................................................................................... 9

*TAL v. Village of Pomona*, 7:17-cv-02928 ............................................................................ 2, 7

*United States v. Orgad*,
132 F. Supp. 2d 107, (E.D.N.Y. 2001) .............................................................................. 10

*United States v. Talao*,
222 F.3d 1133 (9th Cir. 2000) .......................................................................................... 5, 6

*Zetlin/Oxhandler, Inc. v. Ridgely/Philadelphia Ltd. Partnership*,
1987 U.S. Dist. LEXIS 9269 (S.D.N.Y. 1987). ................................................................. 10

**Statutes**

NY Labor Law § 740(2) .................................................................................................................. 3

NY Labor Law § 740(3) .................................................................................................................. 3

**Other Authorities**

NYSBA Comm. Prof. Eth. Op. 904 (2012) ..................................................................................... 8

**Rules**

NYRPC 1.0(l) .................................................................................................................................. 8

NYRPC 3.4(b) ............................................................................................................................... 11

NYRPC 3.7 ...................................................................................................................................... 9

NYRPC 4.2 ....................................................................................................................... 1, 2, 4, 6, 8, 9

NYRPC 4.2(b) ................................................................................................................................. 8

NYRPC 8.4(d) ............................................................................................................................... 11

NYRPC 8.4(h) ............................................................................................................................... 11

**Introduction**

Defendants Village of Pomona, Brett Yagel ("Yagel"), Louis Zummo ("Zummo"), and Doris Ullman ("Ulman"), (collectively "the Village defendants"), respectfully submit this reply memorandum of law in further support of their motion to disqualify plaintiffs' counsel Schlam Stone & Dolan, LLP.

**POINT I**

**Plaintiffs' Counsel's and Manes's Contact With Zummo, Which Occurred Without Notice to Zummo's Counsel, Violated the No-Contact Rule**

Plaintiffs and their counsel claim that, at the time they met with Zummo, Zummo was supposedly represented by counsel only as a Village official and not in an individual capacity, and thus their efforts to intimidate him into supporting their litigation against the Village did not violate New York Rule of Professional Conduct ("NYRPC") 4.2, NYRPC's prohibition against direct communication with a represented party. Plaintiffs also urge that, because it was Avrohom Manes who initially used threats to try to convince Zummo to give false testimony against the Village, counsel is absolved from responsibility for Manes's contact with Zummo. Additionally, in plaintiffs' counsel's view, their interrogation of Zummo did not violate the no-contact rule because Zummo was allegedly represented in that meeting by a lawyer who was hand-picked by Manes. They also claim they did not have to notify Ulman because Zummo was purportedly a "whistleblower" whose attorney, Ulman, was conflicted by her simultaneous representation of the Village and Zummo. *See* D.E. #37 at 1-17. Plaintiffs' arguments should be rejected as nothing more than a baseless pretext for their use of coercion and an offer of a benefit to induce potentially false testimony by Zummo against the Village in violation of the no-contact rule.

A. The Village and Zummo Were Represented by Ulman When Plaintiffs' Counsel Interrogated Zummo Regarding Acts that Could Be Imputed to the Village

1

At the outset, Zummo was clearly represented by Ulman at the time of the relevant contact between plaintiffs' counsel and Zummo. Contrary to plaintiffs' counsel's conclusory argument, Zummo confirms in his declaration that Ulman was his attorney. *See* D.E. #29-1 at ¶¶ 2, 9.[1] Furthermore, Ulman acted as counsel for Zummo in all respects in the state lawsuit, and there is no evidence that the scope of her representation was limited in any way. *See* Ex. G at pages 2-3; D.E. #29-1 at ¶ 2; D.E. #38-5 at ¶ 2. Thus, plaintiffs' counsel's contact with Zummo, which occurred without Ulman's knowledge or consent, violated NYRPC 4.2.

