UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
SAMUEL INDIG, LEAH INDIG, MEIR KAHANA,      :    Case No: 18-cv-10204
ROBERT KLEIN, and NAFTALI KLEIN

                  Plaintiffs,

    -against-

THE VILLAGE OF POMONA, BRETT YAGEL, LOUIS
ZUMMO, LEON HARRIS, and DORIS ULMAN,

                  Defendants.
------------------------------------------------------------------ X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
***Attorneys for Defendants***
**1133 Westchester Avenue**
**White Plains, New York 10604**

By:
Janine A. Mastellone, Esq.
John B. Martin, Esq.

## TABLE OF CONTENTS

Page

Introduction ...................................................................................................1

Preliminary Statement .....................................................................................1

Facts and Procedural History ...........................................................................2

    1.    The Indigs' Claims ...............................................................2

    2.    Mr. Kahana's Claims ............................................................3

    3.    The Kleins' Claims ...............................................................4

    4.    AC's Claims About the Village's Conduct Toward Other Jewish Residents..........6

    Procedural History: ................................................................9

Argument ......................................................................................................9

Motion to Dismiss Standard .............................................................................9

    POINT I    Plaintiffs Robert Klein and Samuel Indig Should be Dismissed from the Case for Lack of Standing ................................................10

    POINT II    Plaintiffs' Claims Should be Dismissed Based on Younger and Heck Abstention .....................................................................10

    POINT III    Plaintiffs Fail to State Plausible Equal Protection Claims Because They Fail to Allege Facts Establishing that the Village Granted More Favorable Treatment to a Similarly Situated Comparator and Intentionally Discriminated Against Them Based on Religion ................13

        A.    Governing Law ..............................................................13

        B.    Plaintiffs' Failure to Identify a Comparator Similarly Situated in All Material Respects Dooms Their Claims ..............................17

        C.    Plaintiffs' Conclusory Assertions of Discriminatory Motive Cannot Sustain Their Claims of Intentional Religious Discrimination and Are Contradicted by the Indisputable Fact of Their Convictions ..................................................20

    POINT IV    Plaintiffs' Remaining Claims Are Unavailing ...........................24

Conclusion ...................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*333 E. 60th St., Inc. v. N.Y. State Liquor Auth.*,
  2008 U.S. Dist. LEXIS 67441 (S.D.N.Y. Aug. 29, 2008) ...................................................... 9

*62-64 Kenyon St., Hartford LLC v. City of Hartford*,
  2017 U.S. Dist. LEXIS 212955 (D. Conn. Dec. 29, 2017) .................................................... 10

*Adler v. Kent Village Hous. Co.*,
  123 F. Supp. 2d 91 (E.D.N.Y. 2000) ...................................................................................... 15

*Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*,
  751 F.3d 71 (2d Cir. 2014) ...................................................................................................... 10

*Amaker v. Schiraldi*,
  2017 U.S. Dist. LEXIS 166294 (E.D.N.Y. Sept. 29, 2017) ............................................. 17, 22

*Amid v. Vill. of Old Brookville*,
  2013 U.S. Dist. LEXIS 129447 (E.D.N.Y. Feb. 7, 2013) ...................................................... 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 9, 19

*AYDM Associates, LLC v. Town of Pamelia*,
  2016 U.S. Dist. LEXIS 121106 (N.D.N.Y. 2016) .................................................................. 14

*Azor v. City of New York*,
  2012 U.S. Dist. LEXIS 47067 (E.D.N.Y. Mar. 30, 2012) ..................................................... 13

*Barua v. City of New York*,
  2016 U.S. Dist. LEXIS 179610 (Dec. 28, 2016) .................................................................... 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 9, 19

*Bernstein v. Vill. of Wesley Hills*,
  95 F. Supp. 3d 547 (S.D.N.Y. 2015) ....................................................................................... 25

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*,
  111 F. Supp. 3d 459 (S.D.N.Y. 2015) ..................................................................................... 10

*Bowles v. New York City Transit Auth.*,
  2006 U.S. Dist. LEXIS 32914 (S.D.N.Y. May 23, 2006) ...................................................... 25

7708927v.1

*Bradshaw v. City of New York*,
    2017 U.S. Dist. LEXIS 201819 (S.D.N.Y. Dec. 7, 2017) .................................................... 21

*Brown v. City of Rochester*,
    2011 U.S. Dist. LEXIS 108130 (W.D.N.Y. Sept. 16, 2011) ................................................. 22

*Brown v. St. John's Univ.*,
    2010 U.S. Dist. LEXIS 147090 (E.D.N.Y. June 28, 2010) .................................................... 25

*Clack v. Torre*,
    2014 U.S. Dist. LEXIS 34578 (D. Conn. Mar. 17, 2014) .................................................... 16

*Clyburn v. Shields*,
    33 Fed. Appx. 552 (2d Cir. 2002) .................................................................................... 21

*Congregation Rabbinical Coll. Of Tartikov, Inc., v. Vill. of Pomona*,
    280 F. Supp. 3d 426 (S.D.N.Y. 2017) ............................................................................... 22

*Cordi-Allen v. Conlon*,
    494 F.3d 245 (1st Cir. 2007) ........................................................................................... 18

*Delbene v. Alesio*,
    2001 U.S. Dist. LEXIS 2150 (S.D.N.Y. 2001) .................................................................. 14

*Deleon v. Putnam Valley Bd. of Educ.*,
    2006 U.S. Dist. LEXIS 3337 (S.D.N.Y. Jan. 26, 2006) ...................................................... 23

*Dosiak v. Town of Brookhaven*,
    2017 U.S. Dist. LEXIS 217221 (E.D.N.Y. Nov. 27, 2017) ............................................. 11, 12

*Durham v. City of New York*,
    2019 U.S. Dist. LEXIS 47763 (S.D.N.Y. Mar. 22, 2019) .................................................... 24

*Dutchess Sanitation, Inc. v. Plattekill*,
    433 F. Supp. 580 (S.D.N.Y. 1977) ............................................................................. 11, 12

*EJS Props., LLC v. City of Toledo*,
    698 F.3d 845 (6th Cir. 2012) ........................................................................................... 18

*Filipowski v. Greenwood Lake*,
    2013 U.S. Dist. LEXIS 93695 (S.D.N.Y. July 3, 2013) ...................................................... 20

*Golodner v. Martinez*,
    2017 U.S. Dist. LEXIS 210409 (D. Conn. Dec. 21, 2017) ................................................... 17

*Graham v. Elmira City Sch. Dist.*,
    2015 U.S. Dist. LEXIS 37945 (W.D.N.Y. Mar. 25, 2015) ................................................... 22

7708927v.1

*Hampshire Recreation, LLC v. Vill. of Mamaroneck,*
2016 U.S. Dist. LEXIS 39496 (S.D.N.Y. March 25, 2016) .................................................. 20

*Hamzik v. Office for People with Developmental Disabilities,*
859 F. Supp. 2d 265 (N.D.N.Y. 2012) ...................................................................... 21

*Hayden v. Paterson,*
594 F.3d 150 (2d Cir. 2010)................................................................................. 16

*Heck v. Humphrey,*
512 U.S. 477 (1994).............................................................................. 11, 12, 13

*Hennessy v. City of Long Beach,*
258 F. Supp. 2d 200 (E.D.N.Y. 2003) ...................................................................... 25

*Jones v. J.C. Penney's Dep't Stores,*
2007 U.S. Dist. LEXIS 104120 (W.D.N.Y. Jan. 22, 2007) .................................................. 16

*Kalin v. Xanboo, Inc.,*
526 F. Supp. 2d 392 (S.D.N.Y. 2007)........................................................................ 9

*Kan. Penn Gaming, LLC v. Collins,*
656 F.3d 1210 (10th Cir. 2011) ............................................................................ 19

*Karout v. McBride,*
7 F. Supp. 3d 194 (D. Conn. 2014).......................................................................... 18

*Khaled v. Dearborn Heights Police Dep't,*
2017 U.S. App. LEXIS 19590 (6th Cir. Oct. 4, 2017)....................................................... 15

*LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester,*
40 F.3d 587 (2d Cir. 1994)................................................................................. 14

*LeClair v. Saunders,*
627 F.2d 606 (2d Cir. 1980)................................................................................ 14

*Lieberman v. City of Rochester,*
2011 U.S. Dist. LEXIS 46295 (S.D.N.Y. 2011) .............................................................. 15

