UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SAMUEL INDIG, LEAH INDIG, MEIR :
KAHANA, ROBERT KLEIN, and NAFTALI :
KLEIN, :
                       Plaintiffs, :
                                          : **OPINION AND ORDER**
v. :
                                          : 18 CV 10204 (VB)
THE VILLAGE OF POMONA, BRETT :
YAGEL, LOUIS ZUMMO, LEON HARRIS, :
and DORIS ULMAN, :
                       Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiffs Samuel Indig, Leah Indig, Meir Kahana, Robert Klein, and Naftali Klein bring this action against defendants the Village of Pomona, Mayor Brett Yagel, Louis Zummo, Leon Harris, and Doris Ulman, asserting defendants engaged in selective enforcement of the Village Code and intentionally discriminated against plaintiffs on the basis of their Jewish religion in violation of the Constitution and the Fair Housing Act.

Before the Court is defendants' motion to disqualify Schlam Stone & Dolan LLP ("Schlam Stone") as plaintiffs' counsel. (Doc. #28).

For the reasons set forth below, the motion is DENIED WITHOUT PREJUDICE.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## **BACKGROUND**[1]

Two previously filed lawsuits are relevant to the instant motion.

---

[1] The parties have submitted briefs and declarations, which reflect the following factual background.

1

In March 2017, TAL Properties of Pomona LLC ("TAL Properties"), owned by developer Avrohom Manes, brought an action against the Village, Zummo, and others, seeking a declaration that the roads adjacent to TAL Properties be maintained by the Village. TAL Properties v. Village of Pomona et al., Index No. 031216/2017 (N.Y. Sup. Ct., Rockland County) (the "Roads action"). Schlam Stone does not represent Manes in connection with that case.

Around the same time, plaintiffs TAL Properties and Manes also brought a civil rights action through another law firm, alleging constitutional violations against the Village, which was removed to the United States District Court for the Southern District of New York. See TAL Properties v. Village of Pomona, No. 17 CV 2928 (S.D.N.Y.) (Seibel, J.) (the "Civil Rights action"). While Zummo was named as a defendant in the underlying state action, he was not named in the amended complaint after the Civil Rights action was removed to federal court. In January 2018, Judge Seibel dismissed the Civil Rights action for failure to state a claim.

Five months after the suit was dismissed, the New York State Division of Human Rights issued a report concerning religious discrimination in the Village. Manes retained Schlam Stone to determine whether the Civil Rights action could be reinstated. On November 2, 2018, plaintiffs moved for leave to reopen the case and file a third amended complaint. At this time, the motion remains pending.

On August 1, 2018, Zummo was deposed in the Roads action. Manes was present, and he and Zummo agreed to meet and discuss the pending lawsuit. They met at Manes's home on August 6, 2018. Manes offered to find Zummo a so-called whistleblower attorney and to pay Zummo's associated legal fees if Zummo agreed to cooperate in the Civil Rights action and turn over supportive documentation. Defendants do not argue that a Schlam Stone attorney directed or otherwise caused Manes to engage in these discussions with Zummo.

2

Manes told Bradley J. Nash, Esq., of Schlam Stone, about the meeting with Zummo. Nash said he could not speak to Zummo without an attorney present and recommended that Manes tell Zummo to engage Glenn Jones, Esq., a former prosecutor with the New York State Attorney General's Office. Manes contacted Zummo with a date and location for a meeting with Jones. On August 17, 2018, Zummo met Jones in his Manhattan office. Jones subsequently sent Zummo an engagement letter. Zummo never formally executed the agreement.

Jones later contacted Nash and said Zummo was interested in cooperating with Manes regarding his Civil Rights action. The attorneys proceeded to discuss and draft an agreement to that effect.

