UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
SAMUEL INDIG, LEAH INDIG, MEIR KAHANA,          :     Case No: 18-cv-10204
ROBERT KLEIN, and NAFTALI KLEIN                 :
                                                :
                              Plaintiffs,        :
                                                :
     -against-                                   :
                                                :
THE VILLAGE OF POMONA, BRETT YAGEL, LOUIS       :
ZUMMO, LEON HARRIS, and DORIS ULMAN,            :
                                                :
                              Defendants.        :
------------------------------------------------------------------- X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
*Attorneys for Defendants*
**1133 Westchester Avenue**
**White Plains, New York 10604**

By:
Janine A. Mastellone, Esq.
John B. Martin, Esq.

7798093v.1

## **TABLE OF CONTENTS**

**Page**

Introduction ...................................................................................................................1

POINT I      Plaintiffs Robert Klein and Samuel Indig Lack Standing, and the Mere Fact that They Are Related to the Owners of the Allegedly Affected Properties Does Not Create Standing ...........................................................1

POINT II      Since Plaintiffs' Claims Challenge the Validity of State Court Proceedings in Which They Could Have Raised Their Constitutional Claims, Their Claims Should Be Dismissed to Avoid Interfering with the Integrity of the State Proceedings.........................................................3

POINT III      Plaintiffs Have Failed to Plead Valid Equal Protection, Fair Housing Act, N.Y. Civil Rights Act and First Amendment Claims, and Their Conclusory Assertions of Discriminatory Animus Do Not Constitute the Concrete Factual Allegations Required ................................................6

Conclusion ...................................................................................................................11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACORN v. County of Nassau*,
   2006 U.S. Dist. LEXIS 50217 (E.D.N.Y. July 21, 2006)................................................2

*Allen v. Wright*,
   468 U.S. 737 (1984) ........................................................................................................2

*Azana v. City of W. Haven*,
   2012 U.S. Dist. LEXIS 10125 (D. Conn. Jan. 27, 2012)................................................7

*Bernstein v. Vill. of Wesley Hills*,
   95 F. Supp. 3d 547 (S.D.N.Y. 2015) ..............................................................................7

*Boddie v. Morgenthau*,
   342 F. Supp. 2d 193 (S.D.N.Y. 2004) ............................................................................3

*Brach's Meat Market, Inc. v. Abrams*,
   668 F. Supp. 275 (S.D.N.Y. 1987) .................................................................................5

*Buckner v. County of Sullivan*,
   2015 U.S. Dist. LEXIS 12642 (S.D.N.Y. Feb. 3, 2015)................................................8

*Carrington v. Mota*,
   2017 U.S. Dist. LEXIS 141114 (S.D.N.Y. Aug. 31, 2017)...........................................7

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010) ........................................................................................................2

*Collings v. New York City Transit Authority*,
   305 F.3d 113 (2d Cir. 2002) ..........................................................................................10

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976) ........................................................................................................5

*Dutchess Sanitation, Inc. v. Plattekill*,
   433 F. Supp. 580 (S.D.N.Y. 1977) .................................................................................5

*Encarnacion v. Dann*,
   80 Fed. Appx. 140 (2d Cir. 2003).....................................................................................5

*Heck v. Humphrey*,
   512 U.S. 477 (1994) .....................................................................................................3, 4

7798086v.1

*Lilakos v. New York City*,
    2017 U.S. Dist. LEXIS 177851 (E.D.N.Y. Oct. 25, 2017)......................................................1

*Majied v. N.Y. City Dep't of Educ.*,
    2018 U.S. Dist. LEXIS 3058 (S.D.N.Y. Jan. 8, 2018) ...........................................................7

*McConnell v. Fed. Election Comm'n*,
    540 U.S. 93 (2003) ..................................................................................................................1

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
    701 F. Supp. 2d 568 (S.D.N.Y. 2010) ....................................................................................2

*New Creation Fellowship of Buffalo v. Town of Cheektowaga*,
    2004 U.S. Dist. LEXIS 25431 (W.D.N.Y. July 2, 2004) .......................................................2

*Panzella v. City of Newburgh*,
    231 F. Supp. 3d 1 (S.D.N.Y. 2017) ........................................................................................7

*Petrovits v. New York City Transit Authority*,
    2003 U.S. Dist. LEXIS 18347 (S.D.N.Y. Oct. 12, 2003).....................................................10

*Pyke v. Cuomo*,
    258 F.3d 107 (2d Cir. 2001) ...................................................................................................7

*Raymond v. City of New York*,
    317 F. Supp. 3d 746 (S.D.N.Y. 2018) ....................................................................................8

*Rolle v. Connell*,
    2005 U.S. Dist. LEXIS 29549 (N.D.N.Y. Nov. 16, 2005) .....................................................4

*Ross v. New Canaan Envtl. Comm'n*,
    532 Fed. Appx. 12 (2d Cir. 2013)...........................................................................................9

*Rossi v. Gemma*,
    489 F.3d 26 (1st Cir. 2007).....................................................................................................4

*Thomas v. Venditto*,
    925 F. Supp. 2d 352 (E.D.N.Y. 2013) ....................................................................................5

*Walker v. Cox*,
    1999 U.S. Dist. LEXIS 5620 (E.D.N.Y. Mar. 17, 1999).......................................................1

*Walnut Hill Estate Enters., LLC v. City of Oroville*,
    2009 U.S. Dist. LEXIS 104833 (E.D. Cal. Nov. 9, 2009)......................................................9

*Wilkinson v. Dotson*,
    544 U.S. 74 (2005) ..................................................................................................................3

iii

*Younger v. Harris*,
    401 U.S. 37 (1971) ....................................................................................................3

## Introduction

Defendants Village of Pomona, Brett Yagel ("Mr. Yagel"), Louis Zummo ("Mr. Zummo"), Leon Harris ("Mr. Harris") and Doris Ulman ("Ms. Ulman"), (collectively "the Village" or defendants), respectfully submit this reply memorandum of law in further support of their motion, to dismiss the plaintiffs' amended complaint ("AC") (Dkt. Entry #62).

## POINT I

### Plaintiffs Robert Klein and Samuel Indig Lack Standing, and the Mere Fact that They Are Related to the Owners of the Allegedly Affected Properties Does Not Create Standing

While plaintiffs admit that Mr. Klein and Mr. Indig do not have any ownership or legal interest in the subject properties, plaintiffs nonetheless assert that Mr. Klein and Mr. Indig have standing because they are related to the owners and intend to live in the affected properties. *See* Plaintiffs' Memo of Law in Opposition to Motion to Dismiss ("Pl. Mem.") at 10-12.   Mr. Klein and Mr. Indig, however lack standing under relevant case law because they were not prosecuted for violating the Village Code and do not own the properties affected by the Village's stop work orders, and therefore they do not possess a legally protected property or liberty interest which has been denied on unequal terms. *See Lilakos v. New York City*, 2017 U.S. Dist. LEXIS 177851, *18-20 (E.D.N.Y. Oct. 25, 2017) (where one plaintiff owned the house which was subject to Building Code enforcement actions and the other plaintiff was his son who lived in the house and had no ownership in it, the son's claims, which included due process and equal protection claims, were dismissed for lack of standing); *Walker v. Cox*, 1999 U.S. Dist. LEXIS 5620, *8-13 (E.D.N.Y. Mar. 17, 1999) (dismissing Fair Housing Act claims of an illegal tenant of an apartment leased by her half-brother on the ground that she lacked standing because she was merely related to the lessor and occupied the apartment, but had no legally protected interest in it); *see generally McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 227 (2003) ("[T]o satisfy our standing requirements, a

1

plaintiff's alleged injury must be an invasion of a concrete and particularized legally protected interest."), overruled in part on other grounds by *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010); *Allen v. Wright*, 468 U.S. 737, 755 (1984) ("Our cases make clear, however, that such injury accords a basis for standing only to those persons who are <u>personally</u> denied equal treatment by the challenged discriminatory conduct.") (internal quotation marks and citation omitted, emphasis added); *New Creation Fellowship of Buffalo v. Town of Cheektowaga*, 2004 U.S. Dist. LEXIS 25431, *70-72 (W.D.N.Y. July 2, 2004) (where plaintiff was not convicted of offense charged in allegedly discriminatory prosecution, he lacked standing to bring equal protection claim).

Plaintiffs' contrary argument relies on an inapposite line of cases. Specifically, in those cases, the plaintiffs brought facial challenges to local laws or governmental land-use plans that banned an entire class of people from living on or developing certain properties, such that the plaintiffs, who were members of the banned class, plainly had a concrete injury, suffered harm to their legal interests and hence had standing to sue. *See, e.g., ACORN v. County of Nassau*, 2006 U.S. Dist. LEXIS 50217, *3-32 (E.D.N.Y. July 21, 2006) (developer and individuals who were racial minorities and planned to move to a concretely proposed development in the affected zone had standing to challenge facial validity of discriminatory legislation, and related land-use plan, which re-zoned an area to prevent construction of low-income housing for allegedly racially discriminatory reasons); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 583-88 (S.D.N.Y. 2010) (finding injury in fact element of standing for certain plaintiffs bringing facial challenge to allegedly discriminatory zoning laws which would absolutely prohibit them personally from living and studying at planned religious institution, and also finding they have standing based on their status as defendants in a lawsuit brought against them by municipality, but

2

also concluding that certain plaintiffs lacked standing because they had suffered no personal injury to property or other interest directly traceable to discriminatory zoning laws).   By contrast, plaintiffs here have not raised such a facial challenge to discriminatory legislation, and Mr. Klein and Mr. Indig have not suffered a concrete injury to their legal interests because they have not personally lost a legally protected property interest or any other right on a discriminatory basis. Their claims should be dismissed for lack of standing.

**POINT II**

**Since Plaintiffs' Claims Challenge the Validity of State Court Proceedings in Which They Could Have Raised Their Constitutional Claims, Their Claims Should Be Dismissed to Avoid Interfering with the Integrity of the State Proceedings**

Plaintiffs contend that their claims should not be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994) or *Younger v. Harris*, 401 U.S. 37 (1971) because they do not seek an injunction which would restrain or undermine the state prosecution of Mrs. Indig or the convictions of Naftali and Mr. Kahana.  *See* Pl. Mem. at 12-15.  For *Heck* purposes this does not matter, as *Heck* applies to claims for both monetary and injunctive relief.  *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Boddie v. Morgenthau*, 342 F. Supp. 2d 193, 201 (S.D.N.Y. 2004).  Plaintiffs' argument also fails under *Younger* because they do, in fact, seek injunctive relief which would undermine an ongoing prosecution.  Specifically, plaintiffs demand an injunction against the Village's code enforcement practices and court monitoring of the same, which would necessarily suggest that their Ms. Indig's prosecution should be restrained and invalidated because it arose from enforcement practices that are now barred.  *See* AC at ¶¶ 104, 108, 114, 118; *see also id.*, Wherefore Clause, at ¶¶ 2-3. Thus, if this Court were to rule in plaintiffs' favor on their claims, the ruling would improperly interfere

3

with an impending state prosecution, and the Court should abstain from presiding over this case for that reason.[1]

As plaintiffs see it, Naftali's and Mr. Kahana's convictions should not preclude their claims under *Heck* because they were not incarcerated. *See* Pl. Mem. at 12-13. But plaintiffs misapprehend the *Heck* doctrine. It is true that the *Heck* doctrine often applies to incarcerated individuals because, in some circumstances, a plaintiff's incarceration enables them to obtain review of their convictions via a habeas petition, which may be their sole avenue of review of the constitutionality of their convictions, such that the lack of incarceration would eliminate the sort of alternative avenue for review that justifies dismissal of a civil suit challenging the constitutionality of the conviction. *See Rolle v. Connell*, 2005 U.S. Dist. LEXIS 29549, *1-8 (N.D.N.Y. Nov. 16, 2005). But, here, Naftali and Mr. Kahana could have sought review of the constitutionality of their convictions by appealing in state court, as Naftali has concededly done. *See* Pl. Mem. at 13 n.4. Under these circumstances, there is no reason for this Court to rule on the constitutionality of the prosecutions and convictions challenged in this lawsuit, thereby improperly undermining state convictions which have not been overturned through appropriate review proceedings in state court. *Cf. Heck*, 512 U.S. at 490 n.10 ("We think the principle barring

---

[1] Plaintiffs assert that, if the Court abstains from deciding Naftali's, Mr. Kahana's and Mrs. Indig's claims for injunctive relief, the Court should entertain all of plaintiffs' damages claims because Mr. Indig's and Mr. Klein's claims are not subject to abstention insofar as they were not prosecuted or convicted of any offense in state court. *See* Plaintiff Memo at 14. Leaving aside for a moment that Mr. Klein's and Mr. Indig's claims must be dismissed based on lack of standing because they do not own the subject properties and were never prosecuted, plaintiffs' argument makes no sense regardless of the standing issue. Plaintiffs fail to explain how the asserted inapplicability of the abstention doctrine to Mr. Indig's and Mr. Klein's claims could possibly justify a refusal to stay the damages claims brought by the other plaintiffs, who were parties to the state proceedings and are fully subject to the abstention doctrine. Indeed, where a court abstains from considering a plaintiff's claims for injunctive relief, the court should generally stay damages claims brought by the same plaintiff because a favorable judgment on the damages claim would undermine the validity of the state convictions and prosecutions to the same extent as a declaratory judgment. *See Rossi v. Gemma*, 489 F.3d 26, 37-38 (1st Cir. 2007). If anything, this Court should stay the damages claims of all of the plaintiffs because they are brought in the same consolidated action based on common – and baseless – assertions about the culture of the Village, and thus it would be wasteful to stay some of the claims while proceeding to consider others.

4

collateral attacks -- a longstanding and deeply rooted feature of both the common law and our own jurisprudence -- is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated.").

Moreover, even if plaintiffs' claims were not subject to mandatory abstention under *Heck* and *Younger*, this Court should exercise its discretion to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and general principles of abstention. Given that plaintiffs' litigation runs parallel to the state proceedings in which they could have litigated the federal constitutional claims raised here, that this lawsuit threatens to undermine state prosecutions and convictions which should be accorded respect by the federal courts and that other mechanisms of review are available, the Court should exercise its discretion to abstain. *See generally Brach's Meat Market, Inc. v. Abrams*, 668 F. Supp. 275, 279-281 (S.D.N.Y. 1987) (providing overview of *Colorado River* abstention and other forms of abstention, and noting that regardless of whether the parallel federal and state court proceedings are civil or criminal, the relationship to a state criminal proceeding can provide grounds for abstention).

Finally, regardless of whether abstention is appropriate, Mr. Kahana has waived his constitutional claims.  Although plaintiffs suggest that Mr. Kahana's claims survive because he purportedly did not raise them in the state criminal proceedings, the fact remains that he could have raised his claims of religious discrimination in those proceedings and yet opted to waive any such equal protection challenge to the conviction by pleading guilty. *See Thomas v. Venditto*, 925 F. Supp. 2d 352, 356-62 (E.D.N.Y. 2013); *Dutchess Sanitation, Inc. v. Plattekill*, 433 F. Supp. 580, 582-85 (S.D.N.Y. 1977); *see generally Encarnacion v. Dann*, 80 Fed. Appx. 140, 141-42 (2d Cir. 2003) (noting that a constitutional claim which could have been raised in state criminal

5

proceedings was barred in related federal civil suit).   Accordingly, Mr. Kahana's claims should be dismissed based on his guilty plea and attendant waiver of rights.

## POINT III

**Plaintiffs Have Failed to Plead Valid Equal Protection, Fair Housing Act, N.Y. Civil Rights Act and First Amendment Claims, and Their Conclusory Assertions of Discriminatory Animus Do Not Constitute the Concrete Factual Allegations Required**

In plaintiffs' view, they have sufficiently pleaded their equal protection claim and related discrimination claims because the amended complaint ("AC") lists a few remarks of hostility toward Mr. Klein, alleges that Ms. Shea generally believed there was a vaguely defined anti-Jewish culture in Village government, and repeats the unsupported legal conclusion that defendants bore a discriminatory animus against Orthodox Jewish residents. *See* Pl. Mem. at 15-24.  But plaintiffs were required to, and have failed to, allege that similarly situated non-Jewish property owners received more favorable treatment.   And even if comparator allegations were not required, plaintiffs' conclusory assertions fail to establish a plausible claim that the Village intentionally discriminated against them because of their religion.  Their claims should be dismissed.

Plaintiffs acknowledge that typically a challenge to a municipality's discretionary law enforcement action, such as the Village's issuance of tickets and stop work orders at issue here, must include allegations that the municipality treated a similarly situated comparator more favorably.  But plaintiffs contend that they do not need to identify a comparator because they have alleged the existence of direct proof of discriminatory intent. *See* Pl. Mem. at 16-17.  As will be explained below, however, plaintiffs have not alleged facts constituting direct evidence of discriminatory animus, and hence even under their own theory, the AC should be dismissed.  In addition, where, as here, the plaintiff claims that the municipality exercised discretion to selectively enforce the law against him, the plaintiff generally must allege facts showing the

6

7798086v.1

existence of a more favorably treated and highly similar comparator from outside his protected class, and the plaintiff cannot evade this requirement by trying to rely on an intentional discrimination analysis of the type suggested by *Pyke v. Cuomo*, 258 F.3d 107 (2d Cir. 2001). *See Azana v. City of W. Haven*, 2012 U.S. Dist. LEXIS 10125, *27-30 (D. Conn. Jan. 27, 2012) (granting summary judgment dismissing plaintiffs' equal protection calim, despite evidence that police officers made anti-immigrant remarks while arresting them, because plaintiffs failed to show that the officers treated non-Hispanic non-immigrant arrestees more favorably in such discretionary decisions to enforce noise ordinance); *Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 563-582 (S.D.N.Y. 2015) (same where plaintiffs had evidence of anti-Jewish blog posts by one of the defendant officials but did not adequately prove similarity of comparators with respect to municipality's decision to file legal challenge to approval of construction of Jewish educational institution); *see generally Pyke*, 258 F.3d at 109.[2]

Moreover, even assuming *Pyke* is applicable, plaintiffs have not alleged facts which demonstrate that defendants were specifically motivated by anti-Jewish animus to enforce the Village Code against them. Plaintiffs claim that their allegations of the Village's "ongoing hidden agenda against [ ] Jewish residents" or an "us vs. them" culture suffice to show discriminatory

---

[2] Plaintiffs try to distinguish certain cases cited by defendants on the ground that those cases were decided on summary judgment and not on the pleadings. But this is a distinction without a difference. The legal principles set forth in the relevant decisions, including the rule that stray biased remarks do not reflect discriminatory intent and that the plaintiff must identify similarly situated comparators to sustain an equal protection claim, apply equally on summary judgment and at the motion-to-dismiss stage. Indeed, in both procedural postures, the plaintiff's failure to adequately plead the existence of specific facts establishing a discriminatory intent beyond mere stray comments and the existence of similarly situated comparators requires dismissal of his or her equal protection claim. *See Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8-10 (S.D.N.Y. 2017) (dismissing equal protection claim on the pleadings because plaintiff identified a comparator who had only a few similarities to plaintiff); *cf. Carrington v. Mota*, 2017 U.S. Dist. LEXIS 141114, *26 (S.D.N.Y. Aug. 31, 2017) (plaintiff's Title VII claim dismissed on pleadings for lack of allegation of discriminatory intent despite allegation that supervisor made stray remark that plaintiff was a "black bitch."); *Majied v. N.Y. City Dep't of Educ.*, 2018 U.S. Dist. LEXIS 3058, *15-17 (S.D.N.Y. Jan. 8, 2018) (dismissing disability discrimination claim against union under Labor Management Relations Act because allegation of a stray biased remark did not suffice to plead discriminatory intent element).

animus, but as defendants have previously explained, these and similar allegations about an anti-Jewish culture are mere conclusions and hence are legally insufficient to support an inference of discriminatory animus. *See* Village's Memo of Law in Support of Dismissal Motion ("Vill. Mem.") at 21-22; AC at ¶¶ 11, 13, 47-48, 78, 80, 82, 86, 94-97, 99. In addition, as previously discussed (*see* Vill. Mem. at 21-22), the allegedly biased statements cited in the AC amount to nothing more than stray remarks which are legally insufficient to support an inference that defendants acted against plaintiffs in the specific incidents at issue based on a discriminatory animus, especially since there is no indication that the remarks were made sufficiently close in time to those incidents to indicate discriminatory motive.[3] *See Buckner v. County of Sullivan*, 2015 U.S. Dist. LEXIS 12642, *10-12 (S.D.N.Y. Feb. 3, 2015) (stray remarks about plaintiff's race eight months before adverse actions were insufficient to support inference of discriminatory motive); *Raymond v. City of New York*, 317 F. Supp. 3d 746, 764-765 (S.D.N.Y. 2018) (plaintiff's

---

[3] Plaintiffs insist that Mr. Zummo's comment that it would be "just like them" to build an illegal apartment in response to Mr. Klein's advocacy at a Planning Board meeting for a plan to expand Naftali's house reflected Mr. Zummo's intent to discriminate against Naftali based on his religion when, more than six months later, Mr. Zummo issued a stop work order. *See* Pl. Mem. at 22; AC at ¶¶ 84-85, 87. Specifically, plaintiffs opine that, because Mr. Klein was presenting the project to the Board without Naftali, Mr. Zummo's comment about a plural "them" could only have referred to the group of Orthodox Jews generally, not to both Kleins. But plaintiffs ignore the fact that Mr. Zummo, as the Building Inspector, would have been well aware that Mr. Klein was advancing the project on behalf of his father Naftali, who actually owned the building, and therefore Mr. Zummo's reference to "them" was simply a comment on both Kleins' well-documented disregard for the Village Code. Thus, Mr. Zummo's alleged statement showed personal animosity toward the Kleins, not religious animus. And, even if he had been referring to Orthodox Jews, his comment would have been too far removed from any adverse action against Naftali to constitute evidence of a discriminatory motive for such action. Mr. Zummo's alleged mocking of Orthodox Jews on an unspecified occasion, while inappropriate, was likewise a stray remark which is not alleged to be connected, temporally or otherwise, to his issuance of tickets or stop work orders. Plaintiffs also claim that Ms. Ulman harbored a discriminatory animus because she allegedly told an unidentified resident that she was resigning from her role as counsel to the Planning Board based on the Planning Board's discrimination against Orthodox Jews, and she directed Village officials to deny COs and permits to Mr. Klein and another Jewish developer. *See* AC at ¶¶ 40, 59. However, Ms. Ulman's alleged admission that the Planning Board discriminated against Orthodox Jews adds nothing to plaintiffs' case because none of the actions challenged by plaintiffs were undertaken by the Planning Board; in fact, the Planning Board allegedly <u>approved</u> certain plans to expand Naftali's house. AC at ¶ 85. As for the allegation that she ordered the denial of permits to certain Orthodox Jews, there is no allegation that she said or did anything reflecting a discriminatory intent in issuing such an alleged order, and plaintiffs have failed to allege that she gave more favorable treatment to any specifically identified non-Jewish property owner who was similarly situated to plaintiffs in all material respects.

supervisor's reference to low-income residents of minority neighborhood as "animals" did not show discriminatory intent as to decision to give negative performance evaluation underlying equal protection claim); *Walnut Hill Estate Enters., LLC v. City of Oroville*, 2009 U.S. Dist. LEXIS 104833, *14-20 (E.D. Cal. Nov. 9, 2009) (stray remark about not wanting "those type of people here" in reference to the types of disabled and low-income people staying at plaintiffs' inn was insufficient to show discriminatory intent in city-ordered evacuation of the inn); *cf. Ross v. New Canaan Envtl. Comm'n*, 532 Fed. Appx. 12, 13 (2d Cir. 2013). Indeed, while plaintiffs now claim that the AC indicates the remarks were made around the same "time period" as the Village's enforcement actions, plaintiffs cite only an allegation that the NYDHR report "reflects evidence that Defendants improperly 'targeted the Jewish community for disparate treatment' through selective ticketing of Jewish residences'" which simply does not reveal any particular time period for any remark made by defendants. AC at ¶ 61; *see* Pl. Mem. at 21.[4]  As a result, plaintiffs have not alleged facts showing a connection, based on timing or context, between the alleged biased comments and the challenged tickets or stop work orders, and thus no inference of discriminatory motive is possible.

In addition, it is clear that no Village official ever made any allegedly discriminatory comment or admission of discriminatory motive regarding the actions allegedly taken against the

---

[4] Notably, if the reference to the report's recitation of Ms. Shea's allegations were meant to suggest that defendants made their stray comments during Ms. Shea's employment with the Village, this allegation would only confirm that defendants did not make the remarks close in time to the issuance of tickets to plaintiffs. After all, Ms. Shea's employment ended in June 2016, which was more than a year before the issuance of a ticket to Mr. Kahana in August 2017, more than a year before the issuance of the first tickets to Naftali and Mrs. Indig in November 2017, and a year before the issuance of the first stop work order to Naftali in June 2017. *See* Ex. D; Ex. E; Ex. F; AC at ¶ 87. An alleged stray remark made over a year before any defendant took any action to prevent plaintiffs' planned projects cannot support an inference that defendants' conduct was motivated by anti-Jewish animus.

Indigs or Mr. Kahana.[5] Thus, there can be no serious dispute that those plaintiffs' claims should be dismissed for lack of sufficient allegations of discriminatory intent.[6]

Plaintiffs also assert that Naftali's and Mr. Kahana's convictions do not absolutely preclude an inference of discriminatory animus behind their prosecutions. *See* Plaintiff Memo at 23-24. But, in advancing this argument, plaintiffs erroneously rely on inapposite cases that deal with the effect of a prior adverse arbitration decision on a plaintiff's claims, not on the impact of the plaintiffs' convictions beyond a reasonable doubt. *See Collings v. New York City Transit Authority*, 305 F.3d 113, 119 (2d Cir. 2002); *Petrovits v. New York City Transit Authority*, 2003 U.S. Dist. LEXIS 18347, *11-16 (S.D.N.Y. Oct. 12, 2003). Even assuming that convictions are not always conclusive of related equal protection claims, they certainly should be preclusive here because plaintiffs have offered no concrete allegations of fact showing that, despite a neutral magistrate's finding that they committed the charged offenses (indeed, a finding upon a guilty plea in Mr. Kahana's case), defendants enforced the Village Code against them based on discriminatory

---

[5] Plaintiffs assert that paragraph 80 of the AC shows that defendants made biased remarks about the Indigs and Mr. Kahana. *See* Pl. Mem. at 22. But that paragraph merely alleges that Mr. Klein saw a text message from Mr. Harris to Mr. Zummo "demanding that Mr. Kahana receive not just one, but multiple violations," and thus the paragraph contains no mention of any anti-Jewish comment about Mr. Kahana and suggests, at most, Mr. Harris's non-actionable personal dislike of Mr. Kahana. AC at ¶ 80. Otherwise, paragraph 80 contains a mere conclusory assertion that "[t]he motivation was clearly to harass [Mr. Kahana] because he is an Orthodox Jewish resident," which is plainly insufficient to constitute a valid allegation of facts showing discriminatory intent. AC at ¶ 80.

[6] Plaintiffs contend that the AC also adequately alleges that defendants violated their equal protection rights when defendants intimidated the Indigs' workers, demanded that multiple violations be issued to Mr. Kahana and delayed responses to the Kleins' plans. See Pl. Mem. at 22. But there is no allegation of discriminatory statements, disparate treatment of similarly situated comparators or other required elements of an equal protection claim in connection with the delay in responding to the Kleins; in fact, the AC acknowledges that some delays were due to the Village's expressed need for more details of the Kleins' plans. AC at ¶ 91. In addition, the AC does not allege that defendants ever actually issued multiple violations to Mr. Kahana beyond the ticket for the pool, and Mr. Harris's alleged demand for such additional violations, which was never allegedly conveyed to Mr. Kahana, did not result in any concrete injury which could support an equal protection claim. As for the allegation that the Village sought to have Rockland County revoke the Indigs' workers' licenses in order to intimidate the workers, the AC does not state what action the Village took to try to cause Rockland County to revoke the licenses, and it does not assert that the Village or Rockland County informed the workers of any effort to have the licenses revoked. Thus, this allegation is too conclusory to support an equal protection claim, and at any rate, the Indigs suffered no concrete injury from the Village's alleged intimidation, especially since there is no claim that the Village actually made their efforts known to the Indigs or the workers in a manner that could intimidate them. AC at ¶ 74.

animus rather than a neutral desire to punish them for their proven misdeeds.  Indeed, plaintiffs cannot explain how their cursory assertions of discrimination can be squared with the proof presented at Naftali's trial, or conceded upon Mr. Kahana's plea, that defendants prosecuted them for neutral reasons upon observing them violate the Village Code.  *See* Ex. L; Ex. M.

Finally, as plaintiffs concede (Pl. Mem. at 24-25), their First Amendment, Fair Housing Act, and N.Y. Civil Rights Act claims are evaluated under the same standards applicable to their equal protection claims, and thus all of plaintiffs' claims should be dismissed.

## Conclusion

For the reasons stated above and in defendants' initial moving papers, this Court should grant defendants' motion in its entirety.

Dated:      White Plains, New York
            July 3, 2019

                                        Respectfully submitted,

                                        WILSON, ELSER, MOSKOWITZ,
                                        EDELMAN & DICKER LLP
                                        *Attorneys for Defendants*

                                        /s/ Janine A. Mastellone
                                        Janine A. Mastellone
                                        John B. Martin
                                        1133 Westchester Avenue
                                        White Plains, NY  10604
                                        (914) 323-7000
                                        Our File No. 12741.00086

11