UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SAMUEL INDIG, LEAH INDIG, MEIR  :
KAHANA, ROBERT KLEIN, and NAFTALI  :
KLEIN,  :
                Plaintiffs,  :
v.  :
  :
THE VILLAGE OF POMONA, BRETT  :
YAGEL, LOUIS ZUMMO, LEON HARRIS,  :
and DORIS ULMAN,  :
                Defendants.  :
--------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 10204 (VB)

Briccetti, J.:

      Plaintiffs Samuel Indig, Leah Indig, Meir Kahana, Robert Klein, and Naftali Klein bring

this action against defendants The Village of Pomona (the "Village"), Brett Yagel, Louis

Zummo, Leon Harris, and Doris Ulman, claiming defendants violated their rights under the

United States Constitution; the Fair Housing Act ("FHA"); the New York State Constitution; and

New York Civil Rights Law § 40-c, by discriminating against plaintiffs on account of their

religious affiliation. Specifically, plaintiffs claim defendants have used the Village codes to

target Orthodox Jewish residents of the Village. Accordingly, plaintiffs seek damages and

injunctive relief.

      Before the Court is defendants' motion to dismiss the amended complaint pursuant to

Rules 12(b)(1) and 12(b)(6).[1] (Doc. #82).

      For the reasons set forth below, the motion to dismiss is GRANTED IN PART and

DENIED IN PART.

---

[1]    Because the Court is addressing defendants' motion under Rules 12(b)(1) and 12(b)(6), it
need not consider defendants' alternative Rule 12(c) motion for judgment on the pleadings. (See
Doc. #83 ("Defs. Br.") at 10 n.2).

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiffs' favor, as summarized below.

I.  The Plaintiffs

The plaintiffs are religious Jews who reside in or own property in the Village. Each plaintiff claims to have suffered due to defendants' actions to enforce the municipal codes. Plaintiffs allege defendants' conduct is part of a broader campaign intentionally to discriminate against Orthodox Jewish residents of the Village.

A.  Samuel and Leah Indig

Samuel and Leah Indig purchased a home in the Village in 2015. The Indigs applied for a building permit to undertake grading work in their backyard, which required the use of a tractor. The plan, prepared by the Indigs' engineer, was approved. To get the tractor onto the Indigs' property, "it was necessary to create a dirt path to enable the tractor to reach the bottom of the hill." (Am. Compl. ¶ 72). Thereafter, defendant Building Inspector Louis Zummo issued a stop work order, asserting that the dirt path constituted a "road" which required a separate approval. (Am. Compl. ¶ 73). The Indigs appealed the stop work order to the Village zoning board. As the appeal was pending, the Indigs allege defendants intimidated and pressured the engineer and workers to cease work. They claim that, as a result of the stop work order, there is a "dangerously steep incline on their property," which limits the use of their backyard and creates a risk of mud slides and a "breeding ground for mosquitos and ticks." (Am. Compl.

¶ 76). According to the Indigs, defendants' actions are part of "their agenda against Jewish residents" of the Village. (Am. Compl. ¶ 77).

According to defendants, there is a pending proceeding in Ramapo Town Court against Leah Indig for failure to obtain a building permit and for violation of the stop work order. That proceeding remained pending as of time this motion was fully briefed.

### B.     Meir Kahana

Meir Kahana resides in the Village. The Village ticketed Kahana for a small pool purchased at Toys 'R' Us that was temporarily on his property. The Village also issued Kahana a warning for a dog waste violation, although Kahana maintains he does not own a dog.

Kahana alleges defendant Deputy Mayor Leon Harris instructed Zummo to issue the violations, which Kahana attributes to intentional religious discrimination. (Am. Compl. ¶¶ 78-80).

According to defendants, Kahana pleaded guilty in Haverstraw Town Court for erecting an unfenced pool on his property in violation of Village code.

### C.     Robert and Naftali Klein

Robert Klein ("Klein") lives in the Village in a home owned by his father, Naftali Klein. In 2016, Klein began a project to "lift and expand" his home (Am. Compl. ¶ 83), pursuant to which he submitted renovation plans to the Village. During a zoning board meeting, Zummo allegedly said it would be "just like them" to build an illegal basement apartment. (Am. Compl. ¶ 84). Klein claims Zummo's statement was discriminatory against Orthodox Jews.

The Village then required Klein to submit new plans, which he did. In December 2016, the Village issued a permit for the renovation. Klein put the renovation on hold, and in March 2017, he submitted a revised plan.

The work on Klein's house began on April 24, 2017. The house was lifted and placed on temporary supports.

On June 30, 2017, Zummo issued a stop work order. Klein alleges the basis for the order was discriminatory. He also claims to have seen a text message from defendant Mayor Brett Yagel to Zummo, in which Yagel directed Zummo to "give Klein a SWO by 3 pm or you are fired." (Am. Compl. ¶ 87).

At Zummo's direction, Klein resubmitted the revised plan, the same one submitted in March 2017. In August 2017, after reviewing the revised plan, Zummo approved the work. However, in October 2017, Zummo issued a second stop work order. Klein learned the reason for the second stop work order was an issue with the fire sprinklers, after which he submitted a new plan to the Village on November 20, 2017. Klein's engineer received an email from the Village engineer on November 28, 2017, which stated the plan complied with the Village code but could be rejected for lack of detail. Thereafter, in April 2018, Klein revised and resubmitted the plan in response to the Village engineer's concern.

From November 28, 2017, to April 2018, Klein did not hear from the Village. Consequently, Klein's home allegedly "began to suffer damage due to exposure to the elements." (Am. Compl. ¶ 92). Klein claims Zummo revealed to defendant Village Attorney Doris Ulman that the Village's strategy of stonewalling was deliberate. Klein further alleges that during this time, non-Jewish residents were allowed to renovate their homes without the same onerous code requirements, and that such residents did not receive stop work orders.

According to defendants, Naftali Klein was found guilty in Haverstraw Town Court of violating a stop work order.

Robert Klein also received a "garbage ticket" as well as a ticket for failing properly to dispose of leaves. (Am. Compl. ¶ 96). Klein claims this was another instance of discriminatory enforcement: non-Jewish residents, whose failures to dispose leaves were far worse, were not ticketed.

Klein was elected to the Village Board of Trustees in 2017. Klein alleges that following his election, Yagel threatened him and told him to "watch [his] back." (Am. Compl ¶ 81). Klein argues that in his tenure on the Village Board of Trustees, he has been mistreated due to his religion. Specifically, Klein alleges he has been denied access to records, refused a key to the Village office, and sidelined by other board members who have tried to hold meetings on Jewish holidays.

## II. Allegations of Intentional Discrimination

In addition to the conduct plaintiffs personally experienced, plaintiffs allege defendants' conduct was part of a broader pattern of discrimination against the Village's Orthodox Jewish residents.

Plaintiffs first point to a recent ruling in which a judge in this District found that Yagel and Ulman had intentionally engaged in an effort "to thwart the spread of the Orthodox/Hasidic Jewish community into the village." (Am. Compl. ¶ 14) (discussing Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY, 280 F. Supp. 3d 426, 455 (S.D.N.Y. 2017)).

Plaintiffs then discuss an account detailed in a report of the New York State Division of Human Rights (the "Human Rights Report"), released in June 2018, in which a so-called whistleblower complained of defendants' discriminatory attitudes and conduct towards Orthodox Jewish residents of the Village. Specifically, plaintiffs allege the Human Rights Report found that: (i) Yagel routinely referred to Orthodox Jews as "Them" or "Those People"; (ii) Yagel

suggested a Village employee place pork rinds on the public counter in a Village office to deter

Orthodox Jews from seeking access to municipal services; (iii) Zummo admitted to mocking and

imitating Orthodox Jewish residents; (iv) the Village engaged in discriminatory conduct towards

Orthodox Jewish residents with its building permits; (v) Ulman admitted to intentionally making

certain residents miserable for unlawful discriminatory reasons; and (vi) the Village targeted "the

Jewish community for disparate treatment through selective ticketing of Jewish residences and

prayer gatherings."  (Am. Compl. ¶ 17).

## DISCUSSION

I.     Legal Standards

A.     Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such

limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston,

Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).[2]  A cause of action

"is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v. Already,

LLC, 663 F.3d 89, 94 (2d Cir. 2011).  The party invoking the Court's jurisdiction bears the

burden to establish that jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir.

2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court

"must accept as true all material facts alleged in the complaint and draw all reasonable inferences

in the plaintiff's favor."  Conyers v. Rossides, 558 F.3d at 143.  "However, argumentative

---

[2]     Unless otherwise indicated, case quotations omit all citations, internal quotation marks, footnotes, and alterations.

inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court typically should consider the Rule 12(b)(1) challenge first. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.  Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.    Standing

Defendants argue plaintiffs Samuel Indig and Robert Klein lack Article III standing because neither holds title to their respective residences.

The Court disagrees.

A.    Legal Standard

To satisfy Article III's standing requirements, a plaintiff must show:  (1) he "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 350 (2d Cir. 2008) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000)).  "It is the burden of the party invoking federal jurisdiction to establish these three elements."  Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 701 F. Supp. 2d 568, 581 (S.D.N.Y. 2010) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).  However, "at the pleading stage, standing allegations need not be crafted with precise detail."  Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003).

First, to show that an injury is "concrete and particularized," plaintiffs must allege "that [they] personally ha[ve] suffered some actual or threatened injury as a result of the putatively illegal conduct of" defendants.  Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).  For an injury to be "actual or imminent," plaintiffs must show "that [they] ha[ve] sustained or [are] immediately in danger of sustaining some direct injury," City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983), that is not "conjectural or hypothetical."  Lujan v. Defs. of Wildlife, 504 U.S. at 560.

A plaintiff alleging injury resulting from a defendant's discriminatory actions need not own the properties at issue to satisfy Article III standing.  Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 (1977) (holding the injury was sufficiently pleaded where plaintiff-developer had contracted to purchase land but did not yet own the property).

Second, to show causation, the complaint must allege "the existence of an intermediate link between the . . . [challenged government action] and the injury."  Pac. Capital Bank, N.A. v. Connecticut, 542 F.3d at 350.

And third, to show redressability, there must be a "non-speculative likelihood that the injury can be remedied by the requested relief."  Coal. of Watershed Towns v. EPA, 552 F.3d 216, 218 (2d Cir. 2008).  To meet these requirements, plaintiffs must allege facts that show it is "'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. at 561).  For instance, if a plaintiff "secures the injunctive relief it seeks, that barrier will be removed."  Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. at 261.

B.    Application

Here, plaintiffs Samuel Indig and Robert Klein have sufficiently alleged they personally and actually suffered as a result of the Village's restrictions on their respective residences.

Samuel Indig lives with his wife, homeowner Leah Indig.  Defendants argue Samuel Indig lacks standing because only Leah Indig was listed on and prosecuted for violating the stop work order.  This argument misunderstands the Indigs' injury and what is required for Article III standing.  Samuel Indig alleges he cannot use the backyard at the home in which he lives.  Indeed, the Indigs claim their backyard has a dangerously steep incline, creating a risk of mud slides, and increased mosquitoes and ticks.  Thus, Samuel Indig has alleged a concrete and

particularized injury, that is actual and ongoing, due to defendants' conduct.  Moreover, the injunctive relief the Indigs seek may allow them the opportunity to move forward with the grading work.

Likewise, Robert Klein argues he too has been harmed by defendants' discriminatory building code enforcement and stonewalling.  Klein alleges defendants' actions have caused his residence "to suffer damage due to exposure to the elements."  (Am. Compl. ¶ 92).  Klein seeks injunctive relief and damages that could help end the Village's restrictions on his renovations and compensate him for any damage to his home resulting from the languishing approval process.  Moreover, Klein makes additional allegations of discriminatory conduct related to his position as a member of the Village Board of Trustees.

For these same reasons, the Court concludes both Samuel Indig and Robert Klein have sufficiently pleaded Article III standing.

II.    Abstention

Defendants urge the Court to abstain from addressing plaintiffs' claims pursuant to the Younger and Heck abstention doctrines, or, in the alternative, the Colorado River abstention doctrine.

The Court declines to do so.

A.    Legal Standard

Abstention is a judicial doctrine providing federal courts grounds to decline to hear a case out of "proper regard for the rightful independence of state governments in carrying out their domestic policy."  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 724 (1996).  This doctrine has four categories:  (i) to avoid decision of a federal constitutional question arising in a case which may be disposed of on questions of state law; (ii) to leave resolution of unsettled and

important questions of state law to the state courts; (iii) to avoid interference with a pending state criminal proceeding; and (iv) to avoid duplicative litigation out of consideration for judicial administration.  Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 536–37 (S.D.N.Y. 2010) (discussing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 814–17 (1976)).[3]

"Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."  Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013).  As the Supreme Court has explained, "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief" are the exception, not the rule.  New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989).

"When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution" pursuant to Younger abstention.  Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 72.  When Younger applies, abstention is mandatory, and its application deprives the federal court of subject matter jurisdiction.  Colo. River Water Conservation Dist. v. United States, 424 U.S. at 816 n.22.  The Supreme Court has extended Younger to other exceptional circumstances, such as "civil enforcement proceedings" and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. at 367–68.

---

[3]     Because defendants urge the Court to abstain to avoid interfering with a "pending state criminal proceeding" or invalidating "state criminal convictions" (Defs Br. at 11), or, in the alternative, to avoid duplicative litigation, the Court's analysis centers around the third and fourth categories of abstention.

Similar to Younger, Heck abstention applies when a plaintiff seeks to "recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," because there are other avenues to seek relief. Heck v. Humphrey, 512 U.S. 477, 486 (1994). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487.

Accordingly, when a case presents "none of the circumstances the Court has ranked as exceptional, the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 73 (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. at 817).

Courts may also exercise their discretion and abstain pursuant to Colorado River, wherein the Court seeks to avoid "the contemporaneous exercise of concurrent jurisdictions." Dittmer v. County of Suffolk, 146 F.3d 113, 117 (2d Cir. 1998). For Colorado River to apply, there must be a finding of parallel state and federal proceedings. Id. at 118. "Federal and state proceedings are concurrent or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997).

B.     Application

The Court is not persuaded that abstention is warranted under any of these doctrines.

Defendants argue there are parallel, pending state proceedings against defendants Leah Indig, Meir Kahana, and Naftali Klein and the Court should not interfere with those proceedings. Here, however, the grounds for <u>Younger</u> abstention are not satisfied. First, only Leah Indig has a pending case related to alleged violations of Village codes. Even so, those alleged violations are not being challenged in this lawsuit, nor are Kahana's or Naftali Klein's convictions for violating Village codes. Instead, plaintiffs allege defendants acted with unlawful animus in the provision of municipal services. Thus, Leah Indig's pending proceeding for failing to obtain a permit and for violating the stop work order has little, if any, bearing on this proceeding. The other plaintiffs, Kahana and Naftali Klein, have already had claims adjudicated against them. Thus, there are no pending state court proceedings with respect to Kahana and Naftali Klein. Accordingly, the Court finds that <u>Younger</u> abstention does not apply.[4]

Second, defendants urge the Court to abstain by invoking <u>Heck</u>. But <u>Heck</u> is inapposite. Plaintiffs do not allege they suffered injury as a result of an unconstitutional conviction or imprisonment. Accordingly, the Court finds that <u>Heck</u> abstention does not apply.

Finally, defendants ask the Court to abstain on discretionary grounds, by suggesting <u>Colorado River</u> justifies abstention. Defendants argue "plaintiffs' litigation runs parallel to the state proceedings in which they could have litigated the federal constitutional claims raised here." (Doc. #95 ("Defs. Reply Br.") at 5). But this argument is unavailing. The proceedings pending against Leah Indig are proceeding in the Ramapo Town Court. And the proceedings against Kahana and Naftali Klein were litigated in the Haverstraw Town Court. Under these circumstances—and recognizing that abstention is the exception, not the rule—the Court finds

---

[4]     Moreover, in the Second Circuit, "application of the <u>Younger</u> doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983," as plaintiffs do here. <u>Rivers v. McLeod</u>, 252 F.3d 99, 101–02 (2d Cir. 2001).

plaintiffs did not have to challenge the Village's pattern of conduct towards Orthodox Jews in a municipal enforcement action. Indeed, plaintiffs do not dispute whether they violated Village codes, but rather they allege they were issued violations on account of selective enforcement.

For the reasons discussed above, the Court declines to abstain.

III. Equal Protection Claim

Defendants argue plaintiffs have not alleged adequately a claim arising under the Equal Protection Clause of the Fourteenth Amendment because plaintiffs fail to allege similarly situated comparators were treated differently.

The Court disagrees.

A. Legal Standard

"The Equal Protection Clause prohibits the government from subjecting individuals to selective treatment . . . based on impermissible considerations such as . . . religion." Am. Atheists, Inc. v. Port Auth. of NY & NJ, 936 F. Supp. 2d 321, 338 (S.D.N.Y. 2013), aff'd sub nom. 760 F.3d 227 (2d Cir. 2014). "To prove an equal protection violation, claimants must prove purposeful or intentional discrimination by a government actor directed at a suspect class, such as a religious group." Id.

A plaintiff may plead intentional discrimination in violation of the Equal Protection Clause by alleging either: (i) "a law that expressly classifies on the basis of [religion]," (ii) "a facially neutral law or policy that has been applied in an unlawfully discriminatory manner," or (iii) "a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus." Pyke v. Cuomo, 567 F.3d 74, 76 (2d Cir. 2009) (per curiam).

"A plaintiff asserting any of these three theories is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of

equal protection." Patterson v. City of New York, 2017 WL 3432718, at *9 (E.D.N.Y. Aug. 9, 2017), appeal dismissed, 2017 WL 7734129 (2d Cir. Nov. 21, 2017), and aff'd, 758 F. App'x 217 (2d Cir. Mar. 19, 2019) (summary order); see also Alfaro v. Labador, 300 F. App'x 85, 87 (2d Cir. Nov. 14, 2008) (summary order) (plaintiff asserted an equal protection violation based upon defendants' denial of his application for a zoning variance; the Circuit rejected defendants' argument that plaintiff's failure to identify similarly situated comparators was fatal to his claim; "[e]ven if no one else applied for a variance, Alfaro could prevail if the ZBA defendants' denial of his application was based on his race."). Nor does a plaintiff need to establish a consistent pattern. "A single invidiously discriminatory governmental act in the exercise of the zoning power as elsewhere would not necessarily be immunized by the absence of such discrimination in the making of other comparable decisions." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. at 266 n.14 (citing City of Richmond v. United States, 422 U.S. 358, 378 (1975)).

Instead, a plaintiff can allege facts such as, "[t]he historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes," "[d]epartures from the normal procedural sequence," "[s]ubstantive departures," and "[t]he legislative or administrative history . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." Cf. Hayden v. Paterson, 594 F.3d 150, 163 (2d Cir. 2010) (discussing Arlington Heights in the context of a disparate impact claim).

If the plaintiff "can demonstrate such intentional discrimination on the basis of religion, the government action is subject to strict judicial scrutiny. Absent evidence of intentional

discrimination, the government action is subject to rational basis review." New Hope Family Servs., Inc. v. Poole, 387 F. Supp. 3d 194, 221 (N.D.N.Y. 2019).

B.    Application

Here, plaintiffs allege the second method, arguing defendants enforced facially neutral Village codes unlawfully against Orthodox Jews.

To support these allegations, plaintiffs first include evidence from the whistleblower of unlawful application of the Village codes, as detailed in the Human Rights Report. These statements support plaintiffs' pleadings insofar as they corroborate plaintiffs' allegations that defendants used their positions to deny or limit Orthodox Jewish residents' access to municipal services. Specifically, plaintiffs allege defendants deliberately responded slowly to requests from Orthodox Jews; and certain defendants threatened other defendants if they were perceived as being helpful to an Orthodox Jewish resident.

Second, plaintiffs have included in their amended complaint statements allegedly made by defendants indicating unlawful discrimination in the enforcement of municipal codes, such as Zummo's comment to Klein during his building inspection that it would "be just like them" to build an illegal basement.

Finally, and even though not required under Pyke, plaintiffs have alleged non-Orthodox Jewish residents were treated more favorably by defendants. For example, plaintiffs allege non-Orthodox Jewish residents were not ticketed for the same offenses for which Orthodox Jewish residents received tickets, and non-Orthodox Jewish residents such as Peter Obe, were permitted to build their homes without sprinklers, and did not experience the same difficulties with the Village.

Accordingly, plaintiffs have adequately pleaded a claim for religious discrimination under the Equal Protection Clause.

IV.     Free Exercise Claim

Defendants argue plaintiffs have failed adequately to allege defendants burdened plaintiffs' religious practice.

The Court agrees.

A.     Legal Standard

The First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, "prohibits the enactment of any law prohibiting the free exercise of religion." Bronx Household of Faith v. Cmty. Sch. Dist. No. 10, 127 F.3d 207, 215 (2d Cir. 1997). "[T]he protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993).

When a plaintiff claims his rights under the Free Exercise Clause have been violated, he must demonstrate that the official conduct at issue operated coercively against him "in the practice of his religion." Harris v. McRae, 448 U.S. 297, 321 (1980). "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. at 534. A plaintiff must allege the defendant's challenged actions were targeting plaintiff's religious practices. Skoros v. City of New York, 437 F.3d 1, 39 (2d Cir. 2006).

"Absent some demonstration that the purpose of the defendants' challenged actions was to impugn . . . or to restrict their religion practices . . . a Free Exercise claim will be sustained

only if the government has placed a substantial burden on the observation of a central religious belief, without a compelling governmental interest justifying the burden." Newdow v. United States, 2013 WL 4804165, at *4 (S.D.N.Y. Sept. 9, 2013), aff'd sub nom. Newdow v. Peterson, 753 F.3d 105 (2d Cir. 2014). "A substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Newdow v. Peterson, 753 F.3d 105, 109 (2d Cir. 2014).

"It is not a violation of the Free Exercise Clause, however, to enforce a generally applicable rule, policy, or statute that incidentally burdens a religious practice, as long as the government can 'demonstrate a rational basis for [the] enforcement' of the rule, policy, or statute, and the burden is only an incidental effect, rather than the object, of the law." Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY, 280 F. Supp. 3d 426, 482 (S.D.N.Y. 2017) (citing Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002)). Thus, to state a free exercise claim, a plaintiff generally must establish that "the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation," or that the law's "purpose . . . is the suppression of religion or religious conduct." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. at 534.

B.      Application

Here, plaintiffs have not alleged that the Village codes—neutral on their face—are designed or applied by defendants in a way to interfere with plaintiffs' religious observation. Further plaintiffs do not allege that their actions—such as the Indigs' grading work, Kahana's temporary pool, or Klein's home renovation—are central to their religious practices. Nor do plaintiffs allege defendants' enforcement of the Village codes substantially burdens the

observation of their religious beliefs.[5]  Therefore, plaintiffs cannot argue that defendants'

challenged actions were targeting plaintiffs' religious practices.  Skoros v. City of New York,

437 F.3d at 39.

Accordingly, the Court finds plaintiffs have not adequately alleged a free exercise claim

under the First Amendment.

V.    Fair Housing Act Claim

Defendants argue plaintiffs have not alleged adequately a violation of the FHA.

The Court disagrees.

The FHA disallows "discriminat[ion] 'against any person in the terms, conditions, or

privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

therewith' for any of those same reasons."  Logan v. Matveevskii, 175 F. Supp. 3d 209, 224–25

(S.D.N.Y. 2016) (citing 42 U.S.C. § 3604(b)).  Under the FHA, a plaintiff can sue a municipality

or government agency for "implementing or enforcing housing policies in a discriminatory

manner."  Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 138 F. Supp. 3d at

491 (citing Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003)).

For a FHA discrimination claim, a plaintiff may "proceed on a theory of intentional

discrimination, i.e. disparate treatment, or on a theory of disparate impact."  Reed v. Friedman

Mgmt. Corp., 2019 WL 1409726, at *3 (S.D.N.Y. Mar. 28, 2019).  "To establish disparate

treatment under the FHA, 'a plaintiff can either produce direct evidence of discriminatory intent

or indirect evidence that creates an inference of discriminatory intent.'"  Id. at *4 (citing Khodeir

---

⁵      Plaintiffs argue "[b]y targeting Plaintiffs for mistreatment and disfavor because of their
religious identity as Orthodox Jews, Defendants have improperly deprived Plaintiffs of their
right to free exercise of religion."  (Am. Compl. ¶ 106).

<u>v. Sayyed</u>, 2016 WL 5817003, at *5 (S.D.N.Y. Sept. 28, 2016)).  "Under the burden-shifting framework applicable to indirect evidence, a plaintiff must first:

> establish a prima facie case by 'mak[ing] a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of a rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination.'

<u>Id</u>.  (quoting <u>Khalil v. Farash Corp.</u>, 260 F. Supp. 2d 582, 588 (W.D.N.Y. 2003)).

A plaintiff can allege a prima facie case by claiming "that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive."  <u>Mhany Mgmt., Inc. v. Cty. of Nassau</u>, 819 F.3d 581, 606 (2d Cir. 2016).

Here, plaintiffs argue defendants did not make the same housing services or facilities available to Orthodox Jewish residents on the same terms as they did for non-Orthodox Jewish residents.  Thus, for the same reasons the Court finds plaintiffs' amended complaint sufficiently alleges an equal protection claim, the Court finds plaintiffs have stated a claim for discrimination under the FHA.

VI.  <u>New York Constitutional Claims</u>

Plaintiffs and defendants both argue the Court's ruling on plaintiffs' equal protection and free exercise claims arising under the United States Constitution should determine the outcome for the corresponding New York Constitution claims.

The Court agrees.

 "New York courts apply the same analysis for Equal Protection challenges under the New York constitution as under the Federal Constitution."  <u>Am. Atheists, Inc. v. Port Auth. of NY & NJ</u>, 936 F. Supp. 2d at 339–40.  And courts generally analyze federal and state Free

Exercise claims using the same or similar standards.  In re Miller, 252 A.D.2d 156, 158–59 (4th Dep't 1998).

Here, plaintiffs' state law equal protection claim survives a motion to dismiss for the same reasons as does their federal claim.  Plaintiffs' state law free exercise claim fails for the same reasons as does their federal free exercise claim.

VII.    New York Civil Rights Law Claim

Finally, defendants argue plaintiffs have not adequately alleged a claim under New York Civil Rights Law Section 40-c.

The Court agrees.

New York Civil Rights Law Section 40-c provides:

1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

2. No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

N.Y. Civ. Rights Law § 40-c.  This provision "guarantees equal rights in public accommodations, including educational facilities, and prohibits the denial of access to public accommodations on the basis of race, creed, color, or national origin."  Am. Atheists, Inc. v. Port Auth. of NY & NJ, 936 F. Supp. 2d at 340.  The statute prohibits "state entities from discriminating or harassing people in public places on the basis of their religious beliefs."  Id. Thus, a plaintiff alleging a violation of Section 40-c must plead "denial of access to places of public accommodation and the denial of civil rights based on religion."  Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc., 79 N.Y.2d 227, 234 (1992).

Section 40-c is a public accommodations statute and does not reach alleged government discrimination in plaintiffs' homes or on their private property. Indeed, the case in which plaintiffs rely deals with public, not private, accommodation. Bernstein v. Vill. of Wesley Hills, 95 F. Supp. 3d 547, 585 (S.D.N.Y. 2015), aff'd, 644 F. App'x 42 (2d Cir. Mar. 23, 2016) (summary order) concerns a religious corporation seeking to develop a public education institution and center for religious activity on town land. There, the discrimination reached farther than a private residence. Here, there are no such facts alleged.

Accordingly, plaintiffs' New York Civil Rights Law claim must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiffs' equal protection claims under the United States Constitution and the New York Constitution, as well as the FHA claim, shall proceed. Their free exercise claims under the United States Constitution and the New York Constitution, as well as the New York Civil Rights Law claim, are dismissed.

Defendants shall file an answer to the remaining claims in the amended complaint by December 2, 2019.

The Clerk is instructed to terminate the motion. (Doc. #82).

Dated: November 18, 2019
    White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge