UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMUEL INDIG, LEAH INDIG, MEIR : 7:18-CV-10204 (PMH)
KAHANA, ROBERT KLEIN, and NAFTALI :
KLEIN, :
 :
            Plaintiffs, :
 :
  -against- :
 :
THE VILLAGE OF POMONA, BRETT YAGEL, :
LOUIS ZUMMO, LEON HARRIS, DORIS :
ULMAN and IAN BANKS, :
 :
            Defendants. :
------------------------------------------------------------X

## DECLARATION OF ROBERT KLEIN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

PLAINTIFF ROBERT KLEIN declares pursuant to 28 U.S.C. § 1746:

1. My father, Naftali Klein, and I are plaintiffs in the above-styled action. I make this declaration in support of Plaintiffs' application for a temporary restraining order and motion for a preliminary injunction allowing us to resume and complete the renovation and reconstruction of my residence in the Village of Pomona (the "Village" or "Pomona") in accordance with the law. I am fully familiar with the matters set forth below.

2. Since 2015, my legal place of residence is 63 Halley Drive, Pomona, New York 10970. However, for most of the past three years my wife and children and I have been displaced from our home due to the circumstances described herein. My parents, Naftali Klein and Frieda Klein, are the owners of the property, and with their consent I have served as their representative and agent with regard to obtaining municipal approval for renovation of the property.

3. Pomona has a history of opposing the growth of Orthodox Jewish communities in the Village and surrounding areas. Pomona also has a history of intentionally

discriminating against Orthodox Jews in an effort to prevent or discourage Orthodox Jewish institutions and families from moving into or remaining in the Village. My family and I are Orthodox Jews.

4. In 2015, I hired an architect to prepare plans for the renovation of our home in Pomona, to include, among other things, lifting and expanding the home to include a basement. In 2016, I submitted plans for the project to Pomona's Building Department, but was told I would have to submit the plans to Pomona's Zoning Appeals Board ("ZBA").

5. When I presented my plans to the ZBA, Zummo stated to the ZBA that I should not be permitted to construct a basement because it would be "just like them" –referring to Orthodox Jews – to build a basement to use as an illegal apartment. The ZBA told me to submit new plans, which I did.

6. After significant delay and persistence, I finally received a permit for the construction in December 2016. A copy of the December 2016 permit is attached as "**Exhibit A**."

7. Because it was then the middle of winter and due to the nature of the project, I scheduled the construction to begin in the spring. In early March 2017, my architect and I submitted revised project plans to the Village. A copy of a letter from my architect affirming his submission of these plans is attached as "**Exhibit B**."

8. In the meantime, I was nominated and entered the race to become a member of Pomona's Board of Trustees. Defendant Brett Yagel ("Yagel"), the Mayor of the Village at the time, told me that I should not be running for a position on the Board of Trustees. The Village election was in March 2017, and I became a member of the Board of Trustees on April 1, 2017. I was the first Orthodox Jew to be elected to the Board of Trustees, which led to my bearing the brunt of Village officials' animosity toward the growing Orthodox Jewish community in Pomona. After I was elected to the Board of Trustees, Yagel told me to "watch your back" because "people are watching you."

9. On or about April 24, 2017, the first phase of the project began – the house was lifted and placed on temporary supports. The plan was for the temporary supports to be removed on or about July 5, 2017, when the house would again be resting on a permanent foundation.

10. However, under the direction of Yagel and now the current Mayor of Pomona, Defendant Ian Banks ("Banks"), Zummo and other Village officials have engaged in a deliberate campaign of discrimination and harassment to prevent me from completing the renovation and reconstruction of my Home that continues until today.

11. On Friday, June 30, 2017, Zummo issued a Stop Work Order ("SWO") on my home while the home was still suspended on temporary supports. A copy of the June 30, 2017 SWO is attached as "**Exhibit C**."

12. There was no basis for the SWO, since all that had been done was the lifting of the home pursuant to the approved plans. Zummo later showed me a text message that Yagel had sent to Zummo directing him to "give Klein a SWO by 3 pm or you are fired."

13. In July 2017, Zummo claimed that the architect's revised plans submitted in March 2017 were not in the Village's file and directed me to resubmit them, and I did so. In August 2017, Zummo conducted two inspections of the foundation, and then gave approval for the work to continue.

14. However, during the Jewish religious holiday of Sukkot in October 2017, when I was not present and work had been suspended for the Jewish holidays, Zummo posted a new SWO on the property. A copy of the October 6, 2017 SWO posted on the property is attached as "**Exhibit D**."

15. I first learned of the SWO on October 17, 2017, when I was handed a letter from Zummo dated October 3, 2017 in Village Hall. A copy of Zummo's October 17, 2017 letter is attached as "**Exhibit E**."

16. On or about November 1, 2017, I met with Zummo, Village Engineer Joseph Corless ("Corless"), and Village Attorney Defendant Doris Ulman ("Ulman"), and was given a new list of items needed before the SWO would be lifted. I told Zummo that I would again submit these documents, and requested that they be reviewed promptly so that work could continue before the winter set in. My attorney sent the documents on my behalf to the Village by overnight mail on November 20, 2017. A copy of my attorney's November 20, 2017 cover letter is attached as "**Exhibit F**." A copy of a letter from my architect that was included with the documents my attorney sent to the Village is attached as "**Exhibit G**." I did not receive any immediate response from the Village.

17. On November 28, 2017, Corless prepared a memorandum to Zummo in which he wrote: "The site plan, as submitted, can be approved, but lacks certain details . . ." A copy of Corless's November 28, 2017 memorandum to Zummo is attached as "**Exhibit H**."

18. Corless sent a copy of the memorandum to my Licensed Professional Land Surveyor by email. A copy of Corless's November 28, 2017 email to my Licensed Professional Surveyor is attached as "**Exhibit I**." However, Defendants continued to delay and refused to remove the SWO or allow construction to resume.

19. On December 11, 2017, I formally appealed the SWO to the ZBA. Although the ZBA accepted the appeal, it delayed hearing the appeal for more than five months.

20. In the meantime, I attempted to satisfy Zummo's demands, and again submitted revised plans to the Village in April 2018. Again, Zummo simply refused to take any action. At one point, a neighbor heard Zummo tell Ulman that "nothing will happen if I don't respond [to Mr. Klein's plans]" and "if I don't respond he has no way to appeal because there is nothing to appeal." In other words, by refusing to act, Defendants believed they could deny me the ability to complete my home and effectively render their conduct unreviewable.

21. On May 23, 2018, the ZBA finally held a hearing on the merits of my appeal. The ZBA took testimony and received exhibits from me and from Zummo. After hearing the evidence, the ZBA adjourned the hearing until June 27, 2018, to allow me to add an affidavit from my architect to the record.

22. Yagel next directed Christopher Riley ("Riley), an attorney whom Yagel had hired as Pomona's part-time "Special Prosecutor" of municipal tickets, to show up at the June 27, 2018 ZBA hearing to falsely argue to the ZBA that I had not filed his appeal to the ZBA on time. Yagel directed Riley to go to the ZBA hearing without any prior notice to Ulman, the ZBA's official attorney, because Ulman had already determined that my appeal was timely filed. The ZBA accepted Riley's claim that the appeal was untimely, and dismissed it on that basis.

23. That evening, immediately after the June 27, 2018 ZBA meeting, Ulman notified Yagel and Pomona's Board of Trustees (including me) in writing of her resignation from further representing the ZBA.

24. The next day Ulman, June 28, 2018, wrote a separate letter to Riley and copied to Yagel and the Board of Trustees, stating that Riley's appearance at the ZBA hearing was "inappropriate" and that Riley's "statements to the [Zoning] Board, which the [Zoning] Board relied upon in dismissing Mr. Klein's appeal, were inaccurate." A copy of Ulman's June 28, 2018 letter to Riley is attached as "**Exhibit J**."

25. On August 13, 2018, I filed a petition for review of the ZBA's dismissal of my appeal in the New York Supreme Court, Rockland County, pursuant to New York CPLR Article 78. *See Naftali Klein and Frieda Klein, Owners v. Village of Pomona Zoning Board of Appeals*, Index No. 34966/2018 (the "Article 78 Proceeding"). Among other documents, I submitted Ulman's resignation memo and her letter to Riley to the state court in the Article 78 Proceeding.

26. Riley appeared on behalf of the ZBA in the Article 78 Proceeding, and filed a motion for protective order claiming that the two documents from Ulman were "privileged" and "stolen" by me, and requesting the state court to dismiss the proceeding on that basis. The state court judge signed a "show cause order" on September 14, 2018, temporarily sealing the file and enjoining petitioners in that case from disseminating the "alleged privileged material" pending determination of the ZBA's motion for protective order. No further action was taken on my petition for more than nineteen (19) months.

27. Finally, in an order filed April 29, 2020, the state court judge found that "the only confidential and privileged information obtained by [Robert Klein] is the Confidential Memorandum from the village attorney to the mayor and the village board of trustees dated June 27, 2018." As relief, the judge ruled that "this document is stricken from the papers and will not be considered in this courts determination of the Article 78 proceeding." The judge denied all other relief requested by the ZBA's motion for protective order, and the file was unsealed. Notice of Entry of the order was filed on May 29, 2020. A copy of the state court's order filed April 29, 2020 is attached as "**Exhibit K**."

28. On June 3, 2020, I filed an Amended Petition in the Article 78 Proceeding omitting Ulman's ZBA resignation memo. However, rather than responding to the Amended Petition, the Village filed a Notice of Appeal on June 29, 2020, appealing the state court's April 29, 2020 order. The Village's appeal automatically stayed the Article 78 Proceeding until the appeal is concluded, and the Village has at least six months before it is even required to proceed with the appeal.

29. On April 1, 2019, Defendant Ian Banks ("Banks") succeeded Yagel as mayor of Pomona after defeating Yagel in an election. Banks had courted the support of Orthodox Jews in Pomona with promises to "drain the swamp" and terminate those like Zummo who had carried out the discriminatory policies against Orthodox Jews under the Yagel

administration. Banks hired a new Village Building Inspector who pledged to review all matters objectively without discriminating against Orthodox Jews. The new Building Inspector told me that the permit file for my home was a mess, and he told me to resubmit a new application to start with a "clean slate" so that I could move ahead with completing the construction of my home. I submitted a new application on July 15, 2019.

30. However, Banks soon did an about-face. Shortly after I submitted my new application, the new Building Inspector left Pomona, and Banks returned Zummo as the head of the Building Department. Banks thus put Zummo back in charge of the approval of my home, and in a position to continue the harassing and discriminatory practices against Orthodox Jews. On September 17, 2019, Zummo wrote a denial letter to me for a permit to continue construction on my house. The primary reason given for the denial was Zummo's assertion that the project converted the home into a three-story structure, which would require installation of a complex and costly fire sprinkler system throughout the house.

31. In conversations with me and Avrohom Manes ("Mr. Manes"), an Orthodox Jewish resident and plaintiff in the related *TAL Properties of Pomona, LLC v. Village of Pomona* federal lawsuit in this Court, Banks explained his change of heart, saying, "You people now have too much power." Banks threatened me and Mr. Manes that Zummo would continue to enforce code and building violations against Orthodox Jewish residents of Pomona unless they dropped their lawsuits against the Village. Banks also stated that neither Mr. Manes nor I would receive permits to develop or continue building projects in Pomona unless we dismissed our lawsuits alleging religious discrimination against the Village.

32. Unable to obtain relief in the state court and facing continued obstruction by Banks and Zummo, I next turned to the State of New York in an effort to force Defendants to allow me to resume construction of my home. In 2019, I filed a grievance and appeal with the New York Department of State Division of Code Enforcement and Administration,

challenging Zummo's assertion that the project converted the home into a three-story structure and required installation of a fire sprinkler system. My appeal went to the New York Department of State's Hudson Valley Board of Review (the "Review Board").

33. On March 10, 2020, the Review Board held a public hearing on my appeal, and voted unanimously to grant the appeal. The Review Board issued a written order dated April 14, 2020 with findings of facts overruling Zummo's determination and granting my appeal. A copy of the Review Board's April 14, 2020 order is attached as "**Exhibit L**." The Review Board specifically determined that the state code section requiring a three-story home to have a sprinkler system does not apply to the construction plans for my home. In light of this order, there is no basis for Defendants to continue to deny my application for a renewed construction permit and to prohibit me from immediately resuming and completing the restoration of my home.

34. Upon receiving the Review Board's decision, I formally re-submitted my request to the Village on May 8, 2020 to permit construction on my home to resume together with a copy of the Review Board's decision. On May 10, 2020, I emailed copies of the documents directly to Zummo. On May 11, 2020 Zummo responded by email that he had received the permit application, that it would be reviewed, and that I would be contacted within 30 days in accordance with the Village Code. However, Zummo continued to delay.

35. After thirty days had passed, Mr. Klein emailed Zummo repeatedly, asking for a response, but to no avail. Zummo finally sent an email to Mr. Klein on June 17, 2020 stating in relevant part (emphasis added):

> The permit for the continued construction of the house is currently on hold <u>based on advice from the Litigation attorney</u>. Her advice was to have the Village Attorney review the Grievance and review process, and the fact that the Village was not notified of the hearing until after the hearing. Once I get a determination from the Village Attorney, I will move forward with processing that permit.

36. In fact, both the Village and Zummo were notified of the hearing well in advance of the hearing date. In addition, I notified the Village and Zummo repeatedly of the Review Board's order while there was still time for the Village to appeal the order, but neither Zummo nor the Village took any action.

37. Only after Zummo's email and delay were brought to the attention of the Court in this case, I received a call from the Village on Friday, June 26, 2020 that I could come pick up the permit for the continued construction of my home. A copy of the permit for the continued construction of my home is attached as "**Exhibit M**."

38. The Village and Zummo have on at least four separate occasions claimed to have "lost" the file containing all the relevant plans, applications, and other papers related to my home, requiring me to re-file and delay resumption of construction.

39. When the October 6, 2017 SWO was posted, the basement and roof were still open and exposed and they remain open and exposed today. Although Zummo told me in 2017 that, despite the SWO, I could take whatever steps were necessary to secure and protect my home, Zummo and the Village issued tickets for these efforts taken on November 17, 2017, December 22, 2017, and January 8, 10-11, 2018.

40. Because of the SWO, my home has suffered extensive decay, water and other damage, including numerous breaks in pipes, damage to sheetrock, insulation and wood, due to exposure to extreme weather, animals, and other elements. Many of my items of furniture and belongings have been destroyed. My wife and I and our children lived in my parent's one-room basement for many months, until my wife threatened to leave me unless we found another place to stay. We have been force to live as transients, staying as guests in other people's homes with no permanent home of our own. During this time and because of the situation, my wife has refused to have more children, we have had difficult periods of separation, and our relationship has been stretched to the breaking point. My relationship

with my children has suffered, and they are embarrassed by our situation. My ability to work and earn a living has been severely harmed, and my family and I have suffered emotionally and psychologically. I have even been forced to part with my dog and cat.

41. Having suffered for more than three years and watching my home become damaged further through two severe winters, I now face the immediate prospect of enduring yet another winter watching my home continue to incur damage and rot, while I am unable to provide a normal home to my family. This ongoing situation has already taken a terrible toll on my marriage, family, and daily life. If the situation is allowed to continue, it presents a very real and immediate threat of irreparable harm to our health and wellbeing, our security and stability, and our very existence as a family.

42. Defendants have cruelly and continuously delayed and denied my ability to protect, repair, and complete the construction of my home based upon pretexts and false claims. Zummo admitted in a recording that he was directed by Yagel to stop my construction without basis. Ulman admitted in a recording that Village officials did not treat me fairly and "make it up as they go along." Ulman resigned from representing the ZBA after it dismissed my appeal of the SWO based upon Riley's "incorrect" statements to the ZBA. Former Village Deputy Clerk Noreen Shea reported the Village's discrimination against me in her complaint to the New York Human Rights Commission. Shea recorded Zummo in Village Hall calling Orthodox Jews derogatory names, bragging about blocking permits for Orthodox Jewish institutions, and even talking about wearing a "Hitler was right" hat. Banks told me that I would not be allowed to complete my home unless I dismissed this federal discrimination lawsuit. Defendants' counsel even advised Zummo to continue to withhold the construction permit in June 2020 until it was brought to this Court's attention.

43. With the Village refusing to commit to any specific building inspector other than Zummo and the winter arriving, I identified Fusco Engineering ("Fusco"), an

independent private engineering firm in neighboring Orange County, New York, with a staff of state-certified and licensed Code Enforcement Officers ("CEO") that routinely provide code enforcement services to municipalities in Orange County. Having had no prior business or other relationship to Fusco or its employees, I engaged Fusco to have a CEO perform an inspection of my home for compliance with the architect's plans and state and local building code requirements through the framing stage. Fusco charges $600, well within the customary rate, for this service. The CEO inspected the home and required a minor change, which I have performed. The CEO has certified that the home construction is compliant through the framing inspection stage.

44.    I never imagined the power and ability of a tiny local government and its officials to so easily and without consequence deny my most basic constitutional rights and strip me of my home and property "under color of law," or the near impossibility of obtaining relief and a genuine remedy to repair this situation.

Dated:  November 3, 2020.

                                                                                    _____

                                                                                            Robert Klein