UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMUEL INDIG, LEAH INDIG, MEIR  : 7:18-CV-10204 (PMH)
KAHANA, ROBERT KLEIN, and NAFTALI :
KLEIN, :
 :
                Plaintiffs, :
 :
  -against- :
 :
THE VILLAGE OF POMONA, BRETT YAGEL, :
LOUIS ZUMMO, LEON HARRIS, DORIS :
ULMAN and IAN BANKS, :
 :
                Defendants. :
------------------------------------------------------------X

## DECLARATION OF DANIEL G. ASHBURN, ESQ. IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

DANIEL G. ASHBURN, ESQ. declares pursuant to 28 U.S.C. § 1746:

1.    I am an attorney licensed to practice in the State of Georgia and the State of Israel, and I am admitted *pro hac vice* in this action. I make this declaration in support of Plaintiffs' application for a temporary restraining order and a motion for a preliminary injunction. I represent the Plaintiffs in this case, and am familiar with the facts stated herein.

2.    In 2017, Noreen Shea ("Shea"). a former Deputy Clerk of the Village of Pomona (the "Village" or "Pomona"), filed discrimination complaints against the Village with the U.S. Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("HRD"). Among other things, Shea alleged that she had been terminated by then-Mayor of Pomona Defendant Brett Yagel ("Yagel") because she refused to accede to Yagel's directions to discriminate against Orthodox Jews in providing Village services. Shea alleged that Yagel called her a "Jew Lover." Shea was employed by the Village from February 1, 2016 until she was terminated by Yagel on June 23, 2017.

3. Following an investigation in which the Village submitted evidence and responses, the HRD issued a report in June 2018 finding "probable cause to support" Shea's allegations of discrimination. Shea subsequently filed a federal employment discrimination lawsuit in this District. *See Noreen Shea v. Village of Pomona and Brett Yagel*, Civil Action No. 7:18-cv-11170 (SDNY) (the "Shea Lawsuit").

4. The Village has produced to Plaintiffs in our case recordings produced to the Village in the Shea Lawsuit, which were made by Shea during her employment at the Village. In the recordings, Village employees are heard making and agreeing with degrading and discriminatory remarks about individual Jews and Orthodox Jews collectively. These statements were made in the course of discussions of official decisions and actions such as: (i) ticketing and fining Orthodox Jews; (ii) denying and delaying the requests of Orthodox Jews for basic municipal services; (iii) blocking the access of Orthodox Jews to property and other public records; and (iv) intentionally discriminating in the provision of municipal services to Orthodox Jews.

5. Pomona's Building Inspector, Defendant Louis Zummo ("Zummo"), in particular was recorded making disparaging and discriminatory statements against Orthodox Jews. For example, in a recording from October 5, 2016, Zummo exclaimed "how stupid Jews are" and stated that "half of" the Orthodox Jews "are inbred morons with retarded babies."

6. In a February 13, 2017 recording, Zummo discussed an upcoming meeting with the United Talmudical Association ("UTA"), an Orthodox Jewish organization that was seeking approval for a school at the site of a former camp. Zummo described himself as "the mean [expletive] stopping them from doing it," and mocked the UTA representatives in a stereotypical Orthodox Jewish accent. Zummo bragged about using his position as Building Inspector to block Jewish institutions, and mentioned wearing a "Hitler-was-right hat."

7. In a July 2018 deposition, Defendant Doris Ulman ("Ulman") explained her resignation from representing the Pomona Zoning Board of Appeals in June 2018 as follows: "Something happened at the public meeting that I did not agree with, and I felt I could no longer represent the [ZBA] properly. . . . I sent a memo to the Board of Trustees, telling them that I could no longer work for the Zoning Board, and the reasons why." In an "off the record conversation" at the July 2018 deposition, Ulman stated that there had been discriminatory acts administered by the Village and its mayor, that certain resident's lives were made miserable by the Village's discriminatory tactics, and that Ulman had resigned from the Zoning Board because of those tactics.

8. A copy of my June 24, 2020 letter to the Court is attached as "**Exhibit A**".

9. Janine Mastellone ("Ms. Mastellone") is currently counsel for the Individual Defendants, except for Defendant Mayor Ian Banks ("Banks"). A copy of Ms. Mastellone's July 1, 2020 letter to the Court is attached as "**Exhibit B**."

10. Kenneth Pitcoff ("Mr. Pitcoff") is currently counsel for the Village and Banks. A copy of Mr. Pitcoff's July 1, 2020 letter to the Court is attached as "**Exhibit C**."

11. At the August 4, 2020 pre-motion conference, I explained that the new construction permit that Zummo provided to Mr. Klein in June 2020 was conditional and that there was an inherent conflict of having Zummo continue to have authority to delay and block the construction of Mr. Klein's home. In response, Ms. Mastellone stated that Defendants had discussed the possibility of having the current Village Engineer, Martin Spence ("Spence"), conduct the inspections for Zummo. I expressed reservations of having a Village employee conduct the inspections due to the conflict of interest, especially if the employee was a subordinate of Zummo or Banks. It was suggested that Mr. Klein's architect could also be present during the inspections. The Court directed the parties to discuss a

proposed stipulation and order that would enable Mr. Klein to proceed with the construction of his home, and scheduled a second telephone conference for August 12, 2020.

12. A copy of my August 6, 2020 email to Defendants' attorneys and the ensuing email strings through August 12, 2020 are attached as "**Exhibit D**."

13. At the August 12, 2020 telephone conference, Mr. Pitcoff reported to the Court that Spence would not conduct the inspections, but stated that Defendants were attempting to identify and interview additional potential inspectors with Zummo's assistance. The Court ordered the SAC filed, directed the parties again to meet and confer, and scheduled a third telephone conference for August 19, 2020.

14. My August 18, 2020 email to and the ensuing email string is attached as "**Exhibit E**."

15. On the morning before the August 19, 2020 conference, Defendants' attorneys called me and stated that they were trying to get Chestnut Ridge's Building Inspector, David Smith ("Smith"), agree to conduct the inspection. I again raised the issue of Zummo participating in the selection of an alternative building inspector. Mr. Pitcoff stated that the Village may agree to have the alternative inspector conduct the inspections, but it may be necessary for the inspector to report to Zummo and for Zummo to make the actual decisions and determinations. Ms. Mastellone suggested that, rather than the parties putting all their efforts into reaching an agreement on the building inspections, Plaintiffs should make an offer to resolve the entire case, and perhaps even the related *TAL Properties of Pomona, LLC v. Village of Pomona* case as well.

16. At the August 19, 2020 telephone conference, I reported the information I had recived from the state, and Defendants stated that they were pursuing Smith to conduct the inspection. I noted that Chestnut Ridge had recently been sued in federal court for discrimination against Orthodox Jews, but agreed to consider Smith and submit possible

alternatives. The Court directed the parties to continue their discussions, and scheduled a fourth telephone conference for the second week in September, 2020. I expressed concern that Defendants were dragging the process along and Mr. Klein would not have time to complete or protect the home before winter, particularly given the upcoming Jewish religious holidays. The Court thus directed the parties to submit interim status reports on August 26 and September 2, 2020 before the next conference.

17. A copy of Ms. Mastellone's August 20, 2020 email to me is attached as "**Exhibit F**."

18. A copy of my August 27, 2020 email to Defendants' attorneys is attached as "**Exhibit G**."

19. A copy of my September 2, 2020 email to Defendants' attorneys is attached as "**Exhibit H**."

20. In subsequent telephone calls, Defendants informed me that the Village had not committed to having Smith conduct the inspection or even to having any outside inspector, citing issues of payment, confidentiality and liability. Even so, Defendants stated that the Village was continuing to consider Smith and that they were conducting "due diligence" on Plaintiffs' suggested inspectors.

21. At the September 10, 2020 telephone conference, Mr. Pitcoff incorrectly stated to the Court that Plaintiffs had rejected Smith, and that Defendants were continuing to conduct "due diligence" on Plaintiffs' suggested inspectors. I responded by correcting Mr. Pitcoff that Plaintiffs had never rejected Smith, and that Defendants had Plaintiffs' proposed inspectors' names since August 27, 2020. The Court stated that it would not continue the effort to shepherd an agreement on independent inspector, and the conference proceeded to other matters.

22. I subsequently emailed Defendants' attorneys again to ask whether the Village was still considering Mr. Smith or other inspectors, but receive no response. A copy of my September 21, 2020 email to Defendants' attorneys is attached as "**Exhibit I**."

23. A copy of my September 29, 2020 email to the New York Department of State and the ensuing email string is attached as "**Exhibit J**."

24. In the meantime, Defendants sent pre-motion-to-dismiss letters to Plaintiffs regarding a portion of the SAC. Plaintiffs prepared a proposed Third Amended Complaint ("TAC") in response, and the Court scheduled a pre-motion conference for October 13, 2020 to consider Plaintiffs' request to file the TAC.

25. A copy of my October 7, 2020 letter to Defendants' attorneys is attached as "**Exhibit K**." I received no response to this letter.

26. At the October 13, 2020 telephone conference, I reported to the Court the lack of response from Defendants regarding Mr. Klein's home, and Mr. Pitcoff announced for the first time that Defendants were "considering" Adam Gordon ("Gordon"), one of the inspectors Plaintiffs had proposed on August 27, 2020, to conduct the inspection. The parties agreed to discuss the issue of Mr. Klein's home after the telephone conference.

27. In a telephone call on October 13, 2020 immediately after the conference, Mr. Pitcoff told me that Gordon "so far" seemed willing to do the inspection, but stated that it was not clear that Gordon "knows what he may be getting into." When pressed, Mr. Pitcoff stated that there were no objections, but he could not confirm that the Village had committed to having Gordon conduct the inspection. Mr. Pitcoff also stated that they had also called other possible inspectors, but Gordon was the only one that called back so far. Mr. Pitcoff also reiterated the need to work through some way to deal with payment and liability issues, and he could not say how long that would take. Ms. Mastellone again suggested that Plaintiffs

should make an offer to Defendants to resolve the entire case as an alternative to attempting to agree on an independent inspector.

28. With the winter quickly approaching, Mr. Klein was faced once again with a proposal from Defendants' attorneys but with no commitment on behalf of the Village to any particular inspector other than Zummo. Rather than continuing to discuss "possible" inspectors, Mr. Klein located Fusco Engineering ("Fusco"), an independent private engineering firm in neighboring Orange County, New York, with a staff of state-certified and licensed Code Enforcement Officers ("CEO") that routinely provide code enforcement services to municipalities in Orange County. Having had no prior business or other relationship to Fusco or its employees, Mr. Klein engaged Fusco to have a CEO perform an inspection of his home for compliance with the architect's plans and state and local building code requirements through the framing stage.

29. On October 28, 2020, Plaintiffs' Counsel notified Defendants' attorneys of Mr. Klein's intention to file this motion for preliminary injunction. A copy of the notice is attached as "**Exhibit L**."

30. Following email exchanges and a telephone conference, the parties agreed to confer again on November 2, 2020. Copies of the October 29, 2020 email exchanges are attached as "**Exhibit M**."

31. At the November 2, 2020 conference, Defendants stated that they would not consider using Fusco as the CEO for Mr. Klein's home on the sole basis that Fusco had already begun an inspection of the home. Instead, Mr. Pitcoff offered to provide other names of engineering firms for Mr. Klein to consider and to continue negotiations with no firm timetable of when an initial inspection may take place. I subsequently notified Defendants' attorneys that Plaintiffs could no longer delay the filing of this motion. A copy of my November 2, 2020 email is attached as "**Exhibit N**." On November 3, 2020, I learned that

Fusco's CEO has certified that the construction on Mr. Klein's home is compliant through the framing inspection stage.

32. Plaintiffs have attempted to avoid this motion for some time, but it has finally become exceedingly clear that Defendants – with the aid of their legal counsel – have no intention to allow Mr. Klein to continue and complete construction of his home as long as this case is pending and as long as they can delay.

33. In 2017 and 2018, Attorney Ulman wrote letters justifying Zummo's pretexts for blocking Mr. Klein's construction. In 2018, Riley circumvented Ulman and falsely advised the ZBA in June 2018 to dismiss Mr. Klein's appeal as untimely. When Mr. Klein appealed the ZBA dismissal, Riley sought to have Mr. Klein's case dismissed for presenting evidence that Mr. Klein had an arguable right to present. When the Supreme Court refused to dismiss the case in 2020, the new Village Attorney appealed the denial, triggering an automatic and lengthy stay.

34. When Mr. Klein obtained a favorable order from the New York Review Board in April 2020, Ms. Mastellone (apparently) advised Zummo that he should withhold a construction permit from Mr. Klein to determine if the order could be challenged. When Plaintiffs brought these issues to the Court in June 2020, Defendants' attorneys told the Court that Zummo's belated conditional permit rendered the issue "moot." When Plaintiffs raised the question of equitable relief, Defendants' attorneys suggested "the possibility" of an independent building inspector. When Plaintiffs agreed to negotiate in good faith a stipulation and order for an independent building inspector, Defendants' attorneys repeatedly proposed names of inspectors they claimed to be pursuing, but it turned out that the Village never committed to a single name proposed, and never committed to remove Zummo from the process. After many weeks, Mr. Pitcoff incorrectly told the Court that Plaintiffs had rejected a proposed inspector. After I corrected him and subsequently inquired about that proposed

inspector and the process in general, I received no reply. When questioned by the Court about the status on October 13, 2020, Mr. Pitcoff for the first time announced that Defendants were "considering" yet another possible inspector, but in a subsequent telephone call it became clear that this was another hypothetical proposal with no genuine commitment. When Mr. Klein found an experienced outside engineering firm with a staff of CEOs who regularly serve as building inspectors, engineers, and CEOs for many villages and towns in neighboring Orange County, Defendants' attorneys refused to consider the firm on the sole basis that the firm had already begun an inspection of Mr. Klein's home.

35. Immediate equitable relief and action is necessary to allow Mr. Klein to resume construction of his home, to close and protect his home from the imminent wet wintry weather, and to avoid further irreparable harm to his life and his family.

Dated: November 3, 2020.

                /S Daniel G. Ashburn
                Daniel G. Ashburn, Esq.