UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAMUEL INDIG, et al.,

                    Plaintiffs,

              -against-

THE VILLAGE OF POMONA, et al.,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

18-CV-10204 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Samuel Indig ("S. Indig"), Leah Indig ("L. Indig"), Meir Kahana ("Kahana"), Robert Klein ("R. Klein"), and Naftali Klein ("N. Klein," and collectively, "Plaintiffs") bring this action against the Village of Pomona ("Pomona"), Ian Banks ("Banks," and together with Pomona, "Village Defendants"), Bret Yagel ("Yagel"), Louis Zummo ("Zummo"), Leon Harris ("Harris"), and Doris Ulman ("Ulman," together with Yagel, Zummo, and Harris, "Individual Defendants," and collectively, "Defendants"). Plaintiffs, who are Orthodox Jews, allege that Defendants have engaged in a pattern of harassment and discrimination against the Orthodox Jewish residents of Pomona, thereby violating certain of their state and federal constitutional rights, as well as the Fair Housing Act.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and procedural history of this action, which are set forth more fully in Judge Briccetti's November 18, 2019 Opinion and Order. (Doc. 106). Since that Opinion and Order was issued, this case was reassigned to me on March 17, 2020 and Plaintiffs filed a Third Amended Complaint ("TAC") on October 13, 2020. (Doc. 151).

The TAC asserts four claims for relief: (1) violations of the Fourteenth Amendment's Equal Protection Clause, U.S. Const. amend. XIV, § 1; (2) violations of the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3604(b), and 3617; (3) violations of Article 1, § 11 of the New York State Constitution, N.Y. Const. art. I, § 11; and (4) imposition of unconstitutional conditions in violation of Article III, and the First, Fifth, and Fourteenth Amendments, U.S. Const. art. III, amend. I, V, and XIV.

Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Third and Fourth Claims for Relief; all claims against Harris; and all claims, to the extent they seek punitive damages, against Pomona. (Doc. 171; Doc. 172, "Village Defs. Br."; Doc. 175, "Pl. Opp."; Doc. 174, "Village Defs. Reply"; Doc. 180; Doc. 182, "Ind. Defs. Br."; Doc. 173, "Ind. Defs. Reply"). For the reasons set forth below, the motions are GRANTED IN PART.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I.    <u>Plaintiffs' Third Claim for Relief: State Equal Protection Violation</u>

The New York State Constitution prohibits the denial of the equal protection of the laws, *see* N.Y. Const. art. I, § 11, and is therefore coextensive with its federal counterpart. *See Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 n.3 (2d Cir. 2007) ("[T]he Equal Protection Clauses of the federal and New York Constitutions are coextensive."); *see also Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 482 (S.D.N.Y. 2015). In *Brown v. State*, the New York Court of Appeals recognized a private right of action for money damages against the state for equal protection violations of Article I, § 11 of the New York State Constitution. 674 N.E.2d 1129, 1141 (N.Y. 1996). The Court of Appeals, however, "subsequently narrowed *Brown*'s 'narrow remedy,' holding that a private right of action for violations of the New York State Constitution exists only where such a right of action is necessary to address both 'the private interest that citizens harmed by constitutional violations have an avenue of redress, and the public interest that future violations be deterred.'" *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (quoting *Martinez v. City of Schenectady*, 761 N.E.2d 560, 563 (N.Y. 2001)); *see also Vilkhu v. City of New York*, No. 06-CV-02095, 2008 WL 1991099, at *8 (E.D.N.Y.

May 5, 2008) ("*Brown*'s application has been limited by both district and state courts to situations where the plaintiffs have no alternative remedies that would protect their interests.").

In the years since *Brown* was decided, "[d]istrict courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013); *Alwan*, 311 F. Supp. 3d at 586 ("Federal courts in this circuit have apparently uniformly held that no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution."); *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *8 (S.D.N.Y. Mar. 22, 2021). "Accordingly, where a complaint alleges no theories of liability that are cognizable exclusively under the New York State Constitution, any claims brought under the state constitution are ordinarily dismissed." *Talarico v. Port Auth. of New York & New Jersey*, 367 F. Supp. 3d 161, 171 (S.D.N.Y. 2019).

Although Plaintiffs also bring a federal equal protection claim under § 1983 (TAC ¶¶ 164-69), they argue that *Brown*'s exception permits their parallel state equal protection claim to proceed, because unlike § 1983 claims, state constitutional claims may be brought under the doctrine of *respondeat superior*. (Pl. Opp. at 5); *Alwan*, 311 F. Supp. 3d at 587 (explaining that *respondeat superior* "is cognizable as a matter of state constitutional-tort law, but not under § 1983"). As such, Plaintiffs contend that their state equal protection claim "provide[s] broader protections and remedies" than their federal equal protection claim. (Pl. Opp. at 5). But simply because state equal protection claims "provide broader protections and remedies" in the abstract (*id.*), it does not necessarily follow that § 1983 is an inadequate alternative remedy as applied to Plaintiffs' claims in this case. (*Id.*). Indeed, Plaintiffs do not specify which Defendants, if any, they

seek to hold liable under the *respondeat superior* doctrine. Therefore, Plaintiffs fail to establish that alternative remedies are unavailable to them under § 1983, as required to trigger *Brown*'s "narrow exception." *Vilkhu*, 2008 WL 1991099, at *9.

Plaintiffs' failure to establish the applicability of *Brown*'s exception aside, their failure to comply with the requirements of New York General Municipal Law § 50-i provides another independent basis for dismissal of this claim. That law provides:

> No action . . . shall be prosecuted or maintained against a . . . village. . . for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such . . . village . . . or of any officer, agent or employee thereof . . ., unless, (a) a notice of claim shall have been made and served upon the . . . village . . . in compliance with section fifty-e of this article, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice, or if service of the notice of claim is made by service upon the secretary of state pursuant to section fifty-three of this article, that at least forty days have elapsed since the service of such notice, and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . .

N.Y. Gen. Mun. Law § 50-i(1). "[T]he Court first notes that 'in a federal court, state notice-of-claim statutes apply to state-law claims.'" *Hyde v. Arresting Officer Caputo*, No. 98-CV-06722, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001) (quoting *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999)). "Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees." *Id.* "'A plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim.'" *Id.* (quoting *Davidson v. Bronx Mun. Hosp.*, 473 N.E.2d 761, 763 (N.Y. 1984)). "Th[e] notice-of-claim provision extends to state constitutional torts." *G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 280 (E.D.N.Y. 2012). "A

plaintiff's failure to file a notice of claim requires dismissal of pendent state tort claims against [a municipality] or its employees in a federal civil rights action such as this one." *Robinson v. Matos*, No. 97-CV-07144, 1999 WL 225938, at *2 (S.D.N.Y. Apr. 19, 1999); *see also Hyde*, 2001 WL 521699, at *4 ("[F]ailure to comply with provisions requiring notice and presentment of claims prior to the commencement of litigation ordinarily requires dismissal.").

Here, Defendants argue that the TAC "does not allege compliance with New York's notice of claim requirement." (Village Defs. Br. at 8; Ind. Defs. Br. at 12). Plaintiffs do not dispute this. Instead, in an attempt to elide their failure to comply with the requirement, Plaintiffs take issue with the fact that Defendants apparently did not raise their notice of claim argument in previous motions. (*See* Pl. Opp. at 5). To that end, Plaintiffs argue that Defendants are barred by Federal Rule of Civil Procedure 12(g)(2) from doing so now. (*See id*.). But such argument is of no moment here. "Although Rule 12 'bars successive motions premised on the differing defenses listed in Fed. R. Civ. P. Rule 12(b)(2)-(5)' it does not necessarily prevent additional 12(b)(6) motions containing 'differing arguments.'" *Walia v. Napolitano*, No. 11-CV-02512, 2017 WL 10378189, at *8 (E.D.N.Y. Dec. 4, 2017) (quoting *United States ex rel. Kolchinsky*, 238 F. Supp. 3d 550, 555 (S.D.N.Y. Sept. 1, 2017)). The notice of claim requirement is not a defense enumerated under Rule 12(b); rather, it is a "differing argument" raised by Defendants on additional 12(b)(6) motions. *Id*. Therefore, such argument is not precluded by Rule 12(g).

Plaintiffs further argue that the Court should excuse their failure to file a notice of claim because it was not done in bad faith and did not prejudice Defendants. (Pl. Opp. at 5). Plaintiffs, in making this argument, misguidedly rely on *Hill v. City of New York*, No. 03-CV-01283, 2005 WL 3591719, at *10 (E.D.N.Y. Dec. 30, 2005). In *Hill*, the plaintiff "timely served" a defective notice of claim, which the court excused because the defect did not prejudice the defendant and

was not made in bad faith. *See id*. But here, unlike in *Hill*, there is no defect for the Court to excuse, because Plaintiffs filed no notice of claim whatsoever. Therefore, the exceptions set forth in *Hill* provide no safe harbor.

Accordingly, Plaintiffs' Third Claim for Relief against Defendants is dismissed with prejudice.

II.   Plaintiffs' Fourth Claim for Relief: Imposition of Unconstitutional Conditions[1]

A.   Section 1983

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021).

B.   Unconstitutional Conditions

"The 'unconstitutional conditions doctrine' reflects 'an overarching principle . . . that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up.'" *Doe v. Zucker*, No. 12-CV-00840, 2021 WL 619465, at *34 (N.D.N.Y. Feb. 17, 2021) (quoting *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013)). "Pursuant to this 'unconstitutional conditions' doctrine, as it has come to be known,

---

[1] Defendants argue that Yagel, Harris, and Ulman were not personally involved in the conduct alleged in Plaintiffs' Fourth Claim for Relief, because such claim involves "new developments" that occurred after the filing of the First Amended Complaint—i.e., after Yagel, Ulman, and Harris were no longer working for Pomona. (Village Defs. Br. at 8 n.1). Plaintiffs do not oppose this argument. Therefore, lack of personal involvement serves as an independent basis for dismissal of the Fourth Claim for Relief against Yagel, Ulman, and Harris. *See Boley v. Durets*, 687 F. App'x 40 (2d Cir. 2017) ("To establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.").

the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 231 (2d Cir. 2011).

Here, Plaintiffs allege that Defendants deprived them of their rights of free speech, petition for redress of grievances, resort to federal courts, due process, equal protection, and the Takings Clause. *See* U.S. Const., art. III,[2] amend. I, V, and XIV. (TAC ¶¶ 23, 77-88, 93, 95, 97-98, 100-01, 104-05, 151-57, 159). Specifically, Plaintiffs argue that Banks threatened R. Klein and non-party Avrohom Manes ("Manes") with continued enforcement of code and building violations—as well as the withholding of building permits—unless R. Klein and Manes dismissed their lawsuits against Pomona. (Pl. Opp. at 26 (citing TAC ¶¶ 122-24)). Plaintiffs themselves, however, have negated these allegations by acknowledging that R. Klein did in fact receive building permits despite maintaining this action. (TAC ¶ 157).

Accordingly, Plaintiffs' unconstitutional conditions claim against Defendants is dismissed.[3]

III. <u>Claims Against Harris</u>

Individual Defendants argue that all claims for relief against Harris should be dismissed for lack of personal involvement in any alleged constitutional violations. (*See* Ind. Defs. Br. at 12-13); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit

---

[2] Plaintiffs allege that Defendants deprived them of rights "guaranteed to [them] by Article III" of the U.S. Constitution. (TAC ¶ 183). Defendants do not address Article III in their briefs, and Plaintiffs do not address it in their opposition. Accordingly, the Court deems Plaintiffs' allegations related to Article III abandoned.

[3] Defendants also argue that Plaintiffs' unconstitutional conditions claim fails because Plaintiffs' rights under the Fifth, First, and Fourteenth Amendments were not violated. The Court need not, and does not, reach those arguments, however, because Plaintiffs' failure to sufficiently allege the conditioning of any benefit on the surrender of any constitutional rights independently renders such claim deficient.

that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). Because the Third and Fourth Claims for Relief have been dismissed against all Defendants for the reasons explained above, the Court considers only whether Plaintiffs have sufficiently alleged Harris's personal involvement in the First and Second Claims for Relief.

Plaintiffs contend that they sufficiently alleged Harris's personal involvement in paragraph 88 of the TAC regarding a text message sent by Harris to Zummo "demanding that [Kahana] receive not just one, but multiple violations." (TAC ¶ 88). Individual Defendants, in moving to dismiss, argue in broad strokes that this allegation does not suffice to show Harris's personal involvement. Because Individual Defendants' argument is not supported by authority or detail, the Court has no basis upon which to determine that Plaintiffs' allegation related to Harris's text message is insufficient to establish his personal involvement in any alleged constitutional violations.[4]

Accordingly, Plaintiffs' First and Second Claims for Relief remain as asserted against Harris.

IV.   <u>Punitive Damages</u>

Plaintiffs seek "punitive damages in an amount to be determined at trial." (TAC at p. 37). Village Defendants argue, and the Court agrees, that punitive damages are not available for claims asserted against Pomona—a municipal corporation. (Village Defs. Br. at 19-20); *see also New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006) ("[A]

---

[4] The Court is similarly unpersuaded by Individual Defendants' argument that Harris was not personally involved in any alleged constitutional violations merely because Kahana only received "a single violation," as opposed to the "multiple violations" contemplated in Harris's text message. (Ind. Defs. Br. at 13). Even if Zummo did not act in precise accordance with Harris's demand, such inaction on Zummo's part does not negate Harris's personal involvement in making the demand in the first place.

municipality . . . is immune from a claim for punitive damages . . . ."); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 309 (S.D.N.Y. 2001) ("Punitive damages are not available from a municipality."). Therefore, Plaintiffs' claims, to the extent they assert punitive damages, are dismissed against Pomona.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss Plaintiffs' Third and Fourth Claims for Relief with prejudice. The Court GRANTS Village Defendants' motion to dismiss Plaintiffs' claims against Pomona to the extent such claims assert punitive damages, with prejudice. The Court DENIES Individual Defendants' motion to dismiss the First and Second Claims for Relief against Harris for lack of personal involvement.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 171 and Doc. 180.

**SO ORDERED:**

Dated:   White Plains, New York
         August 24, 2021

_____
PHILIP M. HALPERN
United States District Judge