Even if Ulman somehow represented Zummo only in his official capacity, plaintiffs' counsel's questioning of Zummo would be entirely improper because their inquiries of a high-ranking Village official were, in effect, inquiries of the Village itself, which was indisputably represented in the lawsuit. As the NYRPC 4.2 makes clear, where an organization, such as the Village here, is represented by counsel, an adversary's attorney cannot communicate with an employee of the organization whose conduct could be imputed to the organization for liability purposes or whose actions could legally bind the organization, unless the organization's counsel is notified. *See* NYRPC 4.2, Comment 7; *see generally Neisig v. Team I*, 76 N.Y.2d 363 (1983). Here, Zummo is the Village Building Inspector, such that his admissions might be considered binding on the Village, and any tortious conduct by Zummo can, under state law, create vicarious civil liability for the Village. *See generally Brown v. State of New York*, 89 N.Y.2d 172, 193 (1996). Plaintiffs' counsel should not have interrogated Zummo without first notifying Ulman,

---

[1] In addition, when TAL Properties first filed its federal civil rights case against the Village in state court, TAL named Zummo as a defendant (*see* Ex. F), and Zummo was represented by this office, as counsel to the Village, until TAL removed his name from the caption of the action via an amendment to the complaint. *See TAL v. Village of Pomona*, 7:17-cv-02928, D.E. #10-1. Even after Zummo was no longer named as a defendant, TAL's claims against the Village still stemmed in part from Zummo's refusal to issue a certificate of occupancy, such that TAL was attempting to hold the Village liable based in part on Zummo's conduct. *See TAL v. Village of Pomona*, 7:17-cv-02928, D.E. #16 at 13. Thus, during his involvement in TAL's federal and state lawsuits Zummo has consistently had counsel.

who was the Village's and Zummo's counsel. The need for plaintiffs' counsel to consult with Ulman was especially acute here insofar as plaintiffs' counsel planned to ask, and did ask, questions of Zummo about his conduct as Building Inspector and whether he would provide documentary evidence favorable to plaintiffs about his role in the operations of the Village government. *See* Reply Declaration of Louis Zummo ("Zum. Rep.") at ¶¶ 16-17; D.E. #40 at ¶ 31; D.E. #38 at ¶ 26; *see also* Declaration of Professor Andrew Kent ("Kent Dec.") at ¶¶17-27.

While plaintiffs' counsel now assert that Ulman could not act as counsel for Zummo because Zummo allegedly accused her of wrongdoing, this cannot justify violation of the no-contact rule because: (1) Zummo has refuted Manes's claims about Zummo's supposed accusations against Ulman and the Village, and hence there was no potential conflict; and (2) even if there were a potential conflict, plaintiffs' counsel has cited no authority for the notion that they could unilaterally ignore Ulman's role as counsel and interrogate her client based on their belief in the existence of a conflict. *See* D.E. #29-1; Zum. Rep. at ¶¶ 2, 4-7, 16-17; *see also* Kent Dec. at ¶ 38 (explaining that counsel should not unilaterally violate rule based on belief in conflict, but should instead seek court intervention).

Ulman had no potential conflict of interest because Zummo has affirmed in declarations that he never claimed any wrongdoing by Ulman or the Village.[2] Zummo was not motivated to meet Manes and plaintiffs' counsel based on a desire to "blow the whistle" against Ulman, but rather met with them in response to threats of further litigation against him, which had left him under the impression that his defense would not be covered by the Village and that he would be

---

[2] Not only was Zummo not acting as a whistleblower as explained in the Kent declaration; under New York law he would not have whistleblower status. For government employees such as Zummo, New York law defines a whistleblower as an employee who has first brought an activity or policy or practice to the attention of a supervisor. NY Labor Law § 740(3). There is no claim that Zummo ever did this, much less that he undertook to disclose an activity or practice to a public body which creates a substantial and specific danger to public health or safety as would also be required to claim whistleblower status. *See* NY Labor Law § 740(2).

3

financially ruined unless he spoke to plaintiffs' counsel. *See* D.E. #29-2 at ¶¶ 3-5; Zum. Rep. at ¶¶ 9, 11-12. Zummo and Ulman have sworn, respectively, that there was no accusation of wrongdoing which could lead to a conflict, and that Ulman represented Zummo at the time of his contact with plaintiffs' counsel. *See* Ex. G; D.E. #29-1 at ¶ 2, 9. Moreover, Ulman's simultaneous representation of the Village and Zummo presented no inherent conflict because Manes, and later plaintiffs here, sued to hold the Village vicariously liable for Zummo's alleged conduct, and therefore the Village and Zummo were completely united in their interest in defending the propriety of his actions. Consequently, plaintiffs' counsel's failure to notify Ulman before meeting with Zummo requires their disqualification.

Significantly, here, there is no exception to the no-contact rule for situations in which the represented party is an alleged whistleblower against his or her employer and in favor of an opposing private party. In *Hammond v. Junction City*, 167 F. Supp. 2d 1271 (D. Kan. 2001), the plaintiff sued Junction City for employment discrimination, and thereafter the City's Director of Human Resources initiated contact with the plaintiff's counsel, claiming that the City had discriminated against African American employees such as the plaintiff and that he wanted counsel's aid in potentially bringing a discrimination claim of his own against the City. *See Hammond*, 167 F. Supp. 2d at 1274, 1276-79. Counsel repeatedly interviewed the employee and elicited damaging admissions of discriminatory practices by the City, without ever contacting the City's attorney. *See id.* at 1276-78. When the City moved to disqualify the plaintiff's counsel under the local version of the no-contact rule, which mirrors NYRPC 4.2, counsel opposed disqualification by arguing, among other things, that the employee had acted in his personal capacity to form an attorney-client relationship with the plaintiff's counsel, such that the plaintiff's counsel did not need to contact the City's attorney before speaking to the employee as an individual

4

and helping him expose the City's alleged wrongdoing. *See id.* at 1286-87. The Court rejected this argument and concluded that, because the individual capacity relationship arose during the attorney's unethical *ex parte* communications with an employee who "had managerial responsibilities on behalf of the City that rendered him off-limits," the no-contact rule barred the plaintiff's attorney from speaking to the employee without contacting the City's attorney. *Id.* at 1287. The Court further explained that, although the employee had initiated the contact, the plaintiffs' counsel still violated the no-contact rule because the rule "makes no exception for contacts that are initiated by the party represented by counsel." *Id.* Since the employee allegedly made damaging admissions of misconduct by the City, the *ex parte* contact had tainted the trial, and the Court disqualified the plaintiff's attorney on that basis. *See id.* at 1289-91.

Here, as in *Hammond*, plaintiffs' counsel contacted a high-ranking Village official, who had managerial responsibilities in enforcing the Village Code, without informing the Village Attorney. Just as the employee in *Hammond* admitted that the City engaged in illegal discrimination, Zummo here was alleged – falsely – by Manes to have admitted that the Village engaged in discriminatory enforcement of the Village Code. In this case and in *Hammond*, the plaintiffs' counsel argue that the municipal employee was a whistleblower who had separate representation as an individual and hence could be questioned without notice to the municipality's attorney. Here, as in *Hammond*, this Court should disqualify counsel.

*United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000), cited by plaintiffs' counsel, is readily distinguishable. There, an employee of a private company contacted the U.S. Attorney's Office, expressed her desire to report serious crimes by her employer and directly stated that she did not want to be represented by the corporation's attorney or testify in counsel's presence because she would feel compelled to give false testimony insofar as counsel had previously urged her to testify

5

falsely. *See Talao*, 22 F.3d at 1135-37. An Assistant U.S. Attorney then interviewed the employee without notifying the corporation's lawyer. *See id.* In that unique context, the Ninth Circuit declined to sanction the prosecutor for speaking to the employee outside the presence of the corporation's counsel because the Court "deem[ed] manifest that when an employee/party of a defendant corporation initiates communications with an attorney <u>for the government</u> for the purpose of disclosing that corporate officers are <u>attempting to suborn perjury and obstruct justice,</u> Rule 2-100 does not bar discussions between the employee and the attorney." *Id.* at 1140 (emphases added). Here, by contrast, Zummo did not report crimes to a law enforcement agency, and plaintiffs' counsel merely claim (falsely) that Zummo wanted to provide damaging information to a private party who was suing the Village. Furthermore, even plaintiffs' counsel do not claim that Zummo explicitly told them he did not want to be represented by Ulman or that he would feel compelled to be untruthful in her presence. Thus, here, unlike in *Talao*, the represented employee did not reject the representation of his employer's lawyer, did not claim that the corporation's attorney had engaged in witness tampering and was not reporting crimes to government officials. Consequently, here, there was no rejection of the attorney-client relationship which would weaken the force of the no-contact rule, and there was no compelling governmental interest in investigating crimes. Counsel violated the no-contact rule. *See* Kent Dec. at ¶¶ 17-45.

> B. Jones Was Not Counsel for Zummo and Could Not Authorize Contact Without Ulman's Consent

Plaintiffs' counsel contend that they did notify Zummo's counsel before speaking to him because they arranged the meeting with Glen Jones, who supposedly represented Zummo in his individual capacity. *See* D.E. #37 at 10-11. Even if true, plaintiffs' counsel would still have been required to contact Ulman before questioning Zummo about conduct which could be attributed to the Village. *See* NYRPC 4.2, Comment 7; *see generally McCallum v. CSX Transp. Inc.*, 149

6

F.R.D. 104, 106-111 (M.D.N.C. 1993) (finding that interview of high-ranking corporate employees without notice to corporation's counsel violated the no-contact rule because the employees' admissions could be binding on the corporation); Kent Dec. at ¶ 30.

More to the point, Zummo has sworn, without contradiction, that he never consented to have Jones represent him, that he never signed the engagement letter as Jones requested and that Jones was never Zummo's counsel. *See* Zum. Rep. at ¶¶ 9-13; *see also* D.E. #29-4. Additionally, Jones could not have been counsel to Zummo because of an obvious conflict of interest: Jones was selected and paid by Manes, who was then suing Zummo in state court. *See* Zum. Rep. at ¶ 3, 9-13; D.E. #29-1 at ¶¶ 7-9.[3] Zummo did not independently select Jones as counsel, nor was he informed of his right to choose his own lawyer. *See* Zum. Rep. at ¶¶ 9-11; D.E. #29-1 at ¶¶ 8-9. Notably, plaintiffs' counsel knew of the dubious circumstances surrounding Jones's role in this case. Plaintiffs' counsel suggested to Manes that Jones should become Zummo's alleged lawyer, and plaintiffs' counsel do not claim to have received any acknowledgment from Zummo that he had consented to Jones's representation or waived the conflict noted above. *See* D.E. #38 at ¶ 17; D.E. #40 at ¶ 8. Thus, Jones did not represent Zummo, and plaintiffs' counsel's arranging the meeting without notice to or consent of Ulman, was a flagrant violation of the no-contact rule.

Contrary to plaintiffs' counsel's claim, they could not interrogate Zummo under the theory that Ulman represented Zummo in the *TAL Properties* lawsuit and not in the instant litigation, for the two lawsuits are so closely related as to constitute the same matter for purposes of the no-contact rule. Plaintiffs' claim in this litigation expressly relies on the Village Code enforcement actions and property disputes at issue in the *TAL Properties* lawsuit and other related litigation as

---

[3] In fact, since Mr. Manes does not purport to have actually ever paid Jones for his services, on behalf of Zummo or in any other capacity, Jones evidently was not retained for paid employment as an attorney by anyone, much less by Zummo.

7

the basis for plaintiffs' conclusory claims of discrimination against Orthodox Jewish residents of the Village, and Manes, the plaintiff in the *TAL Properties* lawsuit, has been paying plaintiffs' legal fees in this litigation. *See* D.E. #1 at ¶¶ 17, 39, 52; D.E. #29-1 at ¶ 5. Thus, these lawsuits constitute the same "matter" as broadly defined for purposes of the no-contact rule. *See* NYRPC 1.0(l); NYRPC 4.2; NYSBA Comm. Prof. Eth. Op. 904 (2012); Kent Dec. at ¶¶ 20-24; *cf. In re Simels*, 1993 U.S. Dist. LEXIS 17454, *3-10 (S.D.N.Y. Dec. 10, 1993) (communication with a witness who was a represented party in a related criminal prosecution, but not the one at bar, was still prohibited).

It does not matter that Manes, rather than plaintiffs' counsel, first spoke to Zummo. In that regard, where a plaintiff proposes to contact another represented party, the plaintiff's counsel must "give[ ] reasonable advance notice to the represented person's counsel that such communications will be taking place." NYRPC 4.2(b). Here, neither Manes nor plaintiffs' counsel notified Ulman that they proposed to communicate with her client, and as a result, they violated the no-contract rule. Likewise, plaintiffs' counsel did not advise against, or avoid, "abusive, harassing, or unfair conduct with regard to the represented person" (NYRPC 4.2, comment 12), but rather arranged to have a lawyer who was beholden to Manes try to pressure Zummo into helping Manes with their lawsuits. *See* D.E. #38 at ¶ 17. Although plaintiffs' counsel claim that Zummo initiated the contact with Mr. Manes – which Zummo denies (*see* Zum. Rep. at ¶ 2) – that is immaterial because a represented party's initiation of communication within the scope of the no-contact rule does not eliminate the application of the rule. *See In re GM LLC Ignition Switch Litig.*, 2016 U.S. Dist. LEXIS 49272, *377 (S.D.N.Y. Apr. 12, 2016); *see also* NYRPC 4.2, comment 3. Moreover, even if plaintiffs' counsel had not instigated Manes's approach to Zummo, their subsequent meeting

8

with Zummo at their office, without any notice to Ulman, still violated NYRPC 4.2, *See generally Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1084-87 (S.D.N.Y. 1989).[4]

Plaintiffs' counsel's violations of the NYRPC were highly prejudicial and warrant their disqualification. Plaintiffs' counsel will undoubtedly use any information gleaned from the meeting against the Village and testify to any alleged admissions made by Zummo. While Zummo has refuted all false statements about his communications with them, counsel's self-evident plan to offer their version of a story supposedly gleaned from the interrogation which they conducted in violation of the no-contact rule threatens to inflict extreme damage on the Village's defense.

## POINT II

### Plaintiffs' Counsel's Interrogation of Zummo Made Plaintiffs' Counsel Fact Witnesses and Counsel Must be Disqualified Under the Advocate-Witness Rule

Plaintiffs' counsel claim that they did not violate the advocate-witness rule, NYRPC 3.7, because they only spoke to witnesses and did not personally observe the alleged issuance of tickets underlying plaintiffs' claims. *See* D.E. #37 at 18-20. But plaintiffs' counsel undoubtedly plans to present evidence that Zummo purportedly approached them as a "whistleblower" who offered to reveal his and the Village's discriminatory acts and animus, making them witnesses who cannot remain counsel.

According to plaintiffs, Zummo approached Manes and counsel claiming to be a "whistleblower" who planned to reveal misconduct by himself and the Village. But Zummo categorically denies that he planned to, or did, admit the validity of plaintiffs' and Manes's claims in the meeting. *See* D.E. #29-1; Zum. Rep. at ¶¶ 3, 8-16. To the contrary, Zummo states that he told plaintiffs' counsel there was no discrimination by the Village. *See* Zum. Rep. at ¶ 16. Thus,

---

[4] Given plaintiffs' counsel's role in orchestrating the sham involving Jones, it would come as no surprise that they arranged the initial contact as well. And, plaintiffs' counsel almost certainly advised Manes on contact with Zummo. *See* Kent Dec. at ¶ 4.

9

to prove plaintiffs' claims of discrimination, which would largely depend on Zummo's status as an alleged "whistleblower" whose conduct supposedly suggested the validity of plaintiffs' discrimination claims against the Village, plaintiffs' counsel would need to testify to resolve the dispute on that point by giving their version of Zummo's interactions with them and Manes. Consequently, plaintiffs' counsel are witnesses to important events needed to prove plaintiffs' claims, and they cannot serve as advocates for plaintiffs while attempting to defend their own credibility as witnesses to those events. *See Ellis v. County of Broome*, 103 A.D.2d 861, 861-62 (3d Dept. 1984) (defendant County's counsel had to be disqualified for speaking with plaintiff after the accident about the County's liability for the accident); *Gould v. Decolator*, 131 A.D.3d 448, (2d Dept. 2015) (counsel who negotiated and drafted a contract between the parties which was relevant to their substantive claims had to be disqualified under advocate-witness rule); *see United States v. Orgad*, 132 F. Supp. 2d 107, 109-125 (E.D.N.Y. 2001) (attorney's efforts to convince a witness against his client, which witness he considered to be a whistleblower about government abuse of power, to assist the defense, elicit information damaging to the government and avoid testifying against the attorney's client, required the attorney's disqualification).

Moreover, counsel may have to avoid eliciting information at trial about Zummo's meeting with them and their conduct, even if such information could potentially aid plaintiffs, in order to conceal evidence which might cast them in a negative light based on their scheme to arrange for the sham "representation" by Jones and the payment for Zummo's defense (an in-kind payment for his testimony). This potential conflict and the appearance of impropriety which it engenders should prompt disqualification of counsel. *See generally Fields-D'Arpino v. Restaurant Assocs., Inc.*, 39 F. Supp. 2d 412, GM LLC(S.D.N.Y. 1999); *Zetlin/Oxhandler, Inc. v. Ridgely/Philadelphia Ltd. Partnership*, 1987 U.S. Dist. LEXIS 9269, *13-15 (S.D.N.Y. 1987).

10

Finally, the Court should not lose sight of the overall egregiousness of plaintiffs' counsel's misconduct in evaluating counsel's actions under the NYRPC. While counsel's conduct certainly justifies disqualification under the no-contact and advocate-witness rules, the scope of counsel's misconduct goes beyond the narrow confines of any particular rule and taints the proceedings as a whole. Plaintiffs' counsel and Mr. Manes essentially attempted to pay a public official to give potentially false testimony against the Village by offering, via a "cooperation agreement," to pay all of his legal fees and defend him against any government enforcement actions. *See* D.E. #29-1; D.E. #38-5 at ¶ 9. Plaintiffs' counsel did nothing to ensure that Zummo understood his rights, and they preyed on his fears and unfamiliarity with the law to try to get him to cooperate in their plan. During their interrogation of Zummo, plaintiffs' counsel demanded that he turn over Village property and disclose potentially privileged communications with other Village officials on that property. *See* D.E. #38-5 at ¶ 9; D.E. #29-1 at ¶ 11. In this respect, plaintiffs' counsel violated the overarching rules that an attorney should not prejudice the administration of justice or engage in other conduct adversely reflecting on their fitness, thus tainting the case. *See* NYRPC 8.4(d), 8.4(h); *see also* NYRPC 3.4(b) (prohibiting offer of inducement for a witness's testimony).

## Conclusion

For the reasons stated above, this Court should grant defendants' motion in its entirety.

Dated:   White Plains, New York
         May 10, 2019

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
*Attorneys for Defendants*

Janine A. Mastellone
John B. Martin

11

1133 Westchester Avenue
White Plains, NY  10604
(914) 323-7000
Our File No.  12741.00086

7683014v.1