*Lisa's Party City, Inc. v. Town of Henrietta,*
185 F.3d 12 (2d Cir. 1999)................................................................................. 14

*Lynn v. Vill. of Pomona,*
373 F. Supp. 2d 418 (S.D.N.Y. 2005)....................................................................... 25

*Marshall v. Town of Middlefield,*
2012 U.S. Dist. LEXIS 22897 (D. Conn. Feb. 23, 2012) ..................................................... 18

iv

*Martine's Service Center, Inc. v. Town of Wallkill,*
554 Fed. Appx. 32 (2d Cir. 2014) ................................................................... 14

*Masi Mgmt., Inc. v. Town of Ogden,*
273 A.D.2d 837 (4th Dept. 2000) ................................................................... 25

*McFarlane v. Roberta,*
891 F. Supp. 2d 275 (D. Conn. 2012) ............................................................. 9

*Mhany Mgmt. v. Inc. Vill. of Garden City & Garden City Bd. of Trustees,*
985 F. Supp. 2d 390 (E.D.N.Y. 2013) ........................................................... 25

*Missere v. Gross,*
826 F. Supp. 2d 542 (S.D.N.Y. 2011) ........................................................... 14

*Muhammad v. Maduekwe,*
2016 U.S. Dist. LEXIS 25826 (S.D.N.Y. Feb. 29, 2016) ............................... 16

*Murphy v. Gibbons,*
2014 U.S. Dist. LEXIS 140042 (N.D.N.Y. Sept. 29, 2014) ........................... 26

*Musco Propane, LLP v. Town of Wolcott,*
891 F. Supp. 2d 261 (D. Conn. 2012) ............................................................. 18

*New York Pet Welfare Association v. City of New York,*
143 F. Supp. 3d 50 (E.D.N.Y. 2015) ............................................................. 14

*Nunez v. Hamdan,*
2013 U.S. Dist. LEXIS 138625 (D. Utah 2013) ............................................. 15

*Panzella v. City of Newburgh,*
231 F. Supp. 3d 1 (S.D.N.Y. 2017) ........................................................... 14, 19

*Parks v. New York City Police Dep't,*
2000 U.S. Dist. LEXIS 12202 (E.D.N.Y. Aug. 24, 2000) .......................... 11, 13

*Patterson v. City of New York,*
2017 U.S. Dist. LEXIS 126279 (E.D.N.Y. Aug. 8, 2017) .......................... 17, 23

*People United for Children, Inc. v. City of New York,*
108 F. Supp. 2d 275 (S.D.N.Y. 2000) ........................................................... 25

*Pyke v. Cuomo,*
258 F.3d 107 (2d Cir. 2001) ........................................................... 15, 16, 17

*Rheingold v. Harrison Town Police Dep't,*
568 F. Supp. 2d 384 (S.D.N.Y. 2008) ............................................................. 9

v

*Rodriguez v. City of New York*,
    2019 U.S. Dist. LEXIS 31544 (S.D.N.Y. Feb. 22, 2019) ........................................................ 12

*Rodriguez v. Clinton*,
    357 Fed. Appx. 355 (2d Cir. 2009) ........................................................ 15, 21

*Rodriguez v. Margotta*,
    2000 U.S. App. LEXIS 16260 (2d Cir. 2000) ........................................................ 15

*Roman Catholic Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury*,
    128 F. Supp. 3d 566 (E.D.N.Y. 2015) ........................................................ 23

*Roman v. Velleca*,
    2012 U.S. Dist. LEXIS 136946 (D. Conn. Sept. 25, 2012) ........................................................ 17, 23

*Rosario v. Town of Mt. Kisco*,
    2018 U.S. Dist. LEXIS 80843 (S.D.N.Y. May 11, 2018) ........................................................ 16, 17

*Russo v. Golding*,
    2008 U.S. Dist. LEXIS 113152 (S.D.N.Y. Feb. 11, 2008) ........................................................ 13

*Sacher v. Vill. of Old Brookville*,
    967 F. Supp. 2d 663 (E.D.N.Y. 2013) ........................................................ 19

*Selevan v. N.Y. Thruway Auth.*,
    584 F.3d 82 (2d Cir. 2009) ........................................................ 24

*Simpson v. N.Y. State Dep't of Civ. Servs.*,
    166 Fed. Appx. 499 (2d Cir. 2006) ........................................................ 24

*Skoros v. City of New York*,
    437 F.3d 1 (2d Cir. 2006) ........................................................ 26

*Snyder v. Pugliese*,
    144 Fed. Appx. 174 (2d Cir. 2005) ........................................................ 14

*Staples v. Gerry*,
    2015 U.S. Dist. LEXIS 86629 (D.N.H. May 11, 2015) ........................................................ 15

*Stone v. Eamer*,
    2018 U.S. Dist. LEXIS 8672 ........................................................ 17, 21

*T.E. v. Pine Bush Cent. Sch. Dist.*,
    58 F. Supp. 3d 332 (S.D.N.Y. 2014) ........................................................ 25

*Tarantino v. City of Hornell*,
    615 F. Supp. 2d 102 (W.D.N.Y. 2009) ........................................................ 15

7708927v.1

*Thomas v. Venditto,*
   925 F. Supp. 2d 352 (E.D.N.Y. 2013) ............................................................... 11, 12

*Wharton v. County of Nassau,*
   2010 U.S. Dist. LEXIS 99174 (E.D.N.Y. Sept. 20, 2010) ...................................... 24

*Witt v. Vill. of Mamaroneck,*
   992 F. Supp. 2d 350 (S.D.N.Y. 2014) .................................................................. 9

*Wolongevicz v. Town of Manlius,*
   2018 U.S. Dist. LEXIS 130274 (N.D.N.Y. Aug. 3, 2018) ...................................... 21

*Younger v. Harris,*
   401 U.S. 37 (1971) ............................................................................................... 11

**Statutes**

42 U.S.C § 1983 ................................................................................................................ 2

42 U.S.C. § 3604(a) .......................................................................................................... 2

42 U.S.C. § 3604(b) .......................................................................................................... 2

42 U.S.C. § 3617 ............................................................................................................... 2

N.Y. Civil Rights Law § 40-c ............................................................................... 2, 24, 25

Village Code § 119-4 ......................................................................................................... 4

Village Code § 130-11(b) .......................................................................................... 12, 23

Village Code § 130-22(E) ..................................................................................... 3, 12, 23

**Rules**

F.R.C.P. 12(b)(1) ..................................................................................................... 1, 9, 10

F.R.C.P. 12(b)(6) ..................................................................................................... 1, 9, 10

F.R.C.P. 12(c) ............................................................................................................. 1, 10

## Introduction

Defendants Village of Pomona, Brett Yagel ("Mr. Yagel"), Louis Zummo ("Mr. Zummo"), Leon Harris ("Mr. Harris") and Doris Ulman ("Ms. Ulman"), (collectively "the Village" or defendants), respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), 12(b)(1), and 12(c), to dismiss the amended complaint ("AC") (Dkt. Entry #62) filed by plaintiffs Samuel Indig ("Mr. Indig"), Leah Indig ("Ms. Indig"), Meir Kahana ("Mr. Kahana"), Robert Klein ("Mr. Klein") and Naftali Klein ("Naftali") (collectively, "plaintiffs").

## Preliminary Statement

This is a civil rights action in which plaintiffs allege that defendants: (1) issued a stop work order to Mr. and Ms. Indig (collectively the "Indigs"), who are Orthodox Jews, because they illegally created a road on their property without approval to complete a grading project, while the Village did not require unspecified non-Jewish land owners to obtain approval to create roads in order to complete grading projects; (2) issued a ticket to Mr. Kahana, another Orthodox Jewish resident, for temporarily erecting a swimming poll on his property; (3) required Mr. Klein, who is an Orthodox Jew and member of the Village Board of Trustees ("the Board"), to install a sprinkler system in the home owned by Naftali as a condition of adding an extra floor at the bottom of the home, even though a non-Jewish property owner was allowed to build a four-story home without installing a fire sprinkler system; (4) issued a stop work order after Mr. Klein lifted the home on temporary supports and another stop work order based on Mr. Klein's failure to install the required fire sprinkler system; (5) delayed action on Mr. Klein's submissions of plans for approval; (6) issued a ticket to Mr. Klein for failure to properly dispose of leaves while unspecified non-Jewish land owners who also had not properly disposed of leaves on the same block did not receive tickets;

1

and (7) refused to give Mr. Klein a key to a Village office and scheduled Board meetings in such a way as to exclude him.  Plaintiffs contend that these actions were motivated by anti-Jewish animus reflected in comments made by Village officials.  Plaintiffs assert that, by undertaking the aforementioned actions, the Village engaged in selective enforcement of the Village Code of the Village of Pomona ("Village Code" or "the Code") and intentional discrimination against the plaintiffs based on their religion, thereby violating their rights under the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs further claim that the Village's actions infringed on their right to the free exercise of religion under the Free Exercise Clause of the First Amendment.  According to plaintiffs, the Village's conduct also violated the Fair Housing Act (42 U.S.C. §§ 3604(a); 3604(b); 3617) by denying them housing based on their religion.  Based on these claims, plaintiffs seek damages pursuant to 42 U.S.C § 1983.  Plaintiffs raise related claims for damages under the New York State Constitution and N.Y. Civil Rights Law § 40-c.  Plaintiffs further seek injunctions against defendants' alleged discrimination against them, and they demand the appointment of a third party to oversee code inspections and permit applications.  However, as will be detailed below, plaintiffs' claims should be dismissed because this Court lacks jurisdiction under abstention principles, and because plaintiffs fail to state a plausible claim for relief.

## Facts and Procedural History

*1.  The Indigs' Claims*

According to the AC, in 2015, the Indigs, who are Orthodox Jewish residents of the Village, bought a house on a property that was steeply sloped in the rear, and they planned to do grading work to turn the rear of the property into a backyard.  *See* AC at ¶ 69.[1]  Public records subject to

---

[1] Unless otherwise noted, the alleged facts summarized herein are taken from the allegations in the AC, and, obviously, those facts are simply allegations taken as true for purposes of this motion.  The AC is not evidence and the facts alleged therein are not conceded in any respect.

2

judicial notice indicate that the house is owned only by Mrs. Indig. *See* Ex. K. The Indigs submitted a slope grading plan for the work on the rear of their property to Village Building Inspector Zummo, and Mr. Zummo approved the plan and issued a permit. *See* AC at ¶ 71. The grading plan did not mention the use of any roads to allow tractors to access the rear of the property, as such roads would require additional approval. *See* AC at ¶¶ 72-73. Nonetheless, the Indigs created what they describe as a "dirt path" to enable a tractor to go to the bottom of the hill at the rear of their property. *See* AC at ¶ 72. Mr. Zummo, acting at the direction of Mr. Yagel, Mr. Harris and Ms. Ulman, issued a stop work order because he concluded that the "dirt path" was an unapproved road on the property. *See* AC at ¶ 73. Although a crane could have been used instead of a road to transport a tractor to the grading area, "[u]pon information and belief," no other residents had been required to use alternative methods to a road for tractors to perform such work. *See* AC at ¶ 73.

The Indigs appealed the stop work order to the Village Zoning Board of Appeals ("ZBA"), which, in their view, stayed the stop work order and allowed them to continue grading their property. *See* AC at ¶ 74. In response, the Village requested that Rockland County revoke the licenses of the Indigs' workers for performing the work barred by the stop work order. *See* AC at ¶ 74. The Indigs' engineer quit the project, telling them that the Village was making unspecified demands which were unfamiliar to him in the course of his career. *See* AC at ¶ 75. As a result, the grading work has not been done, and there is an allegedly dangerous steep slope at the rear of the property. *See* AC at ¶ 76. According to public records subject to judicial notice, the proceedings on the stop work order resulted in a prosecution for violating Village Code § 130-22(E) (barring violation of a stop work order), which is currently pending. *See* Ex. F; Ex. G.

*2. Mr. Kahana's Claims*

3

On an unknown date, Mr. Kahana, a Hasidic resident of the Village, received a ticket from the Village for placing a small pool temporarily on his property. *See* AC at ¶¶ 22, 78. On another unspecified occasion, Mr. Kahana received a "warning – but evidently no ticket – for having dog waste on his property. *See* AC at ¶ 79. Mr. Kahana does not own a dog. *See* AC at ¶ 79. On an unknown date, Mr. Klein saw a text message from Mr. Harris to Mr. Zummo, demanding that Mr. Zummo issue multiple violations to Mr. Kahana. *See* AC at ¶ 80. According to public records subject to judicial notice, the ticket for the pool resulted in a criminal prosecution. *See* Ex. I. As noted in the Mastellone declaration, the Haverstraw Town Court has informed counsel that Mr. Kahana pleaded guilty to violating the Village Code prior to the filing of the AC here. *See* Ex. I.

*3. The Kleins' Claims*

In 2016, Mr. Robert Klein ("Mr. Klein") planned to expand and lift up his home, which is solely owned by his parents Naftali ("Naftali") and Frieda Klein. *See* AC at ¶ 83; *see also* Ex. J. After Mr. Klein submitted plans for the project to the Village, his application was referred to the Village "zoning" board (in reality, the Village Planning Board). *See* AC at ¶ 84; *see generally* Village Code §119-4 (making the Planning Board the approving authority for site development plan permits). At a Planning Board meeting regarding the proposed project, Mr. Zummo stated that, because the expanded house would have three floors including the basement, the house required the installation of sprinklers. *See* AC at ¶ 84. Mr. Zummo told the Planning Board to deny construction of a basement at the house because it would be "just like them" to build an illegal basement apartment, and Mr. Klein took this as a reference to Orthodox Jews. AC at ¶ 84. The Planning Board requested that Mr. Klein submit new plans for the project, and after the plans were submitted, the Village issued a permit in December 2016. *See* AC at ¶ 85.

4

By the start of 2017, Mr. Klein had been elected to the Board of Trustees; during the election, Mayor Yagel had told him he should not run for the office, and after the election, Mayor Yagel told him to "watch [his] back" because "people [we]re watching [him]." AC at ¶ 81.

Before starting work on his house, in March 2017, Mr. Klein submitted altered plans for the project to the Village. *See* AC at ¶ 85. On April 24, 2017, after developing the new plans, Mr. Klein had the house lifted onto temporary supports. *See* AC at ¶ 86. On June 30, 2017, Mr. Zummo issued a stop work order. *See* AC at ¶ 87. Mr. Zummo also told Mr. Klein to resubmit the revised plans which he had submitted in March 2017. *See* AC at ¶ 88. Subsequently, Mr. Klein alleges he saw a text message from Mr. Yagel to Mr. Zummo stating, "give Klein a SWO by 3 pm or you are fired." AC at ¶ 87. Mr. Klein resubmitted the plans from March 2017. *See* AC at ¶ 88. In August 2017, Mr. Zummo twice inspected the foundation of the house project and approved that work. *See* AC at ¶ 89. In October 2017, Mr. Zummo issued a stop work order, though no work had been performed for several weeks and would not be performed during the Jewish holiday on which the order was issued. *See* AC at ¶ 89. Subsequently, Mr. Klein arranged with Ms. Ulman to have a meeting with Mr. Zummo. *See* AC at ¶ 90. At the meeting, Mr. Zummo explained that he had issued the stop work order because Mr. Klein did not have, or plan to have, a fire sprinkler system in the house. *See* AC at ¶ 90. Mr. Klein agreed to submit new plans for the project, but asked that the plan be reviewed promptly before winter. *See* AC at ¶ 90. Mr. Klein submitted the new plans on November 20, 2017. *See* AC at ¶ 90.

On November 28, 2017, Mr. Klein's engineer was copied – he believed inadvertently -- on a memorandum from the Village Engineer, which stated that while the plans complied with the Village Code and regulations, the plans should still be rejected because they lacked "details." AC at ¶ 91. In April 2018, on his own initiative, Mr. Klein submitted revised plans for his project to

5

the Village. *See* AC at ¶ 92. On an unspecified occasion, a neighbor of Mr. Klein overheard Mr. Zummo tell Ms. Ulman that nothing would happen if he did not respond to the new plans because there would be no decision for Mr. Klein to appeal. *See* AC at ¶ 93. Later, in response to a FOIL request, Mr. Klein learned that Peter Obe, a non-Jewish resident of the Village, built a house with no sprinkler system "between 2013 and 2017" without receiving a stop work order or delay in the project. AC at ¶ 94. Mr. Obe later sold his home to a Jewish family, who were subject to unspecified enforcement actions regarding their violations of the Village Code. *See* AC at ¶ 95.

At some point, the Village issued a ticket to Mr. Klein for improperly disposing of garbage and/or recycling material at 4:25 a.m. on a Saturday, which is the Jewish Sabbath. *See* AC at ¶¶ 61, 96. Mr. Klein also received a ticket for failure to properly dispose of leaves, even though there were other non-Jewish people on his block who engaged in more severe violations of the Code than the one committed by Mr. Klein and yet received no ticket. *See* AC at ¶ 96.

According to public records subject to judicial notice, Naftali Klein was convicted in Haverstraw Justice Court after trial for multiple violations of the stop work order in the course of Mr. Klein's project to expand and lift the house, and Naftali was sentenced to fines totaling $2,700.00. *See* Ex. E.

The AC alleges that, on an unspecified occasion, Mr. Yagel refused to give Mr. Klein a key to a Village office which is accessible to other Board members, and Mr. Yagel denied him access to unspecified records. *See* AC at ¶ 97. At some point, Mr. Yagel suggested that a Board meeting be held on a Jewish holiday so that Mr. Klein could not attend, and at some Board meetings, Board members would wait until Mr. Klein left and then continued conducting Village business. *See* AC at ¶ 97.

    *4.  AC's Claims About the Village's Conduct Toward Other Jewish Residents*

The Village also allegedly enforced the Village Code and a new inspection policy against Orthodox Jewish residents other than plaintiffs. In an unspecified time period when Orthodox Jews started moving to the Village, the Village had an informal policy that, at the time of sale of a property in the Village, the property should be inspected for violations of the Village Code. *See* AC at ¶ 44. An email of unspecified origin indicated that a non-Orthodox resident was permitted to continue using an illegally renovated basement as long as she did not sell her property. *See* AC at ¶ 46. In a lawsuit brought by a rabbinical college against the Village, Ms. Ulman and Mr. Yagel, a federal court issued a decision in 2017 invalidating certain ordinances of the Village which had prevented construction of the college on the ground that the laws discriminated on the basis of religion. *See* AC at ¶¶ 34-36. The Village also denied a certificate of occupancy regarding a subdivided property owned by Avrohom Manes, an Orthodox Jewish developer. *See* AC at ¶ 40.

On unspecified occasions, the Village issued tickets to certain real estate brokers, who were known to sell homes to Orthodox Jews, for placing for-sale signs too close to the road, but non-Jewish brokers did not similarly receive such tickets. *See* AC at ¶ 41. An email indicated that Mr. Yagel told the "code enforcer" to issue tickets to Orthodox Jewish brokers. AC at ¶ 41. The Village also issued tickets for Village Code violations to Orthodox Jewish residents and synagogues before dawn on unspecified Saturdays, including tickets for overnight parking violations even though, "upon information and belief," only Village officials and their friends were violating the parking laws. *See* AC at ¶¶ 8, 42, 64. Mr. Yagel has also told Village officials to report Jewish residents walking home from synagogues for walking on the side of the street in a manner that blocks traffic. *See* AC at ¶ 65.

In June 2018, the New York State Division of Human Rights ("NYSDHR") issued a report on a complaint filed by Noreen Shea, who was a former employee of the Village Clerk's office.

*See* AC at ¶ 48.  As recounted in the report, Ms. Shea claimed that Mr. Yagel referred to Orthodox Jews as "[t]hem" or "[t]hose people," which created in Ms. Shea the impression of an "[u]s vs. [t]hem culture." AC at ¶ 50.  According to Ms. Shea, Mr. Yagel once asked a broker known for working with Orthodox Jews whether she had sold a property to one of "[t]hem." AC at ¶ 51.  Mr. Yagel also: told Ms. Shea to have "very little conversation with 'those types'" in response to her conversation with Jewish developer Avrohom Manes; told Ms. Shea to wait until the last day of the statutory deadline to provide a response to FOIL requests of Orthodox Jewish residents while telling her to provide records immediately to a non-Jewish man who came to the office; suggested that pork rinds be left on the counter of the Village clerk's office; and called Ms. Shea a "Jew [l]over." *See* AC at ¶¶ 50-52.

Mr. Zummo told the NYSDHR that he would make comical impersonations of Orthodox Jewish residents complaining about the denial of municipal services.  *See* AC at ¶ 55.  Ms. Shea claimed that: after "informally approving" on "information and belief" proposed changes to property of an Orthodox Jewish family with disabled children, Mr. Zummo refused to issue a permit to that family and was overheard by Ms. Shea saying that maybe the applicant should stop having children; and Ms. Ulman told an unspecified Village resident that she resigned from representing the Village zoning board because it was discriminating against Orthodox Jews.  AC at ¶¶ 59-60.  According to the AC, Ms. Ulman told Mr. Manes in the course of his lawsuit against the Village that "certain residents' lives were made miserable by the discriminatory actions of people working for the Village" and that she was simply doing her job in representing Mayor Yagel.  AC at ¶ 17.  As noted in court submissions in this case, the NYSHR ultimately dismissed Ms. Shea's complaint when Ms. Shea opted to sue rather than allow the NYSDHR to determine the merits of her claims.  *See* D.E. #29-7.

8

*Procedural History:*

On November 2, 2018, Mr. Indig, Mr. Kahana and Mr. Klein commenced this action by filing a complaint against defendants. *See* D.E. #1. On December 17, 2018, defendants filed an answer to the original complaint. *See* D.E. #18. Upon their motion granted by the Court, on April 24, 2019, plaintiffs completed filing of the AC, which added Ms. Indig and Naftali as plaintiffs. *See* D.E. # 49; 62.

## Argument

## Motion to Dismiss Standard

Under F.R.C.P. 12(b)(6), a defendant may move to dismiss a complaint, including an amendment to a complaint which was previously answered, for failure to state a cause of action. *See* F.R.C.P. 12(b)(6); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 398 (S.D.N.Y. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although facts as alleged in the complaint should be accepted as true on a motion to dismiss, mere conclusions or formulaic recitations of the elements of a claim in the complaint are not presumed to be true and will not suffice to shield the complaint from dismissal. *See Iqbal*, 556 U.S. at 678; *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 360 n.10 (S.D.N.Y. 2014); *Rheingold v. Harrison Town Police Dep't*, 568 F. Supp. 2d 384, 389 (S.D.N.Y. 2008). Indeed, under F.R.C.P. 12(b)(6), "a plaintiff armed with nothing more than conclusions" should not be allowed to proceed to discovery. *Iqbal*, 556 U.S. at 679. And, under F.R.C.P. 12(b)(1), the defendant's motion to dismiss should be granted if there is a jurisdictional defect such as abstention or lack of standing. *See* F.R.C.P. 12(b)(1); *McFarlane v. Roberta*, 891 F. Supp. 2d 275, 282-283 (D. Conn. 2012); *333 E. 60th St.,*

9

*Inc. v. N.Y. State Liquor Auth.*, 2008 U.S. Dist. LEXIS 67441, *17 (S.D.N.Y. Aug. 29, 2008). A motion for judgment on the pleadings under F.R.C.P. 12(c) is governed by the same standards as a motion under F.R.C.P. 12(b)(1) and 12(b)(6). *See Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014).[2]

## POINT I

### Plaintiffs Robert Klein and Samuel Indig Should be Dismissed from the Case for Lack of Standing

As a threshold matter, Mr. Klein and Mr. Indig have no standing to assert their claims because they do not own the properties at issue, and therefore were not issued tickets, nor subjected to prosecution, nor subjected to any restrictions on the use of property belonging to them. Rather, only Naftali and Mrs. Indig, as the owners of the properties at issue in Mr. Klein's and Mr. Indig's claims, have standing to complain of the Village's alleged issuance of tickets and directives to stop work on those properties because only they were prosecuted in relation to, and would be subject to penalties or restrictions on, those properties. *See* AC at ¶ 83; Ex. J; Ex. K. Accordingly, Mr. Klein's and Mr. Indig's claims should be dismissed for lack of standing. *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 481 (S.D.N.Y. 2015); *62-64 Kenyon St., Hartford LLC v. City of Hartford*, 2017 U.S. Dist. LEXIS 212955, *12-14 (D. Conn. Dec. 29, 2017).

## POINT II

### Plaintiffs' Claims Should be Dismissed Based on *Younger* and *Heck* Abstention

---

[2] Evaluation of the AC under Rule 12(c) would be needed only if the Court were to somehow conclude that defendants' answer to the prior complaint, which has been superseded and is no longer in effect, required a post-answer, rather than pre-answer, motion to dismiss the AC, despite that defendants have never answered the AC.

7708927v.1

The Court should abstain from entertaining plaintiffs' suit because a decision in their favor would interfere with a pending state criminal proceeding against Ms. Indig and would threaten to invalidate state criminal convictions of Nafali and Mr. Kahana.

Under *Younger v. Harris*, 401 U.S. 37 (1971), a federal court should abstain from exercising jurisdiction over claims for injunctive relief if a judgment in the plaintiff's favor would interfere with a pending state criminal prosecution. *See Younger*, 401 U.S. at 41, 49-54; *Dutchess Sanitation, Inc. v. Plattekill*, 433 F. Supp. 580, 583 (S.D.N.Y. 1977). *Younger* requires abstention if "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for review of the federal constitutional claims." *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). Furthermore, where the Court abstains from resolving the claims for injunctive relief under *Younger*, the Court typically stays resolution of the damages claims until the end of the proceedings in state court. *See Dosiak v. Town of Brookhaven*, 2017 U.S. Dist. LEXIS 217221, *21 (E.D.N.Y. Nov. 27, 2017). In addition, under *Heck v. Humphrey*, 512 U.S. 477 (1994), a federal court should dismiss an action if a decision in the plaintiff's favor would undermine the validity of a state criminal conviction which has not been reversed on appeal in state court or invalidated by habeas corpus in federal court. *See Heck*, 512 U.S. at 486-87; *Parks v. New York City Police Dep't*, 2000 U.S. Dist. LEXIS 12202, *3-5 (E.D.N.Y. Aug. 24, 2000).

Here, because plaintiffs raise claims for injunctive relief that would interfere with a pending state prosecution of Mrs. Indig, the Court should dismiss those claims under *Younger* and stay the damages claims. In particular, there is an ongoing state prosecution of Mrs. Indig for violating a stop work order (*See* Ex. F; Ex. G), and the state has an important interest in the

proceeding because it seeks to enforce critical legal prohibitions against illegal land use. *See generally Rodriguez v. City of New York*, 2019 U.S. Dist. LEXIS 31544, *12-13 (S.D.N.Y. Feb. 22, 2019). Additionally, Mrs. Indig has an adequate opportunity to raise her selective enforcement and First Amendment claims in the state court proceedings because she can argue that the prosecution should be dismissed as violative of her constitutional rights. *See Thomas*, 925 F. Supp. 2d at 356-62; *Dutchess Sanitation, Inc. v. Plattekill*, 433 F. Supp. 580, 582-85 (S.D.N.Y. 1977). And, in this action, a ruling in Mrs. Indig's favor that the Village engaged in selective enforcement of the Village Code by charging her with Code violations would call into question the validity of the pending state prosecution and hence interfere with that prosecution. Thus, the criteria for abstention under *Younger* are satisfied, and the Court should dismiss Mrs. Indig's claims for injunctive relief, in the form of a court monitor and restraint against further actions which may be challenged as discriminatory, and stay the damages claims. *See Dosiak*, 2017 U.S. Dist. LEXIS 217221, at *19-21.

Furthermore, the Court should dismiss plaintiffs' claims pursuant to *Heck* because Naftali Klein's and Mr. Kahana's convictions of Village Code violations could be invalidated in the event that plaintiffs prevail on their equal protection and First Amendment claims. Specifically, Mr. Kahana pleaded guilty, in Haverstraw Town Court, to violating Village Code §§ 130-11(b) and 130-22(E), which prohibits the erection of a swimming pool within 50 feet of the lot line and without protective fences. *See* Ex. H; Mast. Dec. Likewise, Naftali was convicted, after trial, of repeatedly violating Village Code § 130-22(E), which prohibits violations of a stop work order. *See* Ex. E. Since the equal protection and First Amendment claims in the current action, if resolved in plaintiffs' favor, would undermine the validity of Mr. Kahana's and Naftali's state convictions, the Court should dismiss this action under *Heck*. *See Parks*, 2000 U.S. Dist. LEXIS 12202, at *5;

12

*Russo v. Golding*, 2008 U.S. Dist. LEXIS 113152, *13-16 (S.D.N.Y. Feb. 11, 2008).  Indeed, Mr.

Kahana's guilty plea was a waiver of his constitutional claims.  *See Azor v. City of New York*, 2012

U.S. Dist. LEXIS 47067, *8-11 (E.D.N.Y. Mar. 30, 2012)

## POINT III

**Plaintiffs Fail to State Plausible Equal Protection Claims Because They Fail to Allege Facts Establishing that the Village Granted More Favorable Treatment to a Similarly Situated Comparator and Intentionally Discriminated Against Them Based on Religion**

By making conclusory assertions that the Village issued tickets and stop work orders to

them while declining to prosecute non-Jewish violators of the Village Code, plaintiffs apparently

wish to raise equal protection claims under theories of selective enforcement and intentionally

discriminatory disparate treatment.  But plaintiffs have failed to state plausible claims.  Where, as

here, plaintiffs challenge discretionary enforcement of local laws, plaintiffs' claims must be

inherently analyzed as selective enforcement claims, regardless of the manner in which they are

denominated by plaintiffs.  Since plaintiffs have failed to adequately allege the similar comparator

element of such claims, their equal protection claims must fail.  Furthermore, plaintiffs have failed

to allege concrete facts demonstrating that the Village intentionally discriminated against them

based on their religion.  Their convictions of the charged violations underscore that the Village

acted out of a neutral desire to penalize substantiated violations of the law rather than any

discriminatory animus.  Thus, plaintiffs' claims under the federal and state constitutions should be

dismissed.

A. <u>Governing Law</u>

To prevail on a Section 1983 claim alleging that a government agent has violated the Equal

Protection Clause of the Fourteenth Amendment by selectively enforcing a facially neutral law

against the plaintiff, the plaintiff must show that "'(1) the [plaintiff], compared with others

similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999), quoting *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994); *see Martine's Service Center, Inc. v. Town of Wallkill*, 554 Fed. Appx. 32, 35 (2d Cir. 2014).

Under the first prong of the analysis, the plaintiff must identify a comparator who was "similarly situated in all material respects" to the plaintiff and yet was treated differently by the defendant. *Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) (internal quotation marks omitted); *see Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8-10 (S.D.N.Y. 2017). In doing so, the plaintiff cannot rely on similarities between himself and a comparator that exist at "a high level of generality," but must instead show his or her similarity to the comparator in all material respects, meaning material respects involved in the defendant's conduct toward the plaintiff. *New York Pet Welfare Association v. City of New York*, 143 F. Supp. 3d 50, 64-65 (E.D.N.Y. 2015). Furthermore, because the plaintiff must demonstrate that the defendant's treatment of the plaintiff was "actually disparate" from his or her treatment of the comparator, *Snyder v. Pugliese*, 144 Fed. Appx. 174, 174 (2d Cir. 2005), "the [m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *AYDM Associates, LLC v. Town of Pamelia*, 2016 U.S. Dist. LEXIS 121106, *21 (N.D.N.Y. 2016) , quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980). *See Delbene v. Alesio*, 2001 U.S. Dist. LEXIS 2150, *31 (S.D.N.Y. 2001). Rather, to establish actual disparate treatment, the plaintiff must show not only that the defendant did not enforce the pertinent law against the comparator, but also that the defendant was aware that the comparator, like the plaintiff, had violated the law. *See Tarantino v. City of Hornell*, 615 F. Supp.

14

2d 102, 114 (W.D.N.Y. 2009).

Under the second prong of the selective enforcement analysis, the plaintiff must demonstrate that the defendant's selective treatment of the plaintiff was motivated by religion or a comparable impermissible consideration. *See Rodriguez v. Margotta*, 2000 U.S. App. LEXIS 16260, *2 (2d Cir. 2000); *Adler v. Kent Village Hous. Co.*, 123 F. Supp. 2d 91, 97-99 (E.D.N.Y. 2000). Where, as here, the plaintiff claims that the defendant's enforcement of the pertinent regulation or law was motivated by the plaintiff's religion, the plaintiff must affirmatively demonstrate that similarly situated individuals of a different religion were not penalized for violating the relevant law and that the plaintiff, by contrast, was prosecuted for the pertinent offense based on his religion. *See Khaled v. Dearborn Heights Police Dep't*, 2017 U.S. App. LEXIS 19590, *15 (6th Cir. Oct. 4, 2017); *Staples v. Gerry*, 2015 U.S. Dist. LEXIS 86629, *41-42 (D.N.H. May 11, 2015). In this context, the defendant's use of a stray comment demeaning the plaintiff, while unfortunate, does not in itself suffice to show that the defendant selectively enforced the law against the plaintiff based on animus or the plaintiff's group membership. *See, e.g., Lieberman v. City of Rochester*, 2011 U.S. Dist. LEXIS 46295, *9-14 (S.D.N.Y. 2011); *Nunez v. Hamdan*, 2013 U.S. Dist. LEXIS 138625, *19-20 (D. Utah 2013).

In *Pyke v. Cuomo*, 258 F.3d 107 (2d Cir. 2001), and subsequent cases, the Second Circuit recognized that, in rare circumstances, a plaintiff can establish an equal protection violation based on compelling evidence of intentional discrimination without fully alleging the similar comparator element of a selective enforcement claim. *See Pyke*, 258 F.3d at 109-110; *Rodriguez v. Clinton*, 357 Fed. Appx. 355, 357 (2d Cir. 2009). For example, the plaintiff can bring a claim that "a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner . . ." *Pyke*, 258 F.3d at 110. However, where the plaintiff challenges fundamentally

15

discretionary enforcement decisions such as prosecution, the plaintiff's claim should be analyzed under a selective enforcement theory, which requires a showing of a similar comparator. *See Jones v. J.C. Penney's Dep't Stores*, 2007 U.S. Dist. LEXIS 104120, *19-21 (W.D.N.Y. Jan. 22, 2007); *cf. Muhammad v. Maduekwe*, 2016 U.S. Dist. LEXIS 25826, *26 (S.D.N.Y. Feb. 29, 2016); *Barua v. City of New York*, 2016 U.S. Dist. LEXIS 179610, *33-34 (Dec. 28, 2016). This is so because, in light of the discretion inherent in prosecution and similar discretionary law enforcement decisions, the plaintiff cannot plausibly raise an inference of discriminatory intent unless the plaintiff can demonstrate, by way of more favorable treatment of the comparator, that the government's enforcement decision was wholly irrational and could not be explained by the appropriate exercise of discretion. *See Pyke*, 258 F.3d at 109.

Even under a comparator-free theory of discriminatory application of a neutral policy, the plaintiff must plead and prove, in non-conclusory fashion, that the relevant government decision-makers intentionally applied a facially neutral law to the plaintiff specifically because of the plaintiff's race or protected characteristic. *See Clack v. Torre*, 2014 U.S. Dist. LEXIS 34578, *35 (D. Conn. Mar. 17, 2014). That is, the government actor must have possessed a "[d]iscriminatory purpose," which "implies more than intent as volition or intent as awareness of consequences" and instead "implies that the decisionmaker[s] . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (internal citations and quotation marks omitted); *see Rosario v. Town of Mt. Kisco*, 2018 U.S. Dist. LEXIS 80843, *23 (S.D.N.Y. May 11, 2018). To satisfy this discriminatory intent element, the plaintiff must do more than merely allege that community members believed there was a discriminatory bias among the relevant government officials or that a vaguely defined culture of discrimination existed in the government.

16

*See Patterson v. City of New York*, 2017 U.S. Dist. LEXIS 126279, *31 (E.D.N.Y. Aug. 8, 2017); *Amaker v. Schiraldi*, 2017 U.S. Dist. LEXIS 166294, *23-24 (E.D.N.Y. Sept. 29, 2017); *Roman v. Velleca*, 2012 U.S. Dist. LEXIS 136946, *23-24 (D. Conn. Sept. 25, 2012). Rather, the plaintiff must plead concrete specific incidents in which the government officials both applied a facially neutral law to the plaintiff based on his or her race or similar status and did so intentionally precisely because of the plaintiff's protected characteristic. *See Rosario*, 2018 U.S. Dist. LEXIS 80843, *25-26. Additionally, while slurs or negative comments made by the decision-making official to or about the plaintiff during the process of applying the law to the plaintiff can sometimes be relevant evidence of discriminatory purpose, comments which do not clearly reference the protected class to which the plaintiff belongs or which are made by officials other than the one enforcing the law against the plaintiff cannot support an inference of discriminatory purpose. *See Stone v. Eamer*, 2018 U.S. Dist. LEXIS 8672, *17-23; *Golodner v. Martinez*, 2017 U.S. Dist. LEXIS 210409, *11-13 (D. Conn. Dec. 21, 2017).

B. Plaintiffs' Failure to Identify a Comparator Similarly Situated in All Material Respects <u>Dooms Their Claims</u>

Initially, regardless of whether their claims are framed as a selective enforcement or a *Pyke*-type claim, plaintiffs are required to plead the existence of similarly situated comparators. Plaintiffs challenge fundamentally discretionary decisions about whether plaintiffs, as opposed to other offending land owners, should be prosecuted for violating the Village Code. *See, e.g.*, AC at ¶¶ 22, 41, 46, 61, 78-80, 90, 96; Ex. F; Ex. D; Ex. H. Because such discretionary law-enforcement decisions are properly analyzed under a selective enforcement framework even if plaintiffs self-servingly try to place the claim in the *Pyke* mold, plaintiffs must allege facts which plausibly show that the Village declined to prosecute other violators of the Code who were

17

similarly situated in all materials respects to plaintiffs. *See Marshall v. Town of Middlefield*, 2012 U.S. Dist. LEXIS 22897, *16 (D. Conn. Feb. 23, 2012).

Here, plaintiffs have failed to allege facts showing that the Village afforded more favorable treatment to non-Jewish Code violators who were similarly situated in all material respects to plaintiffs. Plaintiffs only identify one potential comparator by name: Peter Obe, a Village resident who, unlike Mr. Klein and Naftali, was allegedly able to build a four-story house without installing a sprinkler system sometime between 2013 and 2017. *See* AC at ¶¶ 94-95. Initially, even if Mr. Obe's conduct had been comparable to the Kleins' – it was not – that would not support Mr. Kahana's and the Indigs' claims, which are entirely unrelated to the sprinkler issue underlying the Kleins' claims. As for the Kleins' claims, plaintiffs fail to allege facts showing that Mr. Obe's alleged failure to install a sprinkler system occurred under circumstances comparable to the Kleins' violations of state law and the Village Code in refusing to install a sprinkler system. For example, plaintiffs acknowledge that Mr. Obe built his home without sprinklers in a different time period, starting three years before Mr. Klein applied to build his project, and a time difference defeats an effort to allege valid comparators in the land-use context. *See* AC at ¶¶ 83, 94-95; 83; *see also EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012); *see also Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007) ("In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment."); *Karout v. McBride*, 7 F. Supp. 3d 194, 205 (D. Conn. 2014); *Musco Propane, LLP v. Town of Wolcott*, 891 F. Supp. 2d 261, 270-73 (D. Conn. 2012).

Plaintiffs also do not allege that the Village discovered that Mr. Obe needed to, and failed to, install a sprinkler system prior to completion of his project. If the Village did not discover Mr. Obe's lack of sprinklers before his home was complete and only learned of it later, the Village

18

could not have issued a stop work order for his property, as it did for the Kleins' project. In addition, plaintiffs do not allege that Mr. Obe engaged in the multiple other violations of the Code which would have logically made it more urgent for the Village to stop the Kleins' project based on their more egregious conduct.  In particular, there is no allegation that Mr. Obe, like the Kleins, engaged in four violations of stop work orders issued under Village Code, which were proven at a trial.  *See* Ex. D; Ex. E.  Thus, since the Kleins applied for permission to expand their home at a later time, when Village enforcement policy may have changed for valid reasons, and they engaged in more severe violations of the Village Code than Mr. Obe, the allegations in the AC show that the Kleins and Mr. Obe are not similarly situated in all material respects, as they must be to sustain plaintiffs' equal protection claims.  *See Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8-10 (S.D.N.Y. 2017); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011) ("As we discussed above, after *Twombly* and *Iqbal*, it is insufficient to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions—the claim must be supported by specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects.").

Plaintiffs' remaining attempts to allege similarly situated comparators cannot salvage their claims.  Plaintiffs fail to identify any of the remaining potential comparators by name, property address, date of violation or other characteristic that could enable a comparison to be made between them for land-use purposes.  This, by itself, makes it impossible to find that those other individuals are similarly situated in all material respects.  *See Sacher v. Vill. of Old Brookville*, 967 F. Supp. 2d 663, 670-71 (E.D.N.Y. 2013).  Additionally, plaintiffs do not allege concrete facts establishing the purported comparators' similarity because: plaintiffs' vague allegations, made on "information and belief," that no other property owners operated under the restrictions imposed on plaintiffs are

19

entirely conclusory and legally insufficient to support a claim (*see* AC at ¶¶8, 42, 64, 73); there are no allegations of fact, as opposed to mere conclusions, as to how other non-Jewish property owners on the Kleins' block failed to properly dispose of leaves as the Kleins did, much less any non-conclusory factual allegation that the Village knew of and had an opportunity to remedy those other property owners' violations (*see* AC at ¶ 96); there is no allegation that, whenever a non-Jewish trustee voluntarily left a Board meeting, as Mr. Klein did, the remaining Board members immediately ceased all discussion, in contrast to their continued discussions after Mr. Klein's voluntary departure (*see* AC at ¶ 97); and there are no allegations that anyone else engaged in the type of violations committed by the Indigs and Mr. Kahana, such as erecting unprotected above-ground swimming pools, creating unauthorized roads on steep slopes, or failing to remove dog waste (*see* AC at ¶¶ 72-73, 78-80). *See Hampshire Recreation, LLC v. Vill. of Mamaroneck*, 2016 U.S. Dist. LEXIS 39496 (S.D.N.Y. March 25, 2016); *Amid v. Vill. of Old Brookville*, 2013 U.S. Dist. LEXIS 129447, *18 (E.D.N.Y. Feb. 7, 2013); *Filipowski v. Greenwood Lake*, 2013 U.S. Dist. LEXIS 93695, *24 (S.D.N.Y. July 3, 2013).[3]

C.  Plaintiffs' Conclusory Assertions of Discriminatory Motive Cannot Sustain Their Claims of Intentional Religious Discrimination and Are Contradicted by the Indisputable Fact of Their Convictions

Plaintiffs also fail to allege concrete facts supporting a plausible claim that the Village harbored a discriminatory motive for its enforcement decisions, and plaintiffs' convictions

---

[3] Mr. Klein claims that he received a ticket for improper waste disposal on the early morning of a Saturday, which is the Jewish Sabbath. *See* AC at ¶¶ 61, 96. But Mr. Klein fails to allege that the Town refused to issue tickets to similarly situated non-Jewish offenders on days of rest or holidays recognized under those offenders' religions. Thus, he has not shown disparate treatment or discriminatory intent in the fact that the ticket was issued on a Saturday morning. Similarly, the Indigs complain about the Village's enforcement of waste management requirements, namely the warning which was issued to them for failure to remove dog waste from their property, and they imply that the warning was invalid because they do not own a dog. But they identify no comparators regarding this claim, rendering the claim a non-starter.

20

establish that the Village acted out of a proper desire to penalize objectively proven Village Code violations rather than a discriminatory animus.

While the AC is littered with assertions that the Village's alleged conduct in issuing tickets and stop work orders was "deliberate," "discriminatory," "anti-Semitic," "targeting" Jewish residents and reflecting "[d]iscriminatory intent," those thread-bare arguments cannot constitute the requisite allegations of fact raising a plausible inference that the Village's actions were specifically motivated by an invidious purpose to discriminate based on religion. *See* AC at ¶¶ 11, 13, 47, 78, 80, 82, 86, 94-97, 99; *see also Bradshaw v. City of New York*, 2017 U.S. Dist. LEXIS 201819, *34-35 (S.D.N.Y. Dec. 7, 2017); *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 281 (N.D.N.Y. 2012); *see generally Clyburn v. Shields*, 33 Fed. Appx. 552, 555 (2d Cir. 2002). In addition, although plaintiffs claim that Mr. Yagel talked about "them" as a supposed reference to Orthodox Jews, Mr. Yagel indicated there should be a display of pork rinds at Village Hall, Mr. Yagel called Ms. Shea a "Jew lover" and Mr. Zummo made a comical impression of Orthodox Jews who complained about municipal services (*see* AC at ¶¶ 50-52, 55), plaintiffs do not allege facts showing that these remarks were made at or around the time of the Village's actions against them or that the comments were directly connected to those actions.[4] Thus, plaintiffs have failed to adequately allege that the Village's conduct regarding

---

[4] Significantly, there is no claim that defendants made any supposedly biased comments whatsoever in relation to Mr. Kahana and the Indigs. Plaintiffs do allege that, at a Planning Board meeting regarding the Kleins' plans to build an extra story on Naftali's property, Mr. Zummo said it would be just like "them" to construct an illegal basement apartment. *See* AC at ¶ 84. But this comment is immaterial because there is no indication that "them" was a reference to Orthodox Jews, as opposed to a reference to the Kleins whose general non-compliance with the Village Code would have been well known to Mr. Zummo. As a result, the comment could have reflected, at most, a personal dislike of the Kleins, which cannot establish a discriminatory motive for equal protection purposes. *See Stone v. Eamer*, 2018 U.S. Dist. LEXIS 8672, *17-23 (N.D.N.Y. Jan. 19, 2018) (corrections officer's vague and ambiguous comments reflected at most personal animosity and did not support claim of discriminatory intent); *see Wolongevicz v. Town of Manlius*, 2018 U.S. Dist. LEXIS 130274, *27-28, *32-33 (N.D.N.Y. Aug. 3, 2018) (dismissing statutory and constitutional gender discrimination claims because comments and actions indicating personal animosity were insufficient to establish discriminatory motive); *Rodriguez v. Clinton*, 2009 U.S. Dist. LEXIS 8023, *26 (N.D.N.Y. Feb. 4, 2009) ("Plaintiff's characterization of Mr. Rhine's arguably sarcastic treatment of the concepts of 'diversity,' 'progressive,' and 'correct person to be President,' as well as his ambiguous use of 'minority group,' as evidence of

21

plaintiffs, as opposed to others, was motivated by anti-Jewish animus.  *Cf. Brown v. City of Rochester*, 2011 U.S. Dist. LEXIS 108130, *15 n.5 (W.D.N.Y. Sept. 16, 2011); *Graham v. Elmira City Sch. Dist.*, 2015 U.S. Dist. LEXIS 37945, *18 (W.D.N.Y. Mar. 25, 2015).[5]

At any rate, plaintiffs' allegations about the Village's actions toward other unidentified Jewish residents do not reveal an intent to discriminate against anyone based on religion, much less against plaintiffs.  For example: (1) despite the Village's alleged issuance of tickets for parking violations to residents near synagogues on Saturdays, plaintiffs fail to allege that the Village declined to issue tickets to non-Jewish parking violators near non-Jewish houses of worship (*see* AC at ¶¶ 8, 42, 64); (2) the Village's supposed refusal to issue parking tickets to Mr. Yagel's friends would merely show personal or political favoritism, not anti-Jewish bias (*see* AC at ¶ 64); and (3) plaintiffs fail to allege that Village employees did or said anything reflecting a discriminatory motive when they issued tickets to real estate brokers who served Orthodox Jewish clients based on their unlawful placement of signs too near the road (*see* AC at ¶ 41).  At bottom, plaintiffs' merely rely on vague speculation about a community sentiment that Village employees have a history of anti-Semitism, which is legally insufficient to support an equal protection claim. *See Amaker*, 2017 U.S. Dist. LEXIS 166294, at *23-24 (newspaper articles asserting culture of

---

racial motivation is mere speculation.").  Moreover, any indications of Mr. Zummo's motive at the zoning board meeting were irrelevant because they would merely show his motive for opposing the Kleins' application before that board, not for issuing the stop work orders and tickets which are the subject of the Kleins' claims against defendants. Similarly, although plaintiffs allege that Mr. Yagel told Mr. Klein to "watch [his] back" during the election, refused to give Mr. Klein a key to a Village office and tried to schedule meetings when Mr. Klein would be unavailable (*see* AC at ¶¶ 81, 97), none of the anemic factual allegations in the AC suggest that these actions were the product of anti-Jewish sentiment, as opposed to Mr. Yagel's personal animosity toward Mr. Klein in the wake of a heated campaign. Since there is no indication of discriminatory motive behind Mr. Yagel's actions and no claim that Mr. Yagel gave more favorable treatment to non-Jewish Board members who were also his personal foes, Mr. Yagel's treatment of Mr. Klein as a Board member does not give rise to a viable equal protection claim.

[5] Indeed, while plaintiffs cite the Village's enactment of zoning laws which were deemed to be discriminatory in an unrelated lawsuit, they neglect to mention that the Village passed those allegedly discriminatory laws between 2001 and 2007, long before the Village engaged in the actions challenged in the instant case. *See Congregation Rabbinical Coll. Of Tartikov, Inc., v. Vill. of Pomona*, 280 F. Supp. 3d 426, 438-44 (S.D.N.Y. 2017) (appeal pending).

22

discrimination in law enforcement and statistics showing racial disparity in parole release dates did not show discriminatory intent as to defendants' treatment of plaintiff in the parole process); *Patterson*, 2017 U.S. Dist. LEXIS 126279, at *31 (allegations of general pro-Jewish bias in City police officers did not show discriminatory intent against non-Jewish crime victims because alleged biased culture was unrelated to type of conduct that allegedly affected plaintiff); *Roman*, 2012 U.S. Dist. LEXIS 136946, at *23 (dismissing equal protection claim because "aside from his assertion that Defendant Velleca had a history of discriminatory conduct toward minority and female employees, Plaintiff offers no grounds to support his assertion that the defendant 'engaged in invidious discrimination' in this instance."); *see also Roman Catholic Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566, 594-95 (E.D.N.Y. 2015) (in absence of evidence of disparate treatment of plaintiff compared to others similarly situated, the Village's past pattern of unfavorable land-use decisions and imposition of restrictions on religious institutions did not show discriminatory intent in conduct toward plaintiff); *see generally Deleon v. Putnam Valley Bd. of Educ.*, 2006 U.S. Dist. LEXIS 3337, *26-28 (S.D.N.Y. Jan. 26, 2006) (mere awareness of disparate impact of actions on a particular group cannot show discriminatory intent).

Plaintiffs' failure to allege the requisite discriminatory intent arises not from mere inartful pleading, but rather from the reality that they cannot validly assert that the Village had a discriminatory purpose in enforcing the Code against them because they were convicted of the charged Code violations. Specifically, the Code enforcement proceedings against plaintiffs, which are incorporated by reference in the AC and reflected in public records subject to judicial notice, establish that: (1) Mr. Kahana pleaded guilty to violating Village Code §§ 130-11(b) and 130-22(E) based on Mr. Zummo's observations of him erecting a swimming pool without required rails and ladders; (2) after a trial before a neutral judge, the Justice Court convicted Naftali of several

23

Code violations based on Mr. Zummo's observations of his workers violating the stop work orders; and (3) a prosecution of the Indigs has been sufficiently substantiated to proceed to trial and submission for a verdict. *See* Ex. F; Ex. G.   Because neutral, independent fact finders have concluded that Village officials witnessed plaintiffs break the law, plaintiffs' convictions and the court proceedings establish that defendants acted for the proper purpose of enforcing the law, and not based on improper discriminatory motives. *Cf. Simpson v. N.Y. State Dep't of Civ. Servs.*, 166 Fed. Appx. 499, 501 (2d Cir. 2006) (noting that decision by neutral fact finder upholding disciplinary charges against plaintiff demonstrated that defendants lacked discriminatory motive); *see generally Durham v. City of New York*, 2019 U.S. Dist. LEXIS 47763, *10 (S.D.N.Y. Mar. 22, 2019) (dismissing complaint based on conclusory allegations of discriminatory intent because "Plaintiffs allegations themselves indicate that the Officers were drawn to potentially illegal activity being carried out in plain sight, rather than racial animus or discriminatory policies."); *Wharton v. County of Nassau*, 2010 U.S. Dist. LEXIS 99174, *26 (E.D.N.Y. Sept. 20, 2010) (finding no discriminatory intent where officers told plaintiffs that they questioned plaintiffs because plaintiffs resembled people at the scene of a crime nearby).   Accordingly, plaintiffs' equal protection claims under both the federal and state constitutions should be dismissed. *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (noting that federal and state constitutional standards for equal protection/selective enforcement are the same).

## POINT IV

### Plaintiffs' Remaining Claims Are Unavailing

Plaintiffs' claims under the Fair Housing Act, N.Y. Civil Rights Law 40-c and the First Amendment should be dismissed because plaintiffs have not presented factual allegations showing that the Village's stop work orders and issuance of tickets to them was discriminatory.

Under the FHA, a plaintiff can sue a municipality for discriminatory zoning practices which deprive the plaintiff of housing because of his or her religion. *See Mhany Mgmt. v. Inc. Vill. of Garden City & Garden City Bd. of Trustees*, 985 F. Supp. 2d 390, 413 (E.D.N.Y. 2013). To prevail on such a claim, "plaintiffs must demonstrate that other builders, who are situated similarly to plaintiffs, were treated differently by defendants on the basis of" religion or other protected status. *Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 429 (S.D.N.Y. 2005).[6] Similarly, a claim of denial of equal protection under N.Y. Civil Rights Law 40-c, requires a showing of disparate treatment and discriminatory intent. *See Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 585 (S.D.N.Y. 2015); *Brown v. St. John's Univ.*, 2010 U.S. Dist. LEXIS 147090, *32 (E.D.N.Y. June 28, 2010); *see also Masi Mgmt., Inc. v. Town of Ogden*, 273 A.D.2d 837, 838 (4th Dept. 2000); *see generally Hennessy v. City of Long Beach*, 258 F. Supp. 2d 200, 206 (E.D.N.Y. 2003); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 379 (S.D.N.Y. 2014).

Where the plaintiff claims that a municipality violated the Free Exercise Clause of the First Amendment by engaging in religious discrimination, the claim has essentially the same elements as an equal protection claim, including the requirements of more favorable treatment of a similarly situated comparator and discriminatory motive. *See Bowles v. New York City Transit Auth.*, 2006 U.S. Dist. LEXIS 32914, *54-57 (S.D.N.Y. May 23, 2006); *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 297-299 (S.D.N.Y. 2000). The plaintiff can also bring a free exercise claim based on a prohibition of his or her religious practices. To prevail on such a claim, the plaintiff must demonstrate that "(i) he has an interest protected by the First Amendment;

---

[6] *Lynn* is particularly instructive because, there, far more substantiated and detailed FHA and equal protection claims were dismissed on summary judgment for failure to identify sufficiently similarly situated comparators. *See id.* at 428-32. Additionally, while in *Lynn* the plaintiff did adequately allege that housing was "otherwise made unavailable" to minority residents via land-use restrictions, here there were no restrictions as severe as those in *Lynn*, such that arguably here plaintiffs have not even alleged the unavailability element of an FHA claim. *See id.* at 428.

25

(ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Murphy v. Gibbons*, 2014 U.S. Dist. LEXIS 140042, *19-20 (N.D.N.Y. Sept. 29, 2014) (internal quotation marks and citation omitted); *see generally Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006).

Here, plaintiffs' Fair Housing Act, Civil Rights Law and free exercise claims should be dismissed because, as discussed above, the allegations in the AC fail to show that the Village treated plaintiffs worse than a similar situated comparator and harbored a discriminatory motive for its actions. Furthermore, regarding their free exercise claim, plaintiffs do not allege that they refrained from any form of worship or other religious practice as a result of the Village's actions. Thus, like their equal protection claims, plaintiffs' remaining constitutional and state law claims should be dismissed.[7]

### Conclusion

For the reasons stated above, this Court should grant defendants' motion in its entirety.

Dated:   White Plains, New York
      May 22, 2019

                         Respectfully submitted,

                         WILSON, ELSER, MOSKOWITZ,
                         EDELMAN & DICKER LLP
                         *Attorneys for Defendants*

                         */s/ Janine A. Mastellone*
                         Janine A. Mastellone
                         John B. Martin
                         1133 Westchester Avenue
                         White Plains, NY  10604
                         (914) 323-7000
                         Our File No.  12741.00086

---

[7] Moreover, if the Court finds that plaintiffs' federal claims should be dismissed, the Court should simply decline to exercise jurisdiction over the state law claims.

7708927v.1