A few weeks later, on September 13, 2018, Schlam Stone attorneys Nash and Solomon Klein, Esq. (with Manes attending by telephone) met with Jones and Zummo to discuss Zummo's cooperation in the Civil Rights action. The meeting lasted two hours and the parties' accounts of the discussion differ. On the one hand, Zummo states they discussed plaintiff Kahana's pool (which was the subject of a code enforcement proceeding) and former Village employee Noreen Shea's allegations of religious discrimination by Village officials. Zummo maintains he told plaintiffs' counsel that the Village did not engage in religious discrimination. On the other hand, according to Nash, the parties discussed the documents Zummo could provide to support plaintiffs' discrimination allegations and Zummo "answered some general questions about the Village's recordkeeping, and the selective targeting of Jewish residents and houses of worship for alleged code violations." (Doc. #40 ("Manes Decl.") ¶ 31).

Zummo did not sign an agreement to cooperate with Manes and had no further discussions with Manes and the Schlam Stone attorneys.

Plaintiffs filed this lawsuit on November 2, 2018, naming Zummo as a defendant.

3

Defendants filed the instant motion to disqualify Schlam Stone on February 26, 2019.

**DISCUSSION**

I.  Legal Standard

Federal courts possess the authority to disqualify counsel, which "derives from their inherent power to preserve the integrity of the adversary process." Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005). Despite this inherent power, "[m]otions to disqualify counsel are generally viewed with disfavor because disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and because disqualification motions are often interposed for tactical reasons." Bd. of Educ. of N.Y. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). Because of this potential for abuse, "the movant must meet a high standard of proof to disqualify the non-movant's counsel." Ello v. Singh, 2006 WL 2270871, at *2 (S.D.N.Y. Aug. 7, 2006).

Disqualification is warranted only if an "attorney's conduct tends to taint the underlying trial." Bd. of Educ. of N.Y. v. Nyquist, 590 F.2d at 1246. Thus, the Second Circuit has observed that "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764–65 (2d Cir. 1990) (quoting Bd. of Educ. of N.Y. v. Nyquist, 590 F.2d at 1246).

In determining whether disqualification is appropriate, "a court may consult the disciplinary rules of the American Bar Association and New York State, but those rules are not

binding authority." Goodwine v. City of New York, 2016 WL 379761, at *2 (S.D.N.Y. Jan. 29, 2016).

Two such rules are relevant here. First, Rule 4.2 of the New York Rules of Professional Conduct (sometimes called the "no-contact rule") provides:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

N.Y. Rules Prof'l Conduct 4.2(a). In the case of a represented organization, this rule "ordinarily prohibits communications with a constituent of the organization who (i) supervises, directs or regularly consults with the organization's lawyer concerning the matter, (ii) has authority to obligate the organization with respect to the matter, or (iii) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Id. cmt. [7]. "Barring lawyers from communicating directly with an opposing party represented by counsel preserves the integrity of the attorney-client relationship, including by preventing counsel from driving a wedge between the opposing attorney and that attorney's client." Scott v. Chipotle Mexican Grill, Inc., 2014 WL 4852063, at *2 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks omitted). The rule "does not prohibit communication with a represented party . . . concerning matters outside the representation." N.Y. Rules Prof'l Conduct 4.2 cmt. [4].

Second, Rule 3.7 of the New York Rules of Professional Conduct (sometimes called the "witness-advocate rule") provides, in subsection (a) that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."[2] Disqualification under this rule is warranted only where the testimony given by counsel

---

[2] This prohibition is subject to several exceptions, but neither party argues those exceptions are relevant here.

5

is "necessary." Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) (internal quotation marks and citation omitted). The movant "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009) (quoting Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)).

II.    Analysis

Defendants argue plaintiffs' counsel violated the no-contact rule, and, if permitted to continue representing plaintiffs, will violate the witness-advocate rule. Defendants maintain these violations require disqualification.

The Court disagrees. At this time, defendants have not made the necessary showing that plaintiffs' counsel's conduct will taint future proceedings. However, if evidence later surfaces that demonstrates the conduct of either Nash or Klein would taint the trial, defendants may revisit this issue.

Each alleged violation will be discussed in turn.

    A.    Violation of the No-Contact Rule

Plaintiffs' counsel violated the no-contact rule in meeting with Zummo on September 13.[3] Nevertheless, this violation does not require disqualification at this time.

---

[3] Communications with Zummo prior to the September 13 meeting did not violate the no-contact rule. Defendants offer no evidence any Schlam Stone attorney was involved in or caused Manes to communicate with Zummo at the August 1 deposition, in Manes' subsequent emails, or at the August 6 meeting. To the contrary, Nash and Klein affirmatively state they did not direct or cause Manes to engage in any discussion with Zummo; the men decided to meet on their own. Although Nash recommended that Manes contact Jones, this recommendation was not a communication on the "subject of the representation." Rule 4.2(a); see e.g., Mori v. Saito, 785 F. Supp. 2d 427, 433 (S.D.N.Y. 2011) (noting phone call at issue did not involve any substantive matters regarding the case).

First, as to plaintiffs' counsel's violation of the no-contact rule, plaintiffs' counsel met with Zummo, whom they knew to be a constituent of the Village, which was represented by counsel, and they did not notify the Village's counsel. More specifically, the Village, also a defendant in the Roads action, was represented by counsel. Zummo was employed by the Village as its building inspector, consulted with the Village's lawyer concerning the lawsuit, and was being deposed in that suit on August 1. Because Zummo's actions would be binding on the Village for purposes of liability and because Zummo consulted with the Village attorney concerning this matter, the ethics rules prohibit an adversary's attorney from speaking with Zummo without first notifying the Village's counsel. See N.Y. R. Prof'l Conduct § 4.2, cmt.[7]; cf. Niesig v. Team I, 76 N.Y.2d 363, 374–75 (1990) (barring contact with current corporate employees "whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's "alter egos") or imputed to the corporation for purposes of its liability").

However, not every violation of an ethical rule requires disqualification. The Court has an independent interest in preserving the integrity of future proceedings, but its role is not to strictly police the ethics rules. Universal City Studios, Inc. v. Reimerdes, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000). Defendants fail to carry their heavy burden in demonstrating how this violation will taint future proceedings. Defendants argue "[p]laintiffs' counsel will undoubtedly use any information gleaned from the [September 13] meeting against the Village" (Doc. #75 ("Def. Reply Br.") at 9), but defendants do not point to any specific evidence plaintiffs' counsel could present. Zummo maintains he told plaintiffs' counsel that the Village did not engage in religious discrimination and neither party alleges Zummo provided documentary evidence. While the mere fact the September 13 meeting occurred may be relevant to plaintiffs' claims,

7

introduction of that evidence would not necessarily taint the trial. A juror could reasonably infer from Zummo's discussions with Manes not just that Zummo wanted to cooperate because Zummo had a guilty conscience, but instead, as Zummo himself explains, that Zummo went to the meeting because of the threat of litigation and his inability to pay costly legal fees. Finally, the Court notes plaintiffs' counsel claims that "there is no need for such testimony" concerning the September 13 meeting. (Doc. #37 ("Pl. Opp.") at 18–19).

Accordingly, although plaintiffs' counsel violated the no-contact rule, the violation does not require disqualification at this time.

B. <u>Violation of the Witness-Advocate Rule</u>

Defendants' argument that plaintiffs' counsel are fact witnesses who will be required to testify at a future proceeding also fails.

As explained above, defendants have not demonstrated such testimony is likely at a future proceeding. And even if defendants showed such testimony is likely, they have not shown that testimony would need to come from Nash or Klein. <u>See</u> <u>Paramount Commc'ns, Inc. v. Donaghy</u>, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) ("Testimony may be relevant and even highly useful but still not strictly necessary."). By all accounts, there were three other potential witnesses who attended the September 13 meeting—Manes, Zummo, and Jones. Therefore, it is not clear that testimony from plaintiffs' counsel would be necessary at trial.

## CONCLUSION

The motion to disqualify Schlam Stone & Dolan LLP as plaintiffs' counsel is DENIED WITHOUT PREJUDICE.

The Clerk is directed to terminate the motion. (Doc. #23).

Dated: June 14, 2019